IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : MDL No. 2284 : 11-md-02284 |
| _____ | : : |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | : : |

**MEMORANDUM**

PRATTER, J.                                                                                                                   JANUARY 10, 2012

In this multidistrict litigation relating to Defendant DuPont's Imprelis herbicide, two competing teams of counsel for Plaintiffs seek appointment as interim co-lead counsel for the putative Plaintiffs' class. Each team has submitted an application, outlining their qualifications, prior experience, and strategy for efficiently and effectively moving the litigation forward, and, at the invitation of the Court, several non-applicants have made *ex parte* submissions regarding their experiences with the candidates for lead counsel. On January 6, 2012, the Court held a hearing, at which the various candidates had an opportunity to further make their cases for appointment. Upon consideration of both the written submissions of the candidates and others and the candidates' January 6, 2012 presentation, the Court will accept the joint application of Adam Levitt of Wolf, Haldenstein, Adler, Freeman & Herz; Richard Arsenault of Neblett, Beard & Arsenault; Hollis Salzman of Labaton Sucharow; and Jonathan Selbin of Lieff, Cabraser, Heimann & Bernstein, and appoint them as Interim Co-Lead Counsel for Plaintiffs in this matter.

**DISCUSSION**

The Manual for Complex Litigation ("MCL") admonishes judges to select lead and liaison counsel who are "qualified and responsible, . . . will fairly and adequately represent all of the parties on their side, and [whose] charges will be reasonable." David F. Herr, *MCL* 10.22 (4th ed. 2011). It sets forth seven common sense factors for the Court to consider: (1) the qualifications, functions, organization, and compensation of designated counsel; (2) whether there has been full disclosure of all agreements and understandings among counsel; (3) would-be designated attorneys' competence for assignments; (4) whether there are clear and satisfactory guidelines for compensation and reimbursement that are fair, reasonable, and efficient; (5) whether designated counsel fairly represents the various interests in the litigation; (6) attorneys' resources, commitment, and qualifications to accomplish the assigned tasks; and 7) attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel and the court. *Id.* at 10.224. The decision regarding lead counsel is particularly important in all litigation, of course, but especially in cases such as this, in which the heavy majority of complaints already filed allege a putative class or classes of plaintiffs. *See id.* at 10.224, 21.27; Fed. R. Civ. P. 23(g).

In response to the Court's invitation to submit applications for lead counsel, the Court received two submissions – one from a team of two lawyers (Steven Schwartz of Chimicles & Tikellis and Robert "Bobby" Gilbert of Grossman Roth) and the other from a team of four lawyers (Adam Levitt of Wolf, Haldenstein, Adler, Freeman & Herz; Richard Arsenault of Neblett, Beard & Arsenault; Hollis Salzman of Labaton Sucharow; and Jonathan Selbin of Lieff, Cabraser, Heimann & Bernstein). As the Court would expect from such well-seasoned

attorneys, both sets of counsel have demonstrated extensive class action experience, including experience as lead counsel or members of a plaintiffs' steering committee, and experience in litigation involving agricultural or horticultural issues, and members of both proposed teams have even authored articles and lectured on class action issues. Both teams of lawyers have proposed similar reasonable guidelines for compensation and reimbursement of expenses. Each team promises to adequately represent the interests of the different types of plaintiffs involved in this litigation (e.g., landscapers, homeowners, golf courses, etc.).[1] The Court is also satisfied that both teams have at their disposal more than sufficient financial and professional resources to effectively manage this litigation. Finally, both teams have represented to the Court that, beyond any agreements amongst the co-lead counsel candidates on each team in terms of the division of responsibility, the teams have made no side-deal promises to other counsel in order to gain support.

The main distinctions between the two groups, then, lie (1) in the progress already achieved in furtherance of the Plaintiffs' claims, (2) in the organizational structure proposed by the two groups, and (3) in the support of other Plaintiffs' counsel in this case. First, from both their application and presentation at the January 6, 2012 hearing, it is clear that the four-firm team has made a good deal of progress in advancing the litigation by, for example, assembling a legal research team, starting the drafting of a consolidated complaint, and drafting various discovery orders. Although any such work product would still be put to use, regardless of the

---

[1] The Court notes that neither team specifically mentioned a plan for dealing with those Plaintiffs who have not styled their complaints as a class action but rather seek only to pursue claims on their own behalf and, therefore, admonishes appointed interim co-lead counsel to bear in mind the interests of these Plaintiffs in developing strategy and managing the litigation.

team appointed, such progress reflects well on the four-firm team's ability to work effectively with other counsel and to advance the litigation quickly and efficiently.

Second, the organizational structure proposed by the four-firm team divides responsibilities into four main categories – law and briefing, discovery, experts, and settlement and DuPont's claims resolution process– in the hope of avoiding duplication of efforts.  In contrast, the two-firm team did not present a clear plan for the division of labor and indicated that both firms would be involved in all major issues.  While a looser structure may preferable in some cases, the Court is persuaded that in this case, which potentially implicates the laws of several states, requires quick action to preserve physical evidence, and potentially involves complex expert issues, the four-firm team's proposed structure will promote efficiency and minimize duplicative work.  In particular, the Court believes that the separation of settlement responsibilities from other litigation responsibilities will foster a greater chance for an amicable resolution of this litigation.

Third, in their application, the four-firm team represents that Plaintiffs' counsel in 85% of the 48 pending Imprelis cases support their appointment.  Appointment of co-lead counsel with support of such a numerical magnitude would be in keeping with the MCL's recommendation of allowing for "private ordering."  *See MCL* 21.272.[2]

---

[2] Of course, once this designation of interim lead counsel has been put into place there can be no "favorites" among those who were or were not part of the cheering section.

**CONCLUSION**

For the foregoing reasons, the Court accepts the application of Adam Levitt of Wolf, Haldenstein, Adler, Freeman & Herz; Richard Arsenault of Neblett, Beard & Arsenault; Hollis Salzman of Labaton Sucharow; and Jonathan Selbin of Lieff, Cabraser, Heimann & Bernstein and appoints them as Co-Lead Counsel in this matter.[3]  An appropriate Order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[3]   Despite selecting one application for interim co-lead counsel over the other, the Court fully expects that Plaintiffs' Interim Co-Lead Counsel will draw on the wealth of skills and experience demonstrated by each of the candidates for interim lead counsel in this matter. For example, albeit by no means the only example, the Court notes that interim co-lead counsel would be well-advised to take full advantage of Mr. Gilbert's unique experience in extensively litigating a prior action involving tree damage.