## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2884<br>11-md-02884 |
| THIS DOCUMENT APPLIES TO:<br>BORDAS V. E.I. DUPONT DE NEMOURS AND COMPANY, *et al.* | Case No.<br>2:12-cv-06446 |

### MEMORANDUM

PRATTER, J.                                                                                                                    JANUARY 30, 2013

Plaintiffs Linda Bordas and James Bordas, Jr. filed this action in West Virginia's Ohio County Circuit Court against E.I. du Pont de Nemours & Co. ("DuPont"); Terry Pugh, d.b.a. St. Clair Lawn Care ("St. Clair"); and Brett Conner, seeking damages for injuries to the Bordases' property allegedly caused by DuPont's herbicide, Imprelis. DuPont and St. Clair removed the case to the U.S. District Court for the Northern District of West Virginia, claiming that the Bordases had fraudulently joined Mr. Conner to defeat diversity jurisdiction. The case was then transferred to this Court, as part of the pending multidistrict litigation involving Imprelis.

Plaintiffs have moved to remand the case to West Virginia state court, claiming that Mr. Conner was not fraudulently joined. DuPont opposes Plaintiffs' motion. Because West Virginia has not recognized any negligence claim at all similar to that which Plaintiffs attempt to bring against Mr. Conner, the Court agrees with DuPont that Mr. Conner was fraudulently joined and will deny Plaintiffs' motion and dismiss Mr. Conner from the case.

## BACKGROUND

According to Plaintiffs' Complaint, in October of 2004, Mr. and Mrs. Bordas purchased a parcel of land that included mature woodlands, demolished the existing home on the property, and built their dream home in the midst of a number of beautiful old-growth trees. In the spring of 2011, Mr. Conner, a lawn care professional working for the Bordases, recommended that herbicide be applied at the property and suggested that the Bordases hire St. Clair for the job. They did so, and in late spring 2011, St. Clair applied Imprelis to the Bordas lawn. Within weeks, trees on the property began to show signs of damage, and eventually several trees died, including trees that had been planted later to take the place of dead trees.

Plaintiffs bring one claim against Mr. Conner, alleging that he was negligent because he did not ensure that only safe herbicides were used on their property, did not inform them that Imprelis is unsafe even when used in accordance with its label, did not disclose the risks of applying Imprelis, and did not use due care generally. They allege that Mr. Conner knew or should have known that the Bordases did not have the expertise to care for their lawn appropriately and were relying on him, which created a duty to recommend only a lawn care professional who would apply safe herbicides.

Plaintiffs do not allege in their Complaint that Mr. Conner knew or should have known that St. Clair planned to use Imprelis, that he knew that St. Clair applied unsafe herbicides in the past, that he knew or should have known in the spring of 2011 that Imprelis would harm non-target vegetation, that he exercised any control or supervision over St. Clair at any time, or even that he had any relationship with St. Clair other than giving the name to the Bordases.

## LEGAL STANDARD

Under 28 U.S.C. § 1441,

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C.A. § 1441(a). However, "[t]he removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch and Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987)) (additional citations omitted).

Removal must take place "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based," or "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b), (c)(3).

All defendants in an action must timely consent to the removal in order to remove an action to federal court. *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995). However, this unanimity rule may be disregarded if a defendant has been fraudulently joined. *Id.* at 213 n. 4. Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer*, 913 F.2d at 111 (quotations omitted). "The presence of a party fraudulently joined cannot defeat removal." *In re Diet Drugs*, 220 F. Supp. 2d 414, 419 (E.D. Pa. 2002).

The Third Circuit Court of Appeals explicitly set forth the standards applicable to fraudulent joinder analysis as follows:

3

A district court must consider a number of settled precepts in ruling on a petition to remand a case to state court for lack of diversity jurisdiction. When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined. But the removing party carries a heavy burden of persuasion in making this showing. It is logical that it should have this burden, for removal statutes are to be strictly construed in favor of remand.

Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court....

In evaluating the alleged fraud, the district court must focus on the plaintiff's complaint at the time the petition for removal was filed. In so ruling, the district court must assume as true all factual allegations of the complaint. It also must resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff.

*Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 851-52 (3d Cir. 1992) (citations and punctuation omitted). *See also In re Briscoe,* 448 F.3d 201, 217 (3d Cir. 2006).[1]

### DISCUSSION

West Virginia law "allows a negligence claim for purely economic losses when the[re] is evidence of a 'special relationship' between the plaintiff and the defendant." *White v. AAMG Const. Lending Center*, 700 S.E.2d 791, 799 (W. Va. 2010). Thus, Plaintiffs argue that their claim against Mr. Conner must not be considered to be fraudulent because they had a "special relationship" with Mr. Conner, which makes him liable for his negligence with respect to his recommendation of St. Clair. Therefore, they claim, DuPont and St. Clair improperly removed the case to federal court. None of the "special relationship" cases they cite, however, is similar

---

[1] Both DuPont and Plaintiffs include sworn affidavits with their filings. The circumstances under which a district court may look at facts outside of the complaint when deciding whether a defendant has been fraudulently joined are limited. *See In re Briscoe*, 448 F.3d at 217-20. The Court need not decide whether this is one of those situations, as it is clear from the Complaint and legal arguments that there is no colorable ground supporting a negligence claim against Mr. Conner.

to the case at hand in any meaningful way. As an initial matter, Plaintiffs did not suffer "purely economic losses" in this case; they suffered property damage. Thus, the "special relationship" doctrine does not squarely apply to the Bordases' situation. *See Bragg v. United States*, 767 F. Supp. 2d 617, 627 (S.D.W. Va. 2011) (noting that the "special relationship" exception has been narrowly applied in cases in which the losses are purely economic, not as a "general recognition of a duty where a special relationship exists") (internal quotation omitted).

Even if the case law on "special relationships" did apply here, Mr. and Mrs. Bordas seem to rely entirely on the premise that Mr. Conner is liable because he was familiar with their lawn, he knew that use of herbicide generally may foreseeably lead to non-target vegetation damage, and he recommended that the Bordases hire St. Clair to apply herbicide. Nothing in this landscape resembles the type of special relationships seen in the few West Virginia cases in which such a relationship is addressed. As DuPont notes, in each of the cases cited by the Bordases in which a special relationship was found, there was more than mere general foreseeability underlying the court's finding. Indeed, the West Virginia Supreme Court of Appeals held in *Aikens v. Debow*, 541 S.E.2d 576 (W. Va. 2000), that a special relationship requires a "sufficiently close nexus or relationship," taking into consideration factors such as "the extent to which the particular plaintiff is affected differently from society in general" and "the defendant's knowledge or specific reason to know of the potential consequences of the wrongdoing, the persons likely to be injured, and the damages likely to be suffered." *Id.* at 589.

For instance, in *Glascock v. City Nat'l Bank of W. Va.*, 576 S.E.2d 540 (W. Va. 2002), the Supreme Court of Appeals of West Virginia found a special relationship between a lender and a borrower, such that the lender could be held responsible for not disclosing inspection reports it had obtained outlining defects in the borrower's newly constructed home, when the

lender "was significantly involved in the construction of the [Plaintiff's] home" and "maintain[ed] oversight of, or intervene[ed] in, the construction process." *Id.* at 545-46. Likewise, in *Eastern Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266 (W. Va. 2001), a design professional who submitted faulty plans for a city project owed a duty to the construction company who was later hired to carry out those plans and who relied on those plans in bidding on the project because it was foreseeable that the construction company would rely on those plans. *Id.* at 275.

Here, the Complaint does not allege that Mr. Conner knew or had reason to know that Imprelis *per se* would be used or that St. Clair would act negligently. Likewise, the Bordases do not allege that Mr. Conner had any supervisory power over St. Clair or oversight of (or even involvement in) its work, or that he lied or failed to disclose any information to the Bordases about St. Clair. None of the cases in which West Virginia courts have ascribed tort liability based on a special relationship involves a set of facts in which the tortfeasor was as unconnected to the actual cause of the injury as Mr. Conner was to St. Clair (assuming, for the sake of this Memorandum only, that St. Clair was at least in part responsible for Plaintiffs' injuries). Indeed, in *White*, the relationship between the lender-defendant, who failed to withhold construction loan distributions until it received confirmation that the work was actually completed, and the builders who failed to properly complete the construction work was arguably closer than the relationship alleged here, and in that case, the West Virginia Supreme Court of Appeals did *not* find the special relationship exception applicable. Thus, Mr. and Mrs. Bordas have not stated a negligence claim against Mr. Conner based on a special relationship.

The Bordases' claim comes much closer to a "negligent referral" type claim. However, no West Virginia court has authorized a claim for negligent referral. *See Pied Piper, Inc. v.*

*Datanational Corp.*, 901 F. Supp. 212 (S.D.W. Va. 1995) ("The West Virginia Supreme Court of Appeals has not addressed the issue of whether a cause of action exists for 'negligent referral.'") Some courts in other states have explicitly rejected such claims,[2] while other state courts have allowed negligent referral claims in specific, limited circumstances, such as in the medical malpractice context. *See Reed v. Bascon*, 530 N.E.2d 417 (Ill. 1988). Even in those cases, the referring doctor must have done more than just recommend another professional who later acted negligently – the referring doctor must have had some other personal involvement in the negligently performed treatment itself (e.g., by recommending the specific procedure selected or personally participating in a botched surgery) or have at least actually known at the time of the recommendation that the recommended professional was incompetent, impaired, or lacking in the required skills. *Id.* at 400, 420.

As discussed above, the Bordases have not alleged anything approaching this level of involvement by Mr. Conner in the lawn treatment carried out by St. Clair; nor does the Complaint make any mention of any knowledge on the part of Mr. Conner of incompetence on the part of St. Clair at the time he made the recommendation. Thus, even assuming West Virginia courts would recognize a negligent referral cause of action, the facts alleged here would not state such a claim.

In the absence of any colorable claim against Mr. Conner, his nominal presence in the case cannot defeat removal. Therefore, the Court finds that Mr. Conner was fraudulently joined,

---

[2] For instance, Pennsylvania courts have declined to adopt such a claim. *See Bourke v. Kazaras*, 746 A.2d 642, 643 (Pa. Super. Ct. 2000).

that the claim against him must be dismissed, and that the Bordas case is properly before this Court.[3]

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Remand will be denied. An appropriate Order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
United States District Judge

---

[3] Plaintiffs do not contest that St. Clair and DuPont are diverse or that the amount in controversy is greater than $75,000.