IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : | MDL No. 2284 11-md-02284 |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | : : : |

# MEMORANDUM

PRATTER, J.                                                                                              FEBRUARY 11, 2013

This multidistrict litigation concerns damage claims growing out of damage to Plaintiffs' trees allegedly caused by DuPont's herbicide, Imprelis. After months of negotiation, the parties have reached a settlement.[1] To that end, they have filed a motion for preliminary approval of the proposed class settlement. Because the proposed settlement is within the range of possible approval, the requirements of conditional class certification are met, and the proffered notice plan is well designed, the Court will grant the parties' motion.

**BACKGROUND**

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to kill selectively unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the EPA began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and, ultimately, an EPA order preventing DuPont from selling

---

[1] Reportedly, there are nay-sayers whose counsel have already made their disaffection with the proposed settlement known. The time for consideration of such concerns is not yet here.

1

Imprelis.[2]  In September 2011, DuPont designed and initiated its own Claim Resolution Process to compensate for Imprelis damage.  Notwithstanding DuPont's voluntary undertakings, Plaintiffs continued to pursue their lawsuits, alleging consumer fraud and consumer protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states.[3]  After months of settlement discussions, including mediation with a retired magistrate judge, the parties reached a settlement agreement.  The elements of that agreement are outlined below.

The proposed settlement classes will consist of:

Property Owner Class (Class 1):

All persons or entities who (a) own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, or (b) own or owned property in the United States adjacent to property to which Imprelis was applied from August 31, 2010 through August 21, 2011 and whose trees show damage from Imprelis on or before the date of entry of the Preliminary Approval Order ("Adjacent Property Owner").  Excluded from Class 1 are (1) any Judges to whom this Action is assigned and any members of their immediate families and (2) any property owners whose properties were used for the testing of Imprelis or developmental formulations containing the same active ingredient.

---

[2]  In light of the multitude of lawsuits filed in federal courts across the country, many of which were styled as class action lawsuits, and upon the motions of counsel in several of those actions, the Judicial Panel on Multidistrict Litigation consolidated and transferred all pending federal Imprelis suits to this Court, giving the Court jurisdiction over pretrial proceedings in the transferred actions.  *See* 28 U.S.C. § 1407; Transfer Order (Docket No. 1).  A district judge exercising authority over cases transferred for pretrial proceedings "inherits the entire pretrial jurisdiction that the transferor district judge would have exercised if the transfer had not occurred."  15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3866 (3d ed. 2010).  Settlement proceedings, in particular, are commonly conducted before MDL courts, and the Third Circuit Court of Appeals has held that such proceedings are squarely under the umbrella of pretrial proceedings over which transferee courts have jurisdiction.  *See In re Patenaude*, 210 F.3d 135, 144-45 (3d Cir. 2000).  Indeed, "[i]t is established Panel and court of appeals precedent that settlement matters are appropriate pretrial proceedings subject to centralization under § 1407."  *In re Managed Care Litig.*, 246 F. Supp. 2d 1363, 1365 (Jud. Pan. Mult. Lit.,2003).

[3]  The states' laws identified in the Corrected Amended Master Class Action Complaint include Delaware, Connecticut, Indiana, Kansas, Kentucky, Maryland, Michigan, Minnesota, Missouri, New Jersey, North Carolina, Ohio, Pennsylvania, South Dakota, and Wisconsin.  Imprelis was approved for sale in every state except New York and California.

Applicator Class (Class 2):

All persons or entities that, from August 31, 2010 through August 21, 2011, purchased Imprelis (and/or received Imprelis directly or indirectly from a purchaser) and applied it to property in the United States as part of their normal business, other than property that they own or owned ("Applicators").  Excluded from Class 2 are any Judges to whom this Action is assigned and any members of their immediate family.

Golf Courses and Other Self Applicators Class (Class 3):

All persons or entities that, from August 31, 2010 through August 21, 2011, purchased Imprelis (and/or received Imprelis directly or indirectly from a purchaser) and applied it to properties in the United States that they own or owned ("Self Applicators").  Excluded from Class 3 are any Judges to whom this Action is assigned and any members of their immediate family.

Under the proposed settlement, class members will receive the following:  Members of the Property Owner Class will receive a warranty on replacement trees, with the warranty expiring on May 31, 2015.  DuPont will also remove damaged trees or provide compensation for their removal under specified circumstances and will pay for damaged trees pursuant to the schedule set out in Exhibit 15 to the Settlement Agreement.[4]  DuPont will also pay each Property Owner Class Member certain tree care and maintenance payments pursuant to the schedule set forth in Exhibit 18 to the Settlement Agreement, as well as an additional payment for incidental damages in an amount equal to 15% of the total value of the other payments and services provided to that Class Member under the settlement.  Should Class Members disagree with the settlement amount offered, they may appeal their offer to a panel of arborists.  Finally, Property Owner Class Members will not be releasing any claims for environmental or personal injury damages by participating in the settlement.

---

[4]     Payments for replacement trees may be used in any way a class member wishes.  DuPont has entered into agreements with various Qualified Tree Providers who have set prices for replacement trees under 20 feet tall, so that class members are guaranteed to be able to purchase such trees up to 20 feet tall for the settlement amounts they receive.

Members of the Applicator Class will receive compensation for customer site visits, field work, and other such expenses incurred prior to September 6, 2011, as well as continued compensation for such activities if they elect to participate in the claims process.  To the extent they have not already done so, Applicator Class Members may also participate in the Imprelis recall program.  By participating in the proposed settlement, applicators will not release their rights to recover for lost profits or for damages arising from suits brought against them by third parties relating to Imprelis.  Members of the Self Applicator Class will receive all the benefits provided to members of the Property Owner Class, plus reimbursement for time and expenses spent investigating and documenting Imprelis damage, subject to a $2,000 maximum for such reimbursement claims.

All notice and claims administration expenses related to the settlement will be paid by DuPont.  Also, attorneys' fees, which Plaintiffs' Counsel will seek in an amount not to exceed $6.5 million in fees and $500,000 in costs, will be paid by DuPont and not be deducted from any funds earmarked for class members.  The proposed settlement also includes certain bonus payments for class representatives for service to the class ($1,500 for individual property owners, $2,500 for commercial entities), and these amounts likewise will not detract from other class funds.

**LEGAL STANDARD**

The preliminary approval determination for settlement of litigation such as this requires the Court to consider whether "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003) (citing *In re General Motors Corp. Pick-Up Truck Fuel Tank*

*Products Liability Litig.,* 55 F.3d 768, 785-86 (3d Cir. 1995)); *see also In re Cendant Corp. Litig.,* 264 F.3d 201, 233 n. 18 (3d Cir. 2001).  If, after consideration of those factors, a court concludes that the settlement should be preliminarily approved, ". . . an initial presumption of fairness . . ." is established. *In re Linerboard,* 292 F.Supp.2d at 638 (citing *In re Gen. Motors Corp.,* 55 F.3d at 785).

In addition, where, as here, the Court has not already certified a class, the Court must also determine whether the proposed settlement class satisfies the requirements of Rule 23.  *Amchem v. Windsor,* 521 U.S. 591, 620 (1997).  At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice.  *Manual for Complex Litigation,* § 21.632 (4th ed. 2004) (hereinafter "*MCL 4th*") ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).").  Accordingly, at this stage, the Court must determine whether the proposed class should be conditionally certified, leaving the final certification decision for the subsequent fairness hearing.

Rule 23(a) requires that the parties moving for class certification demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  Even if the requirements of Rule 23(a) are met, the parties must also show that the action can be maintained under at least one of the subsections of Rule 23(b).

**DISCUSSION**

    A.    **Range of Reasonableness**

At this preliminary stage, there is little disputing that the proposed settlement easily passes the reasonableness test. The settlement was reached as a result of arms' length discussions over a period of several months. A considerable amount of preliminary discovery was conducted, including the review of some 500,000 pages of documents DuPont previously submitted to the EPA, the hiring and consultation of several experts, and a deposition of a DuPont product manager. Interim Co-Lead Counsel are experienced litigators, as is more fully discussed in this Court's opinion appointing them to their lead roles in this litigation. The number of opt-outs cannot be assessed at this time, and to the extent there have been lawyers who represent class members and who profess to assure the Court that their clients will not participate in the settlement, the presence of those lawyers and their expressions of dissatisfaction do not operate to undermine the Court's confidence in the reasonableness of the negotiated settlement at this juncture. Finally, although detailed discussion of the actual terms of the settlement agreement is more appropriate at the final approval stage, the settlement program appears to reflect a meaningful attempt to make property owners quite close to whole for the damage caused to them.

### B. Rule 23(a) factors

#### 1. Numerosity

Under Federal Rule of Civil Procedure 23(a), the first factor to consider in certifying a class is whether "the class is so numerous that joinder of all members is impracticable." Because there are at least tens of thousands of class members, this factor is met, particularly for the limited purpose of conditionally certifying a class.

#### 2. Commonality

Under Federal Rule of Civil Procedure 23(a), the second factor to consider in certifying a class is whether "there are questions of law or fact common to the class." Certainly, there are common questions relating to the effects of Imprelis generally, how it was marketed and tested, and other similar fact questions that center on DuPont's actions, as well as the legal implications of those facts. Thus, this factor is satisfied for purposes of conditional certification.

### 3. Typicality

The third 23(a) factor is typicality, i.e., whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Here, class representatives from a variety of states include personal and commercial property owners, lawn care companies, and an adjacent property owner. Each seeks to hold DuPont liable for damages related to the application of Imprelis. Thus, their claims are typical of the classes delineated for the proposed settlement.

### 4. Adequacy of Representation

The final Rule 23(a) factor focuses on adequacy – whether "the representative parties will fairly and adequately protect the interests of the class." This means both that class representatives do not have interests antagonistic to the class and that class counsel are sufficiently skilled and experienced to litigate the case. There are no discussed conflicts between named class representatives and other potential class members. Interim Co-Lead Counsel are well experienced and qualified, as previously discussed. Therefore, this final factor weighs in favor of conditionally certifying a settlement class.

### C. Rule 23(b)

Under Fed. R. Civ. P. 23(b)(3), a class action may be maintained if common questions of law or fact predominate questions arguably affecting only individuals. Because DuPont's

actions and the legal consequences of those actions are at the heart of all of Plaintiffs' claims, Plaintiffs have met their burden to show predominance for the purposes of conditional class certification. Moreover, given the very large number of potential plaintiffs, as well as the number of suits filed, a class action seems to be a superior vehicle for this suit, particularly at the settlement stage.

### D. Proposed Notice

Under Rule 23(e), the Court's final duty in preliminarily approving a settlement is to ensure that potential class members receive notice of the proposed settlement. Here, the proposed notice program is comprehensive. The parties have hired Katherine Kinsella, a notice expert, to design a program that includes direct mail to tens of thousands of identified class members, as well as publication targeted to homeowners. Publications will be in print,[5] online,[6] and on television.[7] The notice itself explains the settlement in plain language with helpful charts and FAQs. Thus, the Court finds that the proposed notice program offers the best practicable notice to class members under the circumstances.

**CONCLUSION**

For the foregoing reasons, the Court will grant the Motion for Preliminary Settlement Approval in this matter. An appropriate Order, with attendant time requisites, follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[5] The print advertisements will appear in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and others geared toward adults age 35 and over.

[6] Online advertisements will appear on AOL, Facebook, Yahoo!, Google, and other sites.

[7] Commercials will appear at a variety of times of day in 46 targeted market areas throughout the United States.