IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 2:11-md-2284-GP |
| THIS DOCUMENT APPLIES TO: | |
| *Gerald Greener, et al. v. E.I. DuPont de Nemours and Co.* No. 2:11-cv-07599 | |

**PLAINTIFF PILGRIM VILLAGE ASSOCIATES'
MOTION TO ENLARGE TIME TO EXCLUDE ITSELF FROM
CLASS AND IMPRELIS CLAIMS RESOLUTION PROCESS
AND BRIEF IN SUPPORT OF MOTION**

Pilgrim Village Associates, a plaintiff in Cause No. 2:11-cv-07599 respectfully submits this, its Motion to Enlarge Time and brief in support thereof. For the reasons set forth below, Pilgrim Village urges an extension of time from June 28, 2013 to November 20, 2013 for the timely filing of its Notice of Exclusion from Settlement Class. The filing of that notice was delayed by excusable neglect on the part of Pilgrim Village, which had: (a) identified itself as a claimant in a lawsuit distinct from the class action; (b) engaged in extensive communication with defense counsel in which its election to opt-out of the class was understood; and (c) relied upon responsive conduct by DuPont and its counsel

consistent with the understanding that Pilgrim Village had opted-out of the settlement class.  Given that allowing an extension of time in this circumstance threatens no appreciable prejudice to DuPont, that the effective length of the delay is relatively minimal and its ultimate effect upon the judicial proceedings concerning these claims is absolutely negligible, and that the foregoing facts demonstrate that the need for the extension in this case is the result of excusable neglect, an extension of time to November 20, 2013 is both justified and equitable.  Accordingly, Plaintiff Pilgrim Village Associates respectfully requests that this motion to enlarge time to exclude itself from the settlement class and the Imprelis Claims Resolution Process be granted and that its November 20, 2013 filing of its opt-out notice be deemed timely.

**A.  The Court Has Discretion to Grant an Enlargement of Time Where the Movant Has Acted in Good Faith and the Movant's Failure to Comply with the Deadline is the Result of "Excusable Neglect"**

Federal Rule of Civil Procedure 6(b) concerns extensions of time and provides that "the court may, for good cause extend time" to satisfy a particular deadline "if the party failed to act because of excusable neglect." *See* FED. R. CIV. P. 6(b)(1)(B).  That rule applies to requests for extension of time to opt-out of class actions.  *See, e.g., In re Four Seasons Sec. Laws Litig.*, 493 F.2d 1288, 1290 (10th Cir. 1974); *Georgine v. Amchem Prods., Inc.* No. Civ. A No. 93-0215, 1995 WL 251402 at *4 (E.D. Pa. Apr. 26, 1995).  The rule manifestly vests the Court with

2

the discretion incumbent in its "equitable powers to manage litigation in order to promote judicial economy and fairness to litigants." *See DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 313 (3rd Cir. 2003). And when the issue concerns "case management decisions in complex class action[s], 'district court discretion is at its greatest.'" *See In re Insurance Brokerage Antitrust Litig.* 374 Fed. App'x 263, 266 (3rd Cir. 2010)(quoting *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003)).

In the context of motions to enlarge time pursuant to Rule 6(b), "excusable neglect" is "a somewhat 'elastic concept.'" *See Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. Pshp.*, 507 U.S. 380, 392 (1993)(quoting 4A C. Wright & A. Miller, Federal Practice and Procedure § 1165, p. 479 (2d ed. 1987)). Ultimately, the determination as to whether a party's failure to comply with a specified deadline is the result of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *See Pioneer*, 507 U.S. at 395. Federal courts generally consider four relevant factors in assessing those circumstances: (1) the danger of prejudice to the nonmovant; (2) the length of the delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith." *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 322-23 (3rd

Cir. 2001)(citing *Pioneer Inv. Servs. Co.*, 507 U.S. at 395).  No one of these factors predominates over the others in determining whether an extension of time is warranted.  *See In re Insurance Brokerage Antitrust Litig.*, 374 Fed. Appx. at 266.

**B.    Pilgrim Village Associates Has Acted in Good Faith and Can Demonstrate that its Failure to Timely File the Opt-Out Notice was the Result of Excusable Neglect**

As the appended declaration of Michael Miller demonstrates, Pilgrim Village was among 28 claimants who filed suit in this Court against DuPont, asserting a variety of common law and statutory claims and seeking damages for losses caused by the Imprelis product.  *See Miller Declaration* at 1-2, ¶ 3.  DuPont answered an amended complaint filed by those Plaintiffs.  *Id.* at 2, ¶ 3.  Notably, that lawsuit was filed directly into the MDL but was not incorporated into the class action and has not been consolidated with the class action.   That lawsuit, accordingly, remains active and all of the plaintiff parties to it (including Pilgrim Village) have manifested their intention to opt-out of the class settlement.

Like the other parties to that separate lawsuit, Pilgrim Village engaged in extensive communication with DuPont and its counsel concerning its intention to opt-out.  *See Miller Declaration* at 4-5, ¶¶ 9-10.  It has made that intention known to DuPont both in writing and through telephonic communications.  *Id.* Significantly, DuPont has made known its understanding of that election and has acted in conformity with it in its dealings with Pilgrim Village.  In particular,

4

DuPont had sought to conduct a site inspection of the Pilgrim Village property, among others, by February 2013 correspondence with counsel for Pilgrim Village. *See Miller Declaration* at 3, ¶ 6.  Those discussions continued into March 2013 and included discussion of windows of time in which such inspections could occur; Pilgrim Village, pursuant to DuPont's requests, provided information disclosing the substantiality of its claim.  *See id.*

As Mr. Miller's declaration explains, however, those discussions waned through the spring and early summer of 2013.  In June, 2013, counsel for Plaintiffs contacted DuPont's counsel to determine if DuPont still intended to conduct a site visit.  Ms. Mustico, DuPont's counsel, explained in a letter that DuPont "does not intend to conduct further site visits for purposes of the Claims Resolution Process of properties belonging to your clients who have successfully opted out of the settlement."  *Id.* at 4, ¶ 7.  Shortly thereafter, DuPont confirmed that it was "willing to continue with property inspections for any of your clients who wish to continue in the Imprelis Claims Resolution Process."  *Id.* at 4, ¶ 8.  Following these letters – and responses from Plaintiffs' counsel confirming the intent of Pilgrim Village and others to opt out of the class – DuPont has not requested a visit to the Pilgrim Village property and has not conducted a site inspection.  Thus, DuPont has acted in a manner consistent with an understanding that Pilgrim Village is among the claimants who opted-out of the class settlement.

The Court's class settlement notice required submission of written opt-out notices on or before June 28, 2013. The Court held its final fairness hearing on September 27, 2013; through the date of the fairness hearing, DuPont agreed to accept opt-out notices submitted by parties as timely. And it continued to treat Pilgrim Village as though it had opted out of the class settlement. Following the fairness hearing, on November 20, 2013, Pilgrim Village elected to also file its formal opt-out notice to the claims administrator. Roughly one week later, the Court's Law Clerk, Ms. Cole, suggested a December 4, 2013 conference to resolve discrepancies, including the Pilgrim Village opt-out. In light of the noted discrepancy, the scheduled conference date (and the intervening Thankgiving holiday) and DuPont's refusal to accept the submitted opt-out notice as timely, Pilgrim Village has elected to formally move for an extension of time to submit its opt-out notice.

**C.    Viewed in Light of All Relevant Circumstances, the Relevant Factors Weigh Substantially in Favor of Granting an Extension of Time**

As the foregoing facts demonstrate, Pilgrim Village acted in various ways to provide notice to DuPont of its intention to opt-out of the settlement class and DuPont responded to those assertions by treating Pilgrim Village in the same manner that it treated other parties who had opted-out of the class. In the totality of the circumstances, Pilgrim Village acted in a good faith belief that it had sufficiently made known its intention to opt-out and in accordance with DuPont's

6

apparent understanding of that election. And its failure to provide the written formal notice sooner is clearly the product of excusable neglect. *See generally Pioneer Inv. Servs. Co.*, 507 U.S. at 393 ("'excusable neglect' is understood to encompass situations in which the failure to comply with the filing deadline is attributable to negligence.").

In circumstances in which the inaction by the party seeking an extension of time was both more egregious and intrusive upon the resolution of the class action, the Third Circuit has affirmed the grant of additional time to formally opt-out of a settlement class. *See In re Insurance Brokerage Antitrust Litig.*, 374 Fed. Appx. at 266. There, the district court established an October 20, 2008 deadline for potential claimants to opt-out of a settlement class. *See In re Insurance Brokerage Antitrust Litig.*, No. 04-5184 (GEB), MDL No. 1663, 2009 WL 22555513 at *1 (D.N.J. July 24, 2009). The district court proceeded to conduct a December 15, 2008 fairness hearing and ultimately rendered a February 17, 2009 judgment. *See id.* at *2. Six days later, a primary defendant (Marsh) filed a motion to enjoin two claimants – Epix and Office Depot – from pursuing then-pending state court actions arising from the dispute giving rise to the class action. *See id.* at *3. Marsh maintained that the state court actions should be enjoined because Epix and Office Depot had not opted out of the Settlement Agreement and their claims were barred by the court's judgment. *Id.* In response to Marsh's motion, on March 3,

7

2008 (more than four months after the original deadline for opting-out of the class) Epix and Office Depot sought extensions of time to opt out of the settlement agreement. *Id.*

In assessing the *Pioneer* factors, the district court concluded that any prejudice to Marsh in permitting the extension was offset by the inequitable windfall it stood to realize if the motions were denied and Epix and Office Depot were prohibited from opting-out. *Id.* at *4. Thus, "any prejudice Marsh [stood to] suffer if the motions . . . are granted [was] not a compelling consideration." *Id.* Further, though that class action had already resulted in a final judgment, the district court rejected an argument that permitting late opt-outs would undermine the settlement agreement. *Id.* Ultimately, "any prejudice Marsh [would have suffered] if the motions of Epix and Office Depot [were] granted is minimal, and outweighed by the potential windfall to Marsh if its motion to enjoin is granted." *Id.* The other factors equally weighed in favor of an extension. The length of the delay was of little concern because "granting Epix and Office Depot's will have little or no impact on future proceedings in MDL 1663." *Id.* at *5. The district court found that the third factor weighed in favor of an extension because there were questions about whether Epix and Office Depot had received the class notice packets, but observed that even if those parties had notice of the settlement, there is "no 'per se rule that excusable neglect is unavailable to a party whose untimely

8

filing was due to circumstances within his or her control.'" *Id.* (quoting *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 326 F.3d 315, 322-23 (3rd Cir. 2001); *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3rd Cir. 2000)).  And the Court largely ignored the good faith factor as the parties had not meaningfully raised that issue.  *Id.* at *6.

The Third Circuit did not discuss the factors at any significant length, but it noted the district court's findings and held that "the District Court exercised reasonable discretion in extending the 'opt-out' deadline so that Office Depot and Epix could be excluded from the class settlement and thus pursue their state court litigation."  *In re Ins. Brokerage Antitrust Litig.*, 374 Fed. Appx. at 266.

The circumstances here are less egregious than those that existed in that case and certainly support findings that the relevant factors weigh in favor of an extension of time.  In both cases, the claimants seeking additional time to opt-out were already parties in litigation separate and apart from the class action itself.  Here, however, unlike the situation in *Insurance Brokerage*, the party seeking the extension of time had repeatedly identified itself as having opted out (or at least, having intended to opt out) of the class settlement through extended and direct communication with defense counsel expressing the understanding that Pilgrim Village intended to opt-out of the settlement class.  *See Miller Declaration* at 3-5, ¶¶ 6-11.  And, unlike the circumstances in *Insurance Brokerage*, the defendant has,

9

through its conduct, manifested its understanding of that election through, for example, its failure to request and complete a site inspection of the Pilgrim Village property after insisting upon inspection of only those properties owned by participants in the class. *See id.* at 4-5 ¶¶ 7-8, 11; *see also id.* at Ex. H (explaining that "DuPont is willing to continue with property inspections *for any of your clients who wish to continue in the Imprelis Claims Resolution Process*.")(emphasis added).

Having advised DuPont repeatedly of that intent and having DuPont respond to those expressions of intent in a manner consistent with an understanding that Pilgrim Village had opted out (in particular, the aborted site visit to the Pilgrim Village property), any potential prejudice to DuPont from permitting additional time in this circumstance is minimal and, as was true in *Insurance Brokerage*, is offset by the likelihood that DuPont would reap an inequitable benefit from disallowing Pilgrim Village's opt-out notice, particularly since it has been made aware of that party's belief that participation in the class settlement would not afford Pilgrim Village compensation for the full value of its losses. *See Miller Dec.* at 5, ¶ 10.

The outcome in *Insurance Brokerage* also demonstrates that the length of the delay and its potential effect on judicial proceedings are negligible at most. In *Insurance Brokerage*, the district court found no problem with a delay of more

than four months and an extension that permitted parties to opt-out beyond the date a final judgment was rendered. Here, the notice was due to be filed on or before June 28, 2013. Pilgrim Village actually filed its notice on November 20, 2013. Thus, the timetable in the two cases is approximately similar.[1] At this point, permitting a party who has operated under a demonstrably reasonable belief that it had provided constructive notice to the defendant of its intention to opt-out to fulfill that intention will have absolutely no bearing on the proceedings in this MDL. The Pilgrim Village claims will, like those of many other plaintiffs, continue to be part of an existing suit that will persist beyond the rendition of judgment resolving the class action.

There is no reason here to support a conclusion that Pilgrim Village has acted in anything other than good faith in its dealings with DuPont. This is not a circumstance in which the party seeking additional time has avoided any contact with the litigation; Pilgrim Village has affirmatively sought to make known its election to opt-out of the settlement class, though it may have chosen an incorrect vehicle for doing so. The basic facts of this circumstance demonstrate an ongoing effort to make clear that Pilgrim Village intends to pursue its separate action.

---

[1] Whether this should be considered a five-month lapse of time or a two-month lapse is in question, given the fact that DuPont has conceded to the timeliness of opt-out notices filed between the June 28, 2013 opt-out deadline and the September 27, 2013 fairness hearing. In other words, for all intents and purposes, the course of dealing in this litigation suggests that the Pilgrim Village opt-out was filed less than two months after the effective deadline for opting out.

11

Thus, the first, second, and fourth factors to be balanced in this determination weigh substantially in favor of an extension of time based upon excusable neglect. The third factor -- the reason for the delay -- likewise militates in favor of an extension of time. Specifically, Pilgrim Village has undertaken a variety of methods to convey its intention to opt-out and those efforts have been met with vindicating conduct from DuPont. Indeed, given multiple opportunities following specific inquiries by counsel about the need to conduct any site inspections, DuPont has cabined its need for such inspections to apply only to participants in the settlement class and has made no effort to seek inspection of the Pilgrim Village property after the opt-out date had passed. Effectively, DuPont has acknowledged that Pilgrim Village is not a member of the settlement class and, therefore, is not the owner of a property that it intends to inspect at this point.

## CONCLUSION

For the foregoing reasons, Plaintiff Pilgrim Village Associates respectfully requests that the Court find that it has acted in good faith and that its failure to file the formal opt-out notice was the result of excusable neglect. Accordingly, Pilgrim Village Associates respectfully requests that the Court grant its Motion to Enlarge Time to Exclude Itself from Class and Imprelis Claims Resolution Process and extend the time for providing notice from June 28, 2013 to November 20, 2013.

Respectfully submitted, this the 3rd day of December 2013.

By: /s/ William J. Maiberger, Jr.
FRANCISCO GUERRA, IV. – lead counsel
Texas Bar No. 00796684
WILLIAM J. MAIBERGER, JR.
Texas Bar No. 00787949

WATTS GUERRA LLP
Bank of America Plaza
300 Convent, Suite 100
San Antonio, Texas 78205
Phone: (210) 527-0500
Fax: (210) 527-0501
fguerra@wattsguerra.com
wmaiberger@wattsguerra.com

COUNSEL FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2013, I electronically filed the foregoing **PLAINTIFF PILGRIM VILLAGE ASSOCIATES' MOTION TO ENLARGE TIME TO EXCLUDE ITSELF FROM CLASS AND IMPRELIS CLAIMS RESOLUTION PROCESS AND BRIEF IN SUPPORT OF MOTION**, with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the attorneys of record in this matter. Parties may access this filing through the Court's system.

By: /s/ William J. Maiberger, Jr.
FRANCISCO GUERRA, IV. – lead counsel
Texas Bar No. 00796684
WILLIAM J. MAIBERGER, JR.
Texas Bar No. 00787949

WATTS GUERRA LLP
Bank of America Plaza
300 Convent, Suite 100
San Antonio, Texas 78205
Phone: (210) 527-0500
Fax: (210) 527-0501
fguerra@wattsguerra.com
wmaiberger@wattsguerra.com

COUNSEL FOR PLAINTIFFS