IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) | Case No. 2:11-md-2284-GP |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | ) ) ) ) |  |

ORDER GRANTING MOVANTS' MOTION
TO BE EXCLUDED FROM THE SETTLEMENT CLASS
PURSUANT TO RULE 60(b), OR, IN THE ALTERNATIVE, MOTION FOR
ENLARGEMENT OF TIME TO PERFECT OPT OUT PURSUANT TO RULE 6(b)

AND NOW, this _____ day of _____, 2014, upon consideration of Movants Grant B. Castle and Rebecca Madeira Castle's Motion To Be Excluded From The Settlement Class Pursuant To Rule 60(b), Or, In The Alternative, Motion For Enlargement Of Time To Perfect Opt-Out Pursuant To Rule 6(b), and any response thereto, **IT IS HEREBY SO ORDERED** that said Motion is **granted**.  Accordingly, the Castles are provided relief from the Final Judgment and are hereby excluded from the Settlement Class.

BY THE COURT:

_____

Hon. Gene E.K. Pratter

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) ) ) ) | Case No. 2:11-md-2284-GP |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS |  |  |

## MOTION OF MOVANTS GRANT B. CASTLE AND REBECCA MADEIRA CASTLE TO BE EXCLUDED FROM THE SETTLEMENT CLASS PURSUANT TO RULE 60(b), OR, IN THE ALTERNATIVE, MOTION FOR ENLARGEMENT OF TIME TO PERFECT OPT OUT PURSUANT TO RULE 6(b)

Pursuant to Federal Rule of Civil Procedure 60(b), Movants Grant B. Castle and Rebecca Madeira Castle (the "Castles"), as trustees each owning a one-half (½) undivided interest in a trust which holds title to a single family home located in Southwest Harbor, Maine, respectfully move for relief from the Court's February 4, 2014 Final Judgment (the "Final Judgment") by excluding the Movants from the class action settlement on the grounds that they should have been included in EXHIBIT A to the Final Judgment, which exhibit lists the names of claimants who opted out of the Settlement Class.

For the reasons set forth more fully in the incorporated and attached Memorandum of Law, the Castles properly and timely opted out of the Settlement Class as a result of their February 15, 2013 letter to DuPont (the "February 15, 2013 opt out letter"), which is attached as **Exhibit 1** to this Motion. The Castles' exclusion from EXHIBIT A to this Court's Final Judgment identifying those parties that timely opted out of the Settlement Class was therefore the result of a mistake, inadvertence, surprise or excusable neglect. The February 15, 2013 opt out letter properly put DuPont on actual notice of Movants' intention to opt out, and therefore DuPont would suffer no prejudice if this Court granted this Motion.

1

In the alternative, if this Court finds the Castles' February 15, 2013 opt out letter deficient, the Castles respectfully seek from this Court an extension of time, pursuant to Federal Rule of Civil Procedure 6(b), to cure any deficiencies and/or file a notice of exclusion from the Settlement Class.  For the reasons set forth more fully in the attached Memorandum of Law, any delay or deficiency by the Castles was due to excusable neglect and was otherwise caused by DuPont to the prejudice of the Castles.

**WHEREFORE**, Movants Grant B. Castle and Rebecca Madeira Castle respectfully move for relief from the Court's February 4, 2014 Final Judgment by excluding the Castles from the class action settlement on the grounds that they should have been included in EXHIBIT A to such Final Judgment, which lists the names of those claimants who opted out of the Settlement Class.   In the alternative, the Castles respectfully seek an extension of time to cure any deficiencies in their prior February 15, 2013 opt out letter or to file a notice of exclusion from the Settlement Class.

Dated: <u>April 30, 2014</u>

**GRANT B. CASTLE and**
**REBECCA MADEIRA CASTLE**

By _____
Maurice R. Mitts, Esq.
Gerard M. McCabe, Esq.
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA  19103
(215) 866-0123

and

Bernard J. Kubetz, Esq.
(*Pro Hac Vice* application pending)
Eaton Peabody
80 Exchange Street
P.O. Box 1210
Bangor, ME 04402-1210
(207) 947-0111

**Attorneys for Movants**

# Exhibit 1

February 15, 2013

DuPont Imprelis Claims Resolutions Process
c/o Epiq Systems
PO Box 4834
Grand Central Station
New York, NY 10163-4834

Re: Claimant ID 9014127
Established: 1/1/11

This is to advise you that I have retained legal representation for Claim
#9014127; Seawall Holdings LLC for property at 18 Seawall Point Lane,
Southwest Harbor, Maine 04679.

My counsel is:
        William B. Devoe
        Eaton Peabody
        80 Exchange Street
        Bangor, Maine 04402
        207.992.4336
        wdevoe@eatonpeabody.com

Together with my counsel, I will entertain settlement offers through the Claims
Resolution Process. If the CRP process proves unsatisfactory, as has been the
case thus far, I will pursue my complaint through an independent lawsuit led by
counsel at Eaton Peabody, Bangor, Maine.  I am not participating in any of the
class action suits pending against DuPont nor do I want to be solicited to join
any class action proceedings.

Please direct all future communication regarding my claim to my attorney as
listed above.

Thank you.

Rebecca Madeira Castle
Seawall Holdings LLC

Property Location:
18 Seawall Point Lane
Southwest Harbor. Maine 04679

EXHIBIT
1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) ) ) | Case No. 2:11-md-2284-GP |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | ) ) ) | |

**MOVANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOVANTS' MOTION TO BE
EXCLUDED FROM THE SETTLEMENT CLASS
PURSUANT TO RULE 60(b), OR, IN THE ALTERNATIVE, MOTION FOR
ENLARGEMENT OF TIME TO PERFECT OPT OUT PURSUANT TO RULE 6(b)**

Movants Grant B. Castle and Rebecca Madeira Castle (the "Castles"), by and through their undersigned counsel, submits this Memorandum of Law in support of their Motion To Be Excluded From The Settlement Class Pursuant To Rule 60(b), Or, In The Alternative, Motion For Enlargement Of Time To Perfect Opt Out Pursuant To Rule 6(b) (the "Castles' Motion"). For the reasons set forth in the Castles' Motion and this Memorandum, the Castles respectfully requests that this Court grant the Castles' Motion thereby providing relief to the Castles from this Court's Final Judgment dated February 4, 2014 (the "Final Judgment"), pursuant to Federal Rules of Civil Procedure Rule 6(b) and Rule 60(b), by excluding the Castles from the Settlement Class.

**A. Introduction**

The Castles' Motion sets forth two (2) claims for relief. **First**, the Castles seek relief from the Final Judgment because their names were mistakenly omitted from the list of parties

1

that opted out of the class settlement as identified in EXHIBIT A to the Final Judgment. The Castles sent DuPont a timely opt out letter, dated February 15, 2013 (the "opt out letter"). *See* Ex. 1, Declaration of Rebecca Madeira Castle, at ¶ 10 ("RMC Declaration"). The Castles' opt out letter constitutes a proper opt out from the settlement class and excluded the Castles from the class action litigation. As a result, this Court should grant the Castles' Motion for relief from the Court's Final Judgment because their names were not included in the opt out list due to a mistake, surprise or excusable neglect.

**Second**, the Castles' alternative claim for relief seeks an extension of time to cure any deficiencies in their opt out letter or to file a notice of exclusion from the Settlement Class. As set forth more fully below, to the extent the Castles' opt out letter is deemed by the Court not to have been submitted timely, or not in accordance with the instructions set forth in the Long Form Notice provided to the Class Members, such deficiencies, if they existed, were due to excusable neglect.

### B. **Statement of Facts**

Imprelis is a chemical product created, marketed, and sold by DuPont for use as an herbicide and pesticide in residential and commercial settings to kill unwanted weeds. *See* Memorandum in Support of Order Re: Plaintiffs' Motion for Final Approval of Class Action Settlement, Oct. 17, 2013, Dkt. No. 243. As this Court is well aware, when Imprelis was applied it did not just kill weeds, it also killed trees and other vegetation. *Id.* On August 11, 2011, the United States Environmental Protection Agency ordered DuPont to immediately cease the sale of Imprelis. *Id.* In September 2011, DuPont started a Claims Resolution Process ("CRP") to compensate those whose property was harmed by the use of Imprelis. *Id.* Despite the CRP,

many class action lawsuits were filed against DuPont and, following proceedings before the Judicial Panel on Multidistrict Litigation, the cases were centralized in this Court on October 20, 2011. *See* Transfer Order, Oct. 20, 2011, Dkt. No. 1.

The Castles are trustees each owning a one-half (½) undivided interest in a single family home located in Southwest Harbor, Maine.  On May 31, 2011, Imprelis was applied to the Castles' property resulting in substantial damage and killing many mature and valuable trees. *See* RMC Declaration, at ¶ 4.  The Castles asserted a claim through DuPont's CRP.  *Id.* at ¶ 6. As a result, the Castles were deemed included in the Settlement Class of property owners as a threshold matter.

On February 12, 2013, this Court entered an Order that preliminarily approved the class action settlement.  *See* Order, Feb. 12, 2013, Dkt. No. 160 ("Preliminary Approval Order").  That Order provided that "[a]ny Settlement Class Member may opt out of the Settlement by following the 'Exclusion' procedure set forth in the Long Form Notice and the Settlement Agreement."  *Id.* The Order also stated that "[a]ny Class Member who wishes to opt out of the Class must do so in writing by mailing a request for exclusion to the Claims Administrator," and the request had to be postmarked by a June 28, 2013 deadline.  *Id.*  Additionally, the request needed to be signed and list the Class Member's full name, valid mailing address and functioning telephone number. *Id.*

Three (3) days later, on February 15, 2013, the Castles sent DuPont their opt out letter. *See* Ex. 1, RMC Declaration, at ¶ 10.  At that time, the Castles had not received the Court's February 12, 2013 Preliminary Approval Order.  *Id.* at ¶ 12.  In the February 15, 2013 opt out letter, which the Castles believed would be sufficient to exclude them from the class action

pending before this Court, the Castles stated that they were "not participating in any of the class action suits pending against DuPont" and that they did not "want to be solicited to join any class action proceedings." *See* Ex. 1, RMC Declaration, at ¶ 10. Therefore, DuPont had actual notice of the Castles' decision to opt out before the June 28, 2013 deadline imposed in the Court's Preliminary Approval Order.

In addition, the Castles informed DuPont that they would only entertain settlement offers through the CRP and, if they failed to reach a satisfactory resolution through the CRP, the Castles would pursue an independent lawsuit. *Id.* The Castles also informed DuPont that they had retained legal representation and to direct all future communication to their counsel. *Id.* The Castles sent their February 15, 2013 opt out letter to the DuPont Imprelis Claims Resolution Process c/o Epiq Systems at P.O. Box 4834, Grand Central Station, New York, NY 10163-4834. *Id.*

After February 15, 2013, neither the Castles nor their counsel received any further correspondence regarding the opt out letter or the Castles' opt out status. *See* Ex. 1, RMC Declaration at ¶ 15; Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 5. However, counsel for DuPont continued to communicate with Movants' counsel to arrange for an inspection of the Castles' property under the CRP. *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 4. Throughout these communications, DuPont's counsel never mentioned the class action litigation, the opt out deadline or the Castles' opt out letter. *Id.* at ¶ 5.

On January 22, 2014, believing that they would not obtain a satisfactory settlement through the CRP, the Castles brought an independent action against DuPont in the Maine Superior Court. *Id.* at ¶ 6. On March 11, 2014, DuPont informed the Castles, for the first time,

that DuPont did not consider their February 15, 2013 opt out letter to be an effective request for exclusion from the class settlement. *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 3(a) (referencing and attaching March 11, 2014 letter from G. Hansel to B. Kubetz). As a result, the Castles did not discover, and had no reason to know, that they were not included in the opt out list in the Court's Final Judgment until March 11, 2014. *See* Ex. 1, RMC Declaration, at ¶ 20.

## C. Legal Argument

### 1. The Castles Are Entitled To Relief From The Final Judgment Under Rule 60(b) Because They Timely And Effectively Opted Out Of The Settlement Class.

The Castles are entitled to relief from this Court's Final Judgment because their opt out letter was timely, effective, placed DuPont on actual notice and properly excluded the Castles from the Settlement Class. As a result, the Castles' omission from the opt out list included as EXHIBIT A to this Court's Final Judgment was due to mistake, inadvertence, surprise or excusable neglect[1] under Rule 60(b)(1). In addition, other equitable reasons justify granting the Castles' relief from this Court's Final Judgment pursuant to Rule 60(b)(6).

Rule 60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or a party's representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. … or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b). Relief from a final judgment is "only granted in extraordinary circumstances" under Rule 60(b)(6). *Jackson v. Danberg*, 656 F.3d 157, 165 (3d Cir. 2011) (citations omitted). However, relief from a final

---

[1] A plaintiff requesting an extension of time to opt out of a class settlement under either Rule 6(b) or Rule 60(b) must ordinarily demonstrate excusable neglect. Because the analysis for excusable neglect is the same under Rules 6(b) and 60(b), the Castles incorporate the excusable neglect analysis set forth below into their alternative claim for relief pursuant to Rule 6(b). The Castles' claim for relief pursuant to Rule 60(b) also relies on other reasons that justify relief, including mistake, inadvertence or surprise.

judgment under Rule 60(b)(6) is also "available where the party seeking relief demonstrates that 'extreme' and 'unexpected' hardship will result absent such relief." *Id.* (citing *United States v. Swift & Co.*, 286 U.S. 106, 119 (1932)).

The goal for this Court in deciding a Rule 60(b) motion "is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Boughner v. Sec'y of Health, Educ. and Welfare*, 572 F.2d 976, 977 (3d Cir. 1978). In the Third Circuit, "a 60(b) motion to set aside judgment is to be 'construed liberally to do substantial justice.' However, a 'Rule 60(b) motion may not be used as a substitute for appeal.'" *In re Linerboard Antitrust Litigation*, 223 F.R.D. 357, 364 (3d Cir. 2004) (citations omitted). A district court's "discretion to grant relief has been described as 'especially broad,' and the rule has been described as a 'grand reservoir of equitable power to do justice in a particular case.'" *Id.* at 363 (citations omitted). Here, justice requires that this Court relieve the Castles from the Final Judgment by finding that the Castles' opt out letter excluded them from the Settlement Class and preserved their right to bring an independent lawsuit against DuPont.

It was only after the Castles brought an action against DuPont in the Maine Superior Court that DuPont, for the first time, notified the Castles that, in DuPont's view, the Castles' February 15, 2013 opt out letter did "not constitute an effective request for exclusion from the Imprelis class settlement." *See* Ex. 1, RMC Declaration, at ¶ 20; Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 3(a). DuPont's argument rings hollow and is contrary to the law in the Third Circuit Court of Appeals.

In the Third Circuit, "a 'reasonable indication' of intent to opt out is sufficient" to constitute a "proper opt out." *In re Linerboard Antitrust Litigation*, 223 F.R.D. at 365 (citation

omitted).  "Any reasonable indication of a desire to get out should suffice."  *Id.* (citing *Plummer v. Chemical Bank,* 668 F.2d 654, 657 n.2 (2d Cir. 1982).  The standard is necessary to protect an individual's Constitutional due process right to opt out of class action litigation that was identified in *Phillips Petroleum v. Shutts,* 472 U.S. 797, 812 (1985).  *Id.*  To protect an individual's due process right to opt out of class action litigation, courts use "considerable flexibility" in determining whether an action constituted an adequate request for exclusion from the class.  *In re Linerboard Antitrust Litigation,* 223 F.R.D. at 365.[2]

Here, the Castles' February 15, 2013 opt out letter unequivocally constituted a "proper opt out" under the Third Circuit standard.  In the opt out letter, Ms. Castle wrote that "I am not participating in any of the class action suits pending against DuPont nor do I want to be solicited to join any class action proceedings."  *See* Ex. 1, RMC Declaration, at ¶ 10.  The Castles' opt out letter was an explicit indication by them that they excluded themselves from the class action litigation and any future class action proceedings.  It was not conditional but rather unequivocal.  The Castles' opt out letter constituted a legally sufficient request for exclusion from the Settlement Class, providing DuPont with actual notice.  In the Third Circuit, the Castles' opt out letter effectively protected their due process right to opt out of the class action litigation and their right to bring an independent action against DuPont for their Imprelis-related damages.

Additionally, any argument by DuPont that the opt out letter was not legally effective is subject to the doctrine of equitable estoppel.  Courts apply equitable estoppel "to avoid injustice in certain cases."  *Heckler v. Cmty. Health Servs. of Crawford Cnty., Inc.,* 467 U.S. 51, 59 (1984).

---

[2]For instance, the Tenth Circuit has held that a class member who filed an opt out notice after the deadline should be permitted to opt out because he made statements during the exclusion period indicating a desire to opt out.  *In re Four Seasons Securities Laws Litigation*, 493 F.2d 1288 (10th Cir. 1974).  In that case, the Court rejected "a rule that in order to opt out, the request must be explicit."  *Id.* at 1291.

To prevail on an equitable estoppel claim, a party must prove: (1) a material misrepresentation; (2) reasonable reliance upon that misrepresentation; and (3) damage resulting from the misrepresentation. *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1993).

DuPont received the Castles' opt out letter and engaged in actions and communications with the Castles that confirmed and conformed to DuPont's awareness that the Castles were excluded from the Settlement Class. *See* Ex. 1, RMC Declaration, at ¶¶ 15, 19. DuPont's silence as to the Castles' opt out status and actions following its receipt of the Castles' opt out letter constitutes a material misrepresentation. The Castles justifiably relied on DuPont's actions and silence to believe that they were no longer members of the class action settlement and that they did not need to take any additional steps to preserve their right to sue DuPont. *Id.* Only after the Castles filed an independent lawsuit in Maine did DuPont inform the Castles, for the first time, that it believed the Castles' February 15, 2013 opt out letter was ineffective. *Id.* at ¶ 20. As a result, this Court should disregard any argument by DuPont that the Castles' opt out letter was ineffective because the Castles' justifiably relied on DuPont's actions and silence, and because DuPont's belated change of position will cause the Castles irreparable harm.

After the Castles sent DuPont their opt out letter, in which they informed DuPont that they had retained legal counsel and instructed DuPont to direct all further claim-related communications to their counsel, DuPont communicated solely with Movants' counsel, confirming that DuPont had received the opt out letter. *See* Ex. 1, RMC Declaration, at ¶¶ 15, 19. DuPont acted as if the Castles had properly opted out of the Settlement Class because DuPont never discussed the class action litigation with Movants' counsel. *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 6.

For over a year, DuPont remained silent as to the Castles' opt out status.  DuPont did not notify the Castles that it considered their opt out letter ineffective.  Nor did DuPont share with this Court that the Castles had indicated they were "not participating in any of the class action suits pending against DuPont" and did not "want to be solicited to join any class action proceedings."  *See* Ex. 1, RMC Declaration, at ¶ 10.  In e-mail exchanges in June 2013, DuPont's counsel did not notify Movants' counsel that the opt out deadline was approaching.  *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 3(b).  DuPont either withheld this information, which prevented the Castles from exercising their due process right to opt out, or DuPont, at that time, did not believe the Castles needed to take any additional actions to opt out of the Settlement Class.  Either way, as a result, the Castles justifiably relied on DuPont's silence and actions following their February 15, 2013 opt out letter to reasonably believe that the Castles had properly excluded themselves from the Settlement Class.

On January 22, 2014, the Castles filed a complaint in the Maine Superior Court against DuPont.  In the face of that litigation, DuPont changed course.  On February 10, 2014, DuPont's counsel in Maine sent Movants' counsel an e-mail in which DuPont's counsel opined that the Castles were barred from bringing an action against DuPont because they were members of the Settlement Class.  *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 3(c).  Movants' counsel responded by sending DuPont a copy of the Castles' opt out letter.  *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 8.  In a letter, dated March 11, 2014, DuPont suggested, for the first time, that the Castles' February 15, 2013 "letter does not constitute an effective request for exclusion from the Imprelis class settlement."  *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 3(a).

After over a year of silence, DuPont changed its position and now claims that the Castles'

opt out letter was ineffective.  The Castles justifiably relied on DuPont's actions and silence to

reasonably believe that they had excluded themselves from the class settlement.  Because

DuPont's sudden change will substantially and unfairly prejudice the Castles, preventing them

from exercising their due process right to opt out of the class action litigation, this Court should

disregard any argument that the opt out letter was legally ineffective.

2.    **In The Alternative, This Court Should Grant An Enlargement Of Time Because The Castles Acted In Good Faith And Any Deficiencies In Their Opt Out Letter Were Due To Excusable Neglect.**

Alternatively, the Castles move for relief pursuant to Federal Rule of Civil Procedure

6(b) for an enlargement of time to timely file a notice of exclusion from the Settlement Class or

to cure any deficiencies this Court may find in the Castles' February 15, 2013 opt out letter.  Any

delay associated with the Castles' filing of a notice of exclusion and/or curing any deficiencies in

their opt out letter was due to excusable neglect.  The Castles sent DuPont what they reasonably

believed was a proper and legally sufficient opt out letter immediately after the right to opt out

vested.  Moreover, the Castles' opt out letter was sent before class members received procedural

instructions on how to opt out.  Accordingly, the Castles reasonably relied on a subsequent

publication notice to conclude they did not need to take any additional actions and the Castles

subsequently and justifiably relied on DuPont's actions and silence to believe they were

excluded from the class settlement.

Rule 6(b) sets forth the general rule for enlargement of time for motions.  Specifically,

Rule 6(b) reads, "[w]hen an act may or must be done within a specified time, the court may, for

good cause, extend the time . . . on motion made after the time has expired if the party failed to

act because of excusable neglect." Fed. R. Civ. P. 6(b).  The Third Circuit Court of Appeals has emphasized the importance of deadlines in mass tort class action cases; however, the Third Circuit has also cautioned courts not to ignore equitable considerations at the expense of "rigid and unquestioned adherence" to deadlines.  *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 316 (3d Cir. 2001).  In this case, the equitable considerations weigh against a rigid application of the opt out deadline and in favor of granting the Castles' Motion and finding that the Castles were excluded from the Settlement Class.

To benefit under Rule 6(b), the moving party must demonstrate that the failure to file a timely opt out was due to excusable neglect.  *See In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195-96 (3d Cir. 2000).  In determining whether a party has demonstrated excusable neglect, courts in the Third Circuit examine four (4) factors: (1) the danger of prejudice to the non-movant; (2) the length of delay and its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246, F.3d at 322-23 (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993)).

The determination of whether a party's neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."  *Pioneer Inv. Servs. Co.* 507 U.S. at 395.  "Where those equitable powers are exercised in the form of case management decisions in a complex class action, 'district court discretion is at its greatest.'"  *In re Ins. Brokerage Antitrust Litig.*, 374 F. App'x 263, 266 (3d Cir. 2010) (quoting *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003)).

### a.  **There Is No Danger Of Prejudice To DuPont.**

Due to the unique circumstances presented in this case, granting the Castles an extension to timely file a notice of exclusion from the Settlement Class or to cure any deficiencies this Court may find in the Castles' February 15, 2013 opt out letter will not present any danger of unfair prejudice to DuPont.  This is not a case where putative class members slept on their rights to opt out and are now requesting permission to opt out after the deadline.  The Castles timely exercised their right to opt out.  The Castles sent DuPont their February 15, 2013 opt out letter three (3) days after the right to opt out vested when this Court entered its February 12, 2013 Preliminary Approval Order.

The Castles' opt out letter put DuPont on actual notice that the Castles were excluding themselves from the class action settlement.  The opt out letter does not state that the Castles were "likely to" or "intended to" opt out at some later date.  *See* Ex. 1, RMC Declaration, at ¶ 10. Their declaration to DuPont was unconditional.  DuPont will not be unfairly prejudiced by having to litigate an additional case if the Castles are permitted to opt out because the Castles' opt out letter informed DuPont of the Castles' intention to do so.  *Id.*

If the Castles are permitted to opt out, DuPont cannot claim to be unfairly prejudiced because DuPont had actual notice of the Castles' opt out letter five (5) months before the June 28, 2013 deadline, chose not to share the letter with this Court, chose not to put the Castles on the opt out list, and remained silent, which induced the Castles into believing that they had properly excluded themselves from the Settlement Class.  As a result, this factor weighs in favor of granting the Castles' Motion.

**b.  The Length Of The Delay And Its Potential Effect On Judicial Proceedings Weigh In Favor Of Granting The Castles' Motion.**

By their letter sent to and received by DuPont, the Castles sought to opt out of the class settlement on February 15, 2013, well in advance of the June 28, 2013 opt out deadline.  Because the Castles were not included in the list of opt out parties provided to this Court, the Castles now seek to cure any deficiencies in their opt out letter, or seek an extension of time in which to file a notice of exclusion six months after the deadline.  Any resulting delay, however, was caused by DuPont.

Furthermore, any delay will not have a tangible effect on pending state court judicial proceedings in this matter.  DuPont has not yet answered the Castles' state court complaint and a consented-to stay has been granted.  *See* Ex. 2, Declaration of Bernard J. Kubetz, at ¶ 10. Furthermore, an appeal of the final class action settlement approval is also pending.  As a result, this factor weighs in favor of granting the Castles an enlargement of time.

**c.  The Reasons For The Purported Delay Favor Granting The Motion.**

DuPont is responsible for and has otherwise caused any delay in this case.  The Castles did not cause the purported delay because they reasonably believed that their February 15, 2013 opt out letter had effectively excluded them from the class settlement as of February 15, 2013. The Castles took their action to opt out over four and a half (4½) months in advance of the court-imposed deadline.  Instead, it was DuPont which, in the face of the Castles' letter, delayed. DuPont received the Castles' opt out letter and then delayed by waiting over a year before DuPont informed the Castles that it considered their opt out letter to be legally deficient - a communication that took place well after the opt out deadline, resulting in unfair prejudice to the Castles.

Any delay is due to DuPont's failure to share the Castles' opt out letter with this Court or with Rust Consulting, which had been engaged to provide notice and administration services for the class action settlement. *See* Declaration of Kimberly K. Ness, Aug. 7, 2013, Dkt. No. 184. Rust Consulting reported that 62 of the 580 opt out requests received by the deadline were deficient.[3] *Id.* DuPont provided all other property owners an opportunity to cure deficiencies in their opt out requests and sent them each a "deficiency letter." *Id.* DuPont provided these property and business owners with an additional opportunity to opt out, so long as they responded to the deficiency letter or cured any deficiencies before the opt out deadline. *Id.*

However, DuPont never sent the Castles a deficiency letter challenging the February 15, 2013 opt out letter. DuPont failed to inform the Castles that DuPont believed that the Castles' opt out letter was deficient **until March 11, 2014** (almost 13 months after receipt of the Castles' opt out letter). As a result, DuPont never provided the Castles with an opportunity to cure any deficiencies in their opt out letter. *See* Ex. 1, RMC Declaration, at ¶ 14. Instead, DuPont, remained silent and continued to negotiate with the Castles toward a resolution of their Imprelis claim through the CRP. DuPont did not share the Castles' opt out letter with either the Court or Rust Consulting. Because the Castles sent DuPont their opt out letter on February 15, 2013, the Castles should have had four (4) months to cure any deficiencies. Additionally, DuPont agreed to accept all late or incomplete opt outs up to the date of the final fairness hearing on September 27, 2013. *See* Order, Oct. 17, 2013, Dkt. No. 244. Therefore DuPont had ample opportunity to notify the Castles that it considered the Castles' opt out letter to be legally ineffective. As a result, any delay was caused by DuPont to the prejudice of the Castles.

---

[3]According to the Declaration of Kimberly K. Ness, exclusion requests were considered deficient if they: (1) were not signed by the property or business owner; (2) did not include the property or business owner's telephone number; or (3) the property owners' affected property address was not identified.

The Castles did not cause any delay because they justifiably believed that their opt out letter was sufficient to exclude them from the Settlement Class as of February 15, 2013. The Castles explicitly informed DuPont that they were "not participating in any of the class action suits pending against DuPont." *See* Ex. 1, RMC Declaration, at ¶ 10. The Castles reasonably relied on DuPont's subsequent actions and silence to believe that they had effectively opted out, and that DuPont understood that they were no longer members of the Settlement Class. It was not until March 11, 2014, that DuPont first opined that the Castles' opt out letter did not exclude them from the class settlement.

In addition, the Castles' opt out letter should not be considered ineffective for failure to comply with the opt out instructions set forth in the Long Form Notice. *See* Exhibit 8 to Motion for Settlement Preliminary Approval of Class Action Settlement (Oct. 19, 2012), Dkt. No. 117. The class members' due process right to opt out vested on February 12, 2013, when this Court entered its Preliminary Approval Order. Within a mere three (3) days of that Preliminary Approval Order, the Castles exercised their right to opt out by sending DuPont their opt out letter. The Castles opted out of the class settlement before class members received the Long Form Notice, which contained instructions on how to opt out. The only other instructions were in this Court's February 12, 2013 Preliminary Approval Order. Although the Castles did not have knowledge of the instructions set forth in the Long Form Notice when they sent their opt out letter, their opt out letter substantially complied with its requirements.[4]

---

[4]Specifically, the Preliminary Approval Order stated that "[a]ny Class Member who wishes to opt out of the Class" must: (1) do so in writing; (2) by mailing a request for exclusion; (3) to the Claims Administrator; (4) postmarked by June 28, 2013; (5) signed by the Class Member seeking to opt out; and must set out the Class Member's (6) first and last names, (7) valid mailing address; and (8) functioning telephone number." **The Castles' opt out letter complied with 7 of the 8 requirements set forth in this Court's Order**. The only non-material deviation in the Castles' opt out letter, one which should be deemed excusable, was to mail the opt out letter to the DuPont Claims Resolution

In addition, after sending DuPont their opt out letter, the Castles obtained a single page publication notice from a magazine. *See* Ex. 1, RMC Declaration, at ¶ 16. The Castles observed the publication notice in multiple publications. *Id* at ¶ 18. Based on the terms of the publication notice, the Castles reasonably believed that their opt out letter had effectively excluded them from the Settlement Class and that they did not need to take any additional actions to opt out. *Id.* at ¶ 17. In the section of the publication notice entitled "What are my Legal Rights," the publication notice stated that "[t]o get information on how to claim benefits from the settlement, visit the website or call the toll free number listed below. To keep your right to sue about Imprelis damage, you must exclude yourself in writing by June 28, 2013. If you ask to be excluded, you cannot get the settlement benefits." *Id.* at ¶ 16.

After reading the publication notice, the Castles reasonably believed that they had preserved their right to sue over Imprelis damage because they had excluded themselves in writing by sending DuPont their opt out letter. *See* Ex. 1, RMC Declaration, at ¶ 17. The publication notice asked readers to visit the website or call the listed toll free number only if they wanted to claim benefits from the settlement. *Id.* at ¶ 16. The Castles did not want to claim benefits from the class action settlement. Instead, the Castles wanted to exclude themselves from the Settlement Class by excluding themselves in writing. *Id.* Therefore, when the Castles subsequently received the Long Form Notice in late March 2013, the Castles believed the publication notice was a generic form that did not apply to them because they had already excluded themselves from the Settlement Class on February 15, 2013 by the sending of the opt letter that DuPont received. *Id.* at ¶ 18. The Castles reasonably relied on the publication notice

---

Process instead of to the Claims Administrator. Had DuPont notified the Castles of the purported deficiency in the Castles' opt out letter, the Castles would have **immediately** remedied the issue.

to believe that their opt out letter was effective and had excluded them from the Settlement Class. As a result, this factor weighs in favor of granting the Castles an extension.

### d.   The Castles Acted In Good Faith And Deserve To Be Excluded From The Settlement Class.

The Castles acted in good faith in forming their belief that they had properly opted out of the class action settlement before the deadline.  By their February 15, 2013 opt out letter, the Castles informed DuPont that they were excluding themselves from the class action, would pursue a settlement only through the CRP, and that if those efforts proved unsatisfactory, they would file an independent action to recover their Imprelis-related damages.  *See* Ex. 1, RMC Declaration, at ¶ 10.  The Castles made a good faith effort to settle their claim through the CRP and provided DuPont detailed accounts of their damages.  *Id.* at ¶ 6.  Furthermore, the Castles unequivocally expressed a desire to exclude themselves from the class action litigation in their opt out letter to DuPont.  Had deficiencies been identified the Castles would have quickly addressed those deficiencies to ensure they were excluded from the class action settlement.  *Id.* at ¶ 14.

Because the Castles acted in good faith and reasonably believed they had properly and effectively excluded themselves from the Settlement Class, and because they relied on DuPont's actions and silence after their opt out letter had been sent, this factor weighs heavily in favor of granting the Castles' Motion.

### D.  Conclusion

For the foregoing reasons, the Castles respectfully move for exclusion from the Settlement Class, based upon their legally effective notification to DuPont in their February 15, 2013 letter.  The Castles are entitled to relief from the Court's Final Judgment because the

exclusion of their names from the list of opt outs included as EXHIBIT A to the Final Judgment was due to mistake, inadvertence, surprise or excusable neglect, and because equitable considerations justify granting the Castles relief from the Final Judgment. In the alternative, the Castles respectfully move for relief based upon a finding that any deficiencies in the Castles' February 15, 2013 opt out letter was due to excusable neglect. The Castles are therefore entitled to an enlargement of time to cure any deficiencies in their opt out letter, or to file a notice of exclusion.

Dated: <u>April 30, 2014</u>

**GRANT B. CASTLE and**
**REBECCA MADEIRA CASTLE**

By _____

Maurice R. Mitts, Esq.
Gerard M. McCabe, Esq.
Mitts Law, LLC
1822 Spruce Street
Philadelphia, PA 19103
(215) 866-0123

and

Bernard J. Kubetz, Esq.
(*Pro Hac Vice* application pending)
Eaton Peabody
80 Exchange Street, P.O. Box 1210
Bangor, ME 04402-1210
(207) 947-0111

**Attorneys for Movants**

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION _____ THIS DOCUMENT APPLIES TO ALL ACTIONS | ) ) ) ) ) ) ) ) ) )   Case No. 2:11-md-2284-GP |

## DECLARATION OF REBECCA MADEIRA CASTLE

I, Rebecca Madeira Castle, declare as follows:

1. I am Trustee of the Rebecca Madeira Castle 2013 Personal Residence Trust, a Maine trust, which owns property in Southwest Harbor, County of Hancock, State of Maine. I am over twenty-one years of age. The following facts are within my personal knowledge and, if called to testify, I could and would competently testify thereto.

2. My husband is Grant B. Castle and he is Trustee of the Grant B. Castle 2013 Personal Residence Trust, a Maine trust, which owns property in Southwest Harbor, County of Hancock, State of Maine.

3. The Grant B. Castle 2013 Personal Residence Trust and the Rebecca Madeira Castle 2013 Personal Residence Trust each own a one-half undivided interest in a single family home located in Southwest Harbor, Maine ("the Property").

4. On May 31, 2011, Green Thumb Lawn Service applied Imprelis to the Property, killing 20 mature and valuable trees and shrubs and causing substantial damage to 14 others.

5. On November 11, 2011, I authorized Green Thumb Lawn Service to collect information about the damage Imprelis caused to trees on the Property. Michael Legasse, the

proprietor, made three visits to the Property to assess the damage.  On November 2, 2011, he completed the DuPont Imprelis Claim Form and asked me to sign the Declaration section of the form.

6.  On November 30, 2011, I filed the claim with the DuPont Claims Resolution Process ("CRP") for the damage Imprelis caused to the Property.  On September 18, 2012, I received a proposed Claim Resolution Agreement from DuPont.  October 16, 2012, I notified DuPont that their proposed resolution of our claim was inadequate.  I provided DuPont with a detailed account of the damages caused by Imprelis, hoping that I could settle my claim through the CRP.

7.  On December 12, 2012, at 4:40 p.m., we received a phone call from DuPont in New York asking if our claim was represented by counsel.  I confirmed that we were represented by counsel and asked for guidance on the next steps in the process.  I was told that someone would get back to me.  Later, I was told by Allen Fenner of the Davey Resource Group, who was hired by DuPont to inspect the damage on our Property, that the December 12, 2012 call was simply an end-of-year status audit to determine what claims were represented and what ones were not.

8.  On January 4, 2013, I notified Amy Trask of Green Thumb Lawn Service, in an e-mail, that we had not heard anything since that (12/12/12) call from DuPont "so this is to advise you that that we are moving forward with litigation."  On January 9, 2013, Ms. Trask replied that she had forwarded my e-mail "to our representative for DuPont [Lydia Henderson, JD., Litigation Specialist CGL at The Hanover Insurance Group] and they replied that DuPont's legal team would be contacting my counsel regarding [my] CRA and tree removal."  A true and accurate copy of these e-mails are attached as Exhibit 1.

9. Subsequently, we received several calls about the matter. One from someone representing DuPont asking for site information. I called them back but they did not return my call. There were other calls from firms allegedly representing class action claimants, asking about our litigation status. They left multiple voice mails on my husband's phone asking for me. At that time, I was in Florida caring for my mother who was gravely ill (Hospice at Home care). Since the calls were unsolicited, and my primary focus was as caregiver, I did not respond.

10. In order to get on record, and re-direct these types of calls to my attorney, I elected to make our position clear in a February 15, 2013 letter to DuPont. A true and accurate copy of that letter is attached as Exhibit 2. In that letter I was speaking on behalf of both myself and my husband. I sent the letter to inform DuPont that I did not want to participate in any of the class action litigation pending against DuPont and that I did not want to be solicited to join any class action proceedings. I believed the opt-out letter preserved my right to file an independent lawsuit against DuPont and explicitly stated such in the letter ("[i]f the CRP process proves unsatisfactory, as has been the case thus far, I will pursue my complaint through an independent lawsuit led by counsel at Eaton Peabody, Bangor, Maine.").

11. I sent the February 15, 2013 letter to the DuPont Claims Resolution Process because I was not aware of any other entities that were authorized to settle Imprelis-related claims on behalf of DuPont. I was not aware of a separate Claims Administrator at that time. I knew that I needed to exclude myself from the class action litigation. I believed that I could do so by sending my letter to the Claims Resolution Process. The Claims Resolution Process address was the only address DuPont provided me to resolve my

claim. I believed that this was the appropriate address because DuPont required me to send the Imprelis Claim Form to that address. After sending the Imprelis Claim Form to that address, I received a return receipt from DuPont, which referenced my assigned claim number. This confirmed that I should send my opt-out letter to the Claims Resolution Process because that was the only entity I was aware of that had legal authority to address my claim on behalf of DuPont.

12. Prior to sending the February 15, 2013 letter, I did not receive and was not aware of this Court's February 12, 2013 Order preliminarily approving the class action settlement.

13. Prior to sending the February 15, 2013 letter, I did not receive and was not aware of a Long Form Notice that contained instructions on how to opt out.

14. DuPont never informed me that my February 15, 2013 letter was legally deficient or that I needed to take additional steps to opt out of the class action litigation. I never received a deficiency letter from DuPont or anyone else. Had I been notified of any alleged deficiencies in the opt-out letter, I would have promptly cured them or filed a timely request for an exclusion.

15. After I sent DuPont my February 15, 2013 letter, I did not directly communicate with DuPont. DuPont communicated exclusively with my counsel to arrange an inspection of the Property through the CRP. As a result, I believed that DuPont had received my letter, was acting in accordance with the letter, and that I was legally excluded from the Settlement Class.

16. Exhibit 3, attached hereto, is a true and accurate copy of a publication notice I obtained from a magazine after sending DuPont my opt-out letter, but before the June 28, 2013 deadline for opting out imposed by the Court.

17. The publication notice stated "[t]o keep your right to sue about Imprelis® damage, you must exclude yourself in writing by June 28, 2013." Since I did *exclude myself in writing* on February 15, 2013, by sending DuPont my opt-out letter, I believed my definitive action was legally and practically sufficient to exclude my husband and I from the Settlement Class. I complied with the directive in the notice. I excluded myself in writing before June 28, 2013, as the notice requires. I did not want to claim benefits under the settlement.

18. In late March 2013, after observing the publication notice in several periodicals, the Long Form Notice was sent to me or "CURRENT OWNER" at an address unrelated to the Property. It was sent from an unknown address and DuPont's name was not on the mailer. It also used a claim number that I was not familiar with and therefore, I thought it was just another unwanted solicitation. I believed it to be a generic form that did not apply to my husband and I because we had already excluded ourselves from the Settlement Class on February 15, 2013.

19. On June 4, 2013, I received a copy of an e-mail sent to my attorney at Eaton Peabody from Joohong Park, an attorney representing DuPont. Mr. Park's e-mail confirmed my Claim number as #9014127 SEAWALL HOLDINGS INC (Rebecca Madeira Castle). This Claim number did not match the Claim number in the Long Form Notice (#0000233804) that was sent to me or CURRENT OWNER. I believed that DuPont received my February 15, 2013 opt-out letter, bearing Claimant ID # 9014127, and was responding to my letter by using the same Claimant ID in their communication with my attorney. Since DuPont's agent, Green Thumb, sent me an e-mail on January 9, 2013 to inform me "that DuPont's legal team would be contacting your counsel," when Mr. Park

contacted the attorney specified in my letter on June 4, 2013, it confirmed     that DuPont was acting in accordance with the directive in my February 15, 2013 opt-out letter.  That letter provided my counsel's name and contact information.  I did not provide Green Thumb my counsel's name and contact information.  This specific information was provided only to DuPont.  The subsequent correspondence between DuPont's lawyer and my lawyer lead me to believe that my claim was legally separated from the class and I was legally excluded from the Settlement Class. My claim number was distinct and separate from the one on the Long Form Notice.

20. After February 15, 2013, DuPont communicated with my attorney to arrange for a day-long inspection of the Property on October 29, 2013.  Their lawyer continued to correspond with my lawyer in December, 2013 and DuPont sent my attorney an Amended Claims Resolution Agreement on January 3, 2014 .  Despite all of this communication and cooperation, I did not discover that DuPont considered me not to be included in the opt-out list, which is attached as EXHIBIT A to this Court's February 4, 2014 Final Judgment, until March 11, 2014, when DuPont notified my attorney that, in its view, my February 15, 2013, opt-out letter was not sufficient to achieve its intended purpose.


I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on this 17 day of April, 2014 at

Rebecca Madeira Castle

_Rebecca Madeira Castle

STATE OF MAINE            State Of Connecticut

, ss.   Wilton                                        April 17 2014

    Personally appeared before me the above-named Rebecca Madeira Castle and made oath that the foregoing affidavit signed by her is true and accurate and based upon her own personal knowledge as therein described.

Before me, _Desiree Jackson_

By _/s/ Desiree Jackson_
Notary Public
Commission Expires: _My Commission Expires_
_December 31, 2017_

**From:** Rebecca Madeira [mailto:rebecca.madeira@yahoo.com]
**Sent:** Friday, January 04, 2013 9:06 AM
**To:** Green Thumb Lawn Service
**Subject:** Imprelis damage claim

I received a call on 12/12/12 from someone asking if we have retained legal representation in connection with our Imprelis claim. We replied that we are in the process of documenting our claim -- root removal,  soil analysis, plant material evaluation by a forester, plant and soil material replacement estimate,etc and will be filing a claim through our counsel at Eaton Peabody.  The person replied that she might want to have another site evaluation conducted. I have not heard anything from her since that call so this is to advise you that we are moving forward with litigation.

Sent from my iPad

On Jan 9, 2013, at 9:28 AM, "Green Thumb Lawn Service" <imprelis@gtlawnservice.com> wrote:

Becky,
I forwarded your email regarding your Imprelis CRA to our representative for DuPont and they replied that DuPont's legal team would be contacting your counsel regarding your CRA and tree removal.  If you have any questions, please feel free to contact me.

Sending



EXHIBIT

February 15, 2013

DuPont Imprelis Claims Resolutions Process
c/o Epiq Systems
PO Box 4834
Grand Central Station
New York, NY 10163–4834

Re: Claimant ID 9014127
Established: 1/1/11

This is to advise you that I have retained legal representation for Claim
#9014127; Seawall Holdings LLC for property at 18 Seawall Point Lane,
Southwest Harbor, Maine 04679.

My counsel is:
    William B. Devoe
    Eaton Peabody
    80 Exchange Street
    Bangor, Maine 04402
    207.992.4336
    wdevoe@eatonpeabody.com

Together with my counsel, I will entertain settlement offers through the Claims
Resolution Process. If the CRP process proves unsatisfactory, as has been the
case thus far, I will pursue my complaint through an independent lawsuit led by
counsel at Eaton Peabody, Bangor, Maine.  I am not participating in any of the
class action suits pending against DuPont nor do I want to be solicited to join
any class action proceedings.

Please direct all future communication regarding my claim to my attorney as
listed above.

Thank you.

Rebecca Madeira Castle
Seawall Holdings LLC

Property Location:
18 Seawall Point Lane
Southwest Harbor. Maine 04679

EXHIBIT
2

Legal Notice

# If You Had Unexplained Tree Damage After August 2010

## It Could Be From the Weed-Killer Imprelis®

### *A Settlement May Provide Money and Affect Your Rights*

There is a class action settlement with the manufacturer of the weed-killer Imprelis®. Imprelis® was used by lawn care professionals on residential and commercial properties as well as by golf courses between August 31, 2010, and August 21, 2011, across the country — except California and New York. The lawsuit claims that Imprelis® kills and damages trees and other non-target vegetation. Imprelis® was removed from the market after reports of damaged and dying trees.

*These are just a few types of Imprelis® damage. There are more photos at www.TreeDamageSettlement.com.*

   

Honey Locust (Fleshy galls)    Arborvitae (Browning)    Pine (Terminal Bud Swelling/Clubbing)    Spruce (Browning)

### Who is Included in the Settlement and What Does the Settlement Provide?

The Settlement includes three groups, called "classes." You are included even if you have already submitted a claim through the current Imprelis® Claims Resolution Process.

| Classes | Who is Included | Benefits |
|---|---|---|
| Class 1 | *Property Owners* who own or owned property in the U.S.: 1) Where Imprelis® was applied; or 2) Adjacent to a property where Imprelis® was applied, and whose trees show damage from Imprelis® by February 11, 2013. | *Compensation for tree damage, including:* 1) Tree removal; 2) Cash payments for tree replacement and care; and 3) A limited warranty for any future Imprelis® tree damage. |
| Class 2 | *Applicators* (Lawn Care Professionals) that: 1) Purchased Imprelis® or received Imprelis® from a purchaser; and 2) Applied Imprelis® on property owned by another person or entity in the U.S. as part of their normal business. | *Compensation for:* 1) Customer site visits, field work, and expenses incurred in investigating and documenting Imprelis® damage on customers' properties prior to September 6, 2011; 2) Refund for returning unused Imprelis®; and 3) Assisting their customers with the Settlement Claims Process, if applicable. |
| Class 3 | *Golf Courses and Other Imprelis® Self-Applicators* that: 1) Purchased Imprelis® or received Imprelis® from a purchaser; and 2) Applied Imprelis® on property in the U.S. that they own or owned. | *Compensation for:* 1) Tree damage as listed above for Class 1; 2) Time spent and expenses incurred in assessing Imprelis® damage; and 3) Refund for returning unused Imprelis®. |

### What are my Legal Rights?

To get information on how to claim benefits from the settlement, visit the website or call the toll free number listed below. To keep your right to sue about Imprelis® damage, you must exclude yourself in writing by June 28, 2013. If you ask to be excluded, you cannot get the Settlement benefits. If you stay in the Settlement, you may object to it in writing by August 21, 2013. If you stay in the Settlement, you will be bound by the Court's orders.

The Court will hold a hearing on September 27, 2013 to consider whether to approve the Settlement and a request by Class Counsel for attorneys' fees and expenses of up to $7 million. You or your own lawyer may ask to appear and speak at the hearing at your cost.

If you have Imprelis® damage, your rights are affected whether you act or not. Get more information using the contact information below.

**www.TreeDamageSettlement.com   1-866-802-8112   Text "Imprelis" to 96000**

EXHIBIT
3

# **EXHIBIT 2**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|   |   |   |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | Case No. 2:11-md-2284-GP |
| THIS DOCUMENT APPLIES TO ALL ACTIONS | ) ) ) ) | |

### DECLARATION OF BERNARD J. KUBETZ

I, Bernard J. Kubetz, declare as follows:

1.  My name is Bernard J. Kubetz. I make this declaration based on my personal knowledge.

2.  I am an attorney licensed to practice law in the State of Maine. I am counsel for the Movants, co-trustees Grant B. Castle and Rebecca Madeira Castle, and represent them in all matters relating to the damages they incurred as a result of the May, 2011, application of Imprelis to their property in Southwest Harbor, Maine.

3.  Attached hereto are true and accurate copies of the following documents:

    (a) Letter from Gregory P. Hansel dated March 11, 2014, attached as Exhibit 1.

    (b) E-mail from Joohong Park dated June 4, 2013 to set up an inspection of the Castles' Southwest Harbor property pursuant to the Imprelis Claims Resolution Process, attached as Exhibit 2.

    (c) E-mail from Gregory P. Hansel dated February 10, 2014, attached as Exhibit 3.

4.  After February 15, 2013, I communicated with DuPont's counsel on behalf of Grant B. Castle and Rebecca Madeira Castle to arrange an inspection of their Southwest Harbor property and to attempt to negotiate a settlement through the Claims Resolution Process.

5. After February 15, 2013, I did not receive any communications from DuPont concerning the class action litigation. DuPont never discussed the class action litigation with me. I did not receive any notices related to the class action litigation. DuPont never mentioned the Castles' opt-out letter or the Castles' opt-out status. On June 4, 2013, just prior to the June 28, 2013 opt out deadline, Joohong Park, an attorney for DuPont, sent me an e-mail to set up an inspection of the Castles' property. In that e-mail, attached as Exhibit 2, DuPont does not mention the class action litigation, the Castles' opt-out status or the approaching opt-out deadline.

6. On January 22, 2014, I filed a complaint in the Maine Superior Court against DuPont.

7. On February 10, 2014, DuPont's counsel in Maine, Gregory P. Hansel, sent me an e-mail, attached as Exhibit 3, stating that he believed my clients were barred from bringing an action against DuPont because they were members of the Settlement Class.

8. I responded by sending Mr. Hansel a copy of the Castles' February 15, 2013 opt-out letter and stating that I believed the Castles had opted out of the Settlement Class by virtue of their opt-out letter.

9. In a letter dated March 11, 2014, attached as Exhibit 1, Mr. Hansel opined that the Castles' opt-out letter did not constitute an effective request for exclusion.

10. I consented to Mr. Hansel's motion to stay the proceedings in the Maine Superior Court. DuPont has not yet answered the Castles' complaint.


I declare under penalty of perjury that the foregoing statements are true and correct.

Executed on this 25th day of April, 2014 at Bangor, Maine

_____
Bernard J. Kubetz

STATE OF MAINE
Penobscot, ss.                                                    April 25, 2014

     Personally appeared before me the above-named Bernard J. Kubetz and made oath that the foregoing affidavit signed by him is true and accurate and based upon his own personal knowledge as therein described.

                      Before me,

                      By _Mary A. Doyon_____
                      Notary Public
                      Commission Expires:

                         MARY A. DOYON
                       Notary Public • Maine
                  My commission expires May 6, 2017

{EP - 01585425 - v3 }

# PretiFlaherty

Gregory P. Hansel
ghansel@preti.com
Direct Dial: 207.791.3232

Portland, ME
Augusta, ME
Concord, NH
Boston, MA
Washington, DC
Bedminster, NJ
Salem, MA

March 11, 2014

Bernard J. Kubetz, Esq.
Eaton Peabody
80 Exchange Street
P.O. Box 1210
Bangor, ME 04402-1210

RE:   *Grant B. Castle and Rebecca Madeira Castle v. E.I. du Point de Nemours and*
      *Company and Green Thumb Lawn Service, Inc.*
      Hancock County Superior Court, Docket No. CV-14-06

Dear Berney:

I am writing regarding the complaint you filed on behalf of your clients, Grant B. Castle and Rebecca Madeira Castle, in Hancock County Superior Court on January 23, 2014. Specifically, this letter addresses a couple of issues that you raised during our recent calls.

As I believe you are aware, Judge Gene E.K. Pratter of the United States District Court for the Eastern District of Pennsylvania granted final approval to the settlement and entered an order of final judgment on February 6, 2014. I have attached that order for your reference. An appeal of the order of final judgment is pending before the Third Circuit.

1.   <u>All Claims Are Enjoined by the Class Action Settlement</u>

The final judgment entered in the Eastern District of Pennsylvania enjoins class members from bringing suits like those you have filed here. Paragraph 7 of that order states:

The Class Releasors are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee, either directly, individually, representatively, derivatively, or in any other capacity, by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum wherever located.

DuPont will, if necessary, seek a writ of prohibition from the Eastern District of Pennsylvania to ensure that this suit will not go forward.



EXHIBIT
tabber  /

Preti Flaherty
Beliveau & Pachios LLP
Attorneys at Law

One City Center, Portland, ME 04101   |   PO Box 9546, Portland, ME 04112-9546   |   Tel 207.791.3000   |   www.preti.com
6351076.7

PRETI FLAHERTY

Bernard J. Kubetz, Esq.
March 11, 2014
Page 2

2.  The Claims Against Green Thumb Are Released Under the Settlement Agreement

Your clients' claims against Green Thumb are released under section VI.A of the Settlement Agreement (which I enclose), assuming of course that the Court's final approval order is upheld on appeal. Section VI.A provides that, with a few exceptions that are not applicable here, "the Releasees shall be released and forever discharged by the [Settlement Class Members] from any and all claims arising from or relating to Imprelis® . . . ." As a lawn care professional, Green Thumb is a "Releasee" under the definition of that term set forth in section II.HH of the Settlement Agreement.

3.  Ms. Castle's February 15, 2013 Letter

Thank you for sending to me what you characterized as essentially an opt-out letter from Ms. Castle dated February 15, 2013. In the letter, which was addressed to "DuPont Imprelis Claims Resolutions Process, c/o Epiq Systems," Ms. Castle stated, among other things, that she intended to continue participating in the Claims Resolution Process, and that she did not "want to be solicited to join any class action proceedings."

The letter does not constitute an effective request for exclusion from the Imprelis® class settlement. Although the letter says that Ms. Castle is not participating in any "class action suits," it does not say anything about opting out of the class action settlement. Further, the letter fails to satisfy the requirements for an effective request for exclusion set forth in the Court-ordered formal settlement notice, which was sent to your clients by the Court-appointed settlement administrator. As is clear from the formal settlement notice (which I enclose), letters seeking to exclude class members from the settlement were to be sent to Imprelis Settlement Exclusions, P.O. Box 2964, Faribault, MN 55021-2964. See also Settlement Agreement, section IV.C (noting that opt-out requests must be sent to the "Claims Administrator," which is Rust Consulting, and that opt-out requests that fail to satisfy this requirement "shall not be effective"). Instead, Ms. Castle's letter was addressed to Epiq Systems, the vendor managing the Claims Resolution Process.

Ms. Castle's stated desire not "to be solicited to join any class action proceedings" may stem from a misunderstanding of the law. One is not required to actively join a Rule 23 class action to be bound. Rather, to avoid being bound, one must affirmatively and properly opt out. Your clients did not do so. Moreover, since the settlement incorporates the values offered in the Claims Resolution Process, your clients' continued pursuit of the Claims Resolution Process contradicts any purported exclusion from the class settlement.

The Eastern District of Pennsylvania recently denied a motion by a plaintiff in a similar situation. Pilgrim Village Associates failed to opt out by the appropriate deadline but asked to be treated as an opt out. Judge Pratter denied that plaintiff's motion for many of the same reasons

PRETI FLAHERTY

Bernard J. Kubetz, Esq.
March 11, 2014
Page 3

that we are certain she would deny any request by your clients to be treated as an opt out.  I enclose that order with this letter for your convenience.

  In short, Ms. Castle's letter is ineffective to exclude your clients from the class settlement.

  4.  <u>Proposed Interim Resolution of the Case</u>

  Given the information provided above, I respectfully request that your clients stipulate to stay the lawsuit until 30 days after the Court's order granting final approval of the settlement becomes final.  If your clients do not agree, we will move to dismiss or stay the case, and may seek a writ of prohibition if necessary.  It is my sincere hope that our clients will not need to expend the time, effort, and cost of litigating this issue.

  Thank you for your consideration of this request, and I look forward to receiving your response.  In the meantime, please do not hesitate to contact me if you have any questions about the issues discussed above or require additional information.

        Sincerely,

        Gregory P. Hansel /ms

        Gregory P. Hansel

GPH/lsm
Enclosures

6351076.7

**Kubetz, Berney**

| | |
|---|---|
| **From:** | Contract-Park, Joohong [JPark@crowell.com] |
| **Sent:** | Tuesday, June 04, 2013 9:12 AM |
| **To:** | Kubetz, Berney |
| **Subject:** | Imprelis Claim #9014127 SEAWALL HOLDINGS INC (Rebecca Madiera-Castle) |

Dear Mr. Kubetz,

Thank you for your time and assistance in the above claim: Claim #9014127 SEAWALL HOLDINGS INC (Rebecca Madiera-Castle), regarding scheduling your client's revisit:

To confirm:
1) You stated that your preference is to have scheduling of the revisit occur through you
2) Your client will be out of the country until Mid-June
3) At this time you do not intend to be present at the revisit – however, if you change your mind please let me know.
4) If you could please attach the correspondence you sent two weeks ago, it would be greatly appreciated.

I will ask the arborist for dates and will send you another email in the near future.

Thank you
Joohong

Joohong Park | Contract Attorney |
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
202.654.6797 (direct dial)
www.jpark@crowell.com



EXHIBIT
2

## Kubetz, Berney

| | |
|---|---|
| **From:** | Hansel, Gregory P. [GHansel@preti.com] |
| **Sent:** | Monday, February 10, 2014 7:02 PM |
| **To:** | Kubetz, Berney |
| **Cc:** | Smith, Michael S. |
| **Subject:** | Castle v. DuPont and Green Thumb: Class Action Documents |
| **Attachments:** | 2013-10-17 (ECF 243) Mem Op Granting Final Approval of Settlement[1].pdf; 20131003 - Pltfs Not of Supp Filing (Dkt 0241)(TAB 0278).pdf |

Bernie,

As we discussed earlier today, I represent defendants in the referenced case.

As promised, here are key documents from the related class action: The Court's opinion granting the motion for final approval of the class settlement and indicating that an order will follow (this includes the definition of the settlement class of property owners and the settlement class of lawn care operators); and the list of opt outs (we do not believe Plaintiffs or Green Thumb opted out).

After you have had a chance to consider this, please let me know if Plaintiffs will consent to a stipulation to extend the time for defendants to respond to the complaint until 20 days after the court rules on the motion we intend to file to stay the case pending entry of the class action court's expected order granting final approval of the class settlement.

Regards,

Greg


**Gregory P. Hansel**
207.791.3000 Tel
ghansel@preti.com
Bio | LinkedIn | Twitter | preti.com

**PretiFlaherty**
One City Center
P.O. Box 9546
Portland, ME 04112-9546

In accordance with Internal Revenue Service Circular 230, we hereby advise you that if this E-mail or any attachment hereto contains any tax advice, such tax advice was not intended or written to be used, and it cannot be used, by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer by the Internal Revenue Service.

This E-Mail may contain information that is privileged, confidential and / or exempt from discovery or disclosure under applicable law. Unintended transmission shall not constitute waiver of the attorney-client or any other privilege. If you are not the intended recipient of this communication, and have received it in error, please do not distribute it and notify me immediately by E-mail at ghansel@preti.com or via telephone at 207.791.3000 and delete the original message. Unless expressly stated in this e-mail, nothing in this message or any attachment should be construed as a digital or electronic signature or as a legal opinion.



EXHIBIT

3

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 2:11-md-2284-GP |

## **CERTIFICATE OF SERVICE**

I, Gerard M. McCabe, hereby certify that on the 30th day of April, 2014, a true and correct copy of the foregoing Motion has been filed electronically in the above captioned case and is available for viewing and downloading from the ECF system.

_____
Gerard M. McCabe