**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS LIABILITY | : | |
| LITIGATION | : | **MDL No. 2884** |
| | : | **11-md-02884** |
| _____ | : | |
| | : | |
| THIS DOCUMENT APPLIES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

**MEMORANDUM**

PRATTER, J.                                                                          JUNE 18, 2015

Defendant DuPont has filed another motion seeking to enforce the Class Action

Settlement in this multidistrict litigation against parties who failed to opt out of the Settlement

but continue to pursue a lawsuit against DuPont in state court.  Plaintiffs John and Mary Ann

Holmes respond to DuPont's motion by arguing that one of the Defendants in their state court

action is not a "lawn care professional" under the terms of the Settlement and that therefore the

claim against that Defendant was not released by the Settlement, and that, in any event, the

notice program under the Settlement was inadequate.  After considering the parties' written

submissions, the Court will grant DuPont's motion.

BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the

following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively

kill unwanted weeds without harming non-target vegetation.  After widespread reports of

damage to non-target vegetation, the Environmental Protection Agency ("EPA") began

investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim

Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process,

Plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations,

breach of express and/or implied warranty, negligence, strict products liability, nuisance, and

trespass claims based on the laws of numerous states. After months of settlement discussions,

including mediation, the parties came to a settlement agreement. The details of the settlement

relevant to the instant motion will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis

Plaintiffs. Among the three settlement classes is a property owner class, to which, DuPont

argues, the Holmeses belong. That class includes all persons or entities who own or owned

property in the United States to which Imprelis was applied from August 31, 2010 through

August 21, 2011. Under the Settlement, property owner class members who filed claims by the

claims deadline would receive tree removal (or compensation for tree removal), payments for

replacement trees, tree care and maintenance payments, and a 15% payment for incidental

damages. The Settlement included a warranty that provided for all benefits but the 15%

incidental damages award for Imprelis damage that manifested after the claims period closed but

before May 31, 2015. On February 12, 2013, this Court preliminarily approved the Settlement,

and specifically ordered that:

> Any Settlement Class Member may opt out of the Settlement by following the
> "Exclusion" procedure set forth in the Long Form Notice and the Settlement
> Agreement. All Settlement Class Members who do not opt out in accordance with
> the terms set forth in the Settlement Notice and the Settlement Agreement will be
> bound by all determinations and judgments in the Action. Any Class Member who
> wishes to opt out of the Class must do so in writing by mailing a request for exclusion

> to the Claims Administrator. Any such request must be postmarked no later than the Opt-Out Deadline, June 28, 2013. The request to opt out must be signed by the Class Member seeking to opt out and must set out the Class Member's first and last names (or company name), valid mailing address and functioning telephone number.

February 12, 2013 Order, Docket No. 160, ¶ 8. The Settlement also provides that not only do class members release their claims against DuPont, but they also release all claims against "lawn care professionals" "arising from or relating to Imprelis." *See* Settlement Agreement and Release, Docket No. 118-1, § II.HH, VI.A.[1] The Settlement Agreement does not specifically define the term "lawn care professional."

On September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. At that hearing, the Court preliminarily approved the Settlement, including the notice program. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. In so doing, the Court found that the notice program, which included direct mail to all identified class members (those who had submitted claims to DuPont), as well as publication in print,[2] online,[3] and on television,[4] was "comprehensive" and the "best notice practicable under the circumstances." *Id.* at 363.

---

[1] The broad release language in the Settlement states:
"Releasees" means DuPont, along with its parent(s) and each of its predecessors, affiliates, assigns, successors, related companies, holding companies, insurers, reinsurers, current and former attorneys, and their current and former members, partners, officers, directors[,] agents and employees, in their capacity as such, any distributors, retailers, professional applicators, lawn care professionals ("LCOs"), and their insurers, and affiliates, in their capacity as such and other Class Members.
*See* Settlement Agreement and Release, Docket No. 118-1, § II.HH.

[2] The print advertisements appeared in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and others geared toward adults age 35 and over.

[3] Online advertisements appeared on AOL, Facebook, Yahoo!, Google, and other sites.

[4] Commercials appeared at a variety of times of day in 46 targeted Market Areas throughout the United States.

The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11. Attached to that Order was a list of all parties who had opted out of the Settlement. The Holmeses are not listed in that attachment. *See id.* at Ex. A.

### B.     *John and Mary Ann Holmes*

Mr. and Mrs. Holmes, individually and as trustees of the John R. Holmes Living Trust, filed a lawsuit in Indiana state court against DuPont, List Lawn Care, Inc., and Arbor Care Tree & Landscaping LLC, for Imprelis damage to their property. Among other claims, the Holmeses take issue with List Lawn Care for applying Imprelis to their lawn and then failing to warn them of the damage caused by Imprelis to non-target vegetation after List Lawn Care learned of the danger, and they sue Arbor Care for failing to identify Imprelis damage to their trees in enough time for the Holmeses to submit a Settlement claim. The Holmeses did not opt out of the Settlement in a timely fashion, nor do they claim to have attempted to opt out before the claims deadline.

DuPont has now moved to enjoin the state court proceedings under the All Writs Act, arguing that the Class Action Settlement in this matter precludes the Holmeses claims against all Defendants.

## LEGAL STANDARD

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That sweeping power is limited by the Anti-Injunction Act, which prohibits courts from issuing injunctions having the effect of staying proceedings in state courts except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

## DISCUSSION

The Court will begin with the well-established rule that "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Bank of Richmond*, 467 U.S. 867, 874 (1984). In other MDL proceedings in which class action settlements were approved or in which settlement approval was imminent, courts in this Circuit have enjoined class members from proceeding in state court under the latter two exceptions to the Anti-Injunction Act, as allowing the class members to violate the court's final settlement orders by bringing individual state suits would interfere with the court's jurisdiction over the settlement and allow attempts to disturb the court's final judgment. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-Lowe)*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding district court's injunction prohibiting litigation of claims in state court to the extent they were related to those settled in a class action settlement); *In re Prudential Ins. Co. of Am. Sales*

*Practice Litig. (Prudential-La Marra)*, 314 F.3d 99 (3d Cir. 2002) (upholding injunction prohibiting litigation of issues relating to settlement in state court but reversing retention of jurisdiction in improperly removed case; court had jurisdiction to issue injunction under the pending MDL, whether or not the state claims were removed); *In re Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 715 F. Supp. 2d 610 (E.D. Pa. 2010) (enjoining, under both the "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" prongs of the Anti-Injunction Act, state court litigation in which plaintiff attempted to litigate claims released in MDL class action settlement).

DuPont argues that the Holmeses did not opt out of the Settlement, and that, therefore, pursuant to the All Writs Act and the Third Circuit case law applying that Act in the context of class action settlements and multi-district litigation, the Holmeses should be enjoined from pursuing any Imprelis claims in state court. As discussed above, the Holmes Plaintiffs advance two arguments for why they should not be bound by the Settlement. First, they claim that Arbor Care Tree is not a "lawn care professional" under the terms of the Settlement. Second, they argue that the notice program should have required all Imprelis applicators to either individually notify each customer to whose lawns they applied Imprelis or to provide contact information for those customers to DuPont so that DuPont could directly notify them. The Court will discuss each of these arguments in turn.

**A. Arbor Care Tree & Landscaping**

The Holmeses argue that Arbor Care Tree & Landscaping is not a "lawn care professional" for purposes of the Settlement. They contend that under the Settlement, the term "lawn care professional" does not retain its ordinary meaning, but rather means only entities that applied Imprelis. They reach this interpretation by pointing to the Settlement Class of

applicators, and opining that "lawn care professional," for purposes of the Settlement, is synonymous with applicator. To support this interpretation, the Holmeses quote the following language defining the members of Class 2: "Applicators (Lawn Care Professionals) that: (1) Purchased Imprelis or received Imprelis from a purchaser, and (2) Applied Imprelis on property owned by another person or entity in the U.S. as part of their normal business." Because Arbor Care did not apply Imprelis to their lawn, then, the Holmeses contend that Arbor Care is not a "lawn care professional" against whom their claims have been released pursuant to the Settlement.

The Holmeses Plaintiffs' interpretation of the Settlement Agreement, however, ignores the definition of "Releasees," which naturally must guide this Court in determining whether their claims against Arbor Care have been released. That definition states:

> "Releasees" means DuPont, along with its parent(s) and each of its predecessors, affiliates, assigns, successors, related companies, holding companies, insurers, reinsurers, current and former attorneys, and their current and former members, partners, officers, directors[,] agents and employees, in their capacity as such, any distributors, retailers, professional applicators, lawn care professionals ("LCOs"), and their insurers, and affiliates, in their capacity as such and other Class Members.

*See* Settlement Agreement and Release, Docket No. 118-1, § II.HH. If, as the Holmeses argue, "lawn care professionals" is synonymous with "applicators," there would be no reason to list both applicators *and* lawn care professionals in the definition of Releasees. Moreover, in discussing what claims are released, the Settlement Agreement provides that "all claims arising from or relating to Imprelis" are released, not just claims relating to the application of Imprelis or claims against DuPont. *See id.* at § VI.A. It is true that all applicators are also lawn care professionals, as the Settlement language the Holmeses point to makes clear. However, that does not mean that under the Settlement, all lawn care professionals against whom claims are released are also members of the Applicator class. Indeed, not even all applicators are members of Class

7

2, as the language quoted by the Holmeses makes clear.  According to the Class 2 definition, only those applicators who meet the criteria set forth in the definition are Class Members.  Thus, the Holmeses' strained interpretation of the Settlement Agreement is contrary to the plain and broad meaning of the language of the Agreement.

The Holmes Complaint itself reveals that Arbor Care is a lawn care professional, as that term is commonly understood – the Holmes Plaintiffs hired Arbor Care to care for their lawn.  Because the Settlement Releasees include "lawn care professionals," and because there is no compelling reason to limit that language to apply to some subset of "lawn care professionals," the Holmeses' claim against Arbor Care is released pursuant to the Settlement.

### B.  Notice

The Holmes Plaintiffs also argue that the Settlement Notice Program was not adequate, in that it did not require LCO Class Members to individually notify all customers to whose lawns they applied Imprelis.  They argue that since the applicators had the "means to readily identify their customers whose lawns were treated with Imprelis" they should have been required to do so under Rule 23(c)(2)(B).  *See* Fed. R. Civ. P. 23(c)(2)(B) (requiring "individual notice to all members who can be identified through reasonable effort").

The cases cited by the Holmes Plaintiffs in support of this argument are distinguishable, and they cite to no case law requiring direct notice under the circumstances in this matter.  For instance, in *Larson v. AT&T Mobility LLC*, 687 F.3d 109 (3d Cir. 2012), class members could be ascertained *by the defendant* through a search of billing records, and therefore direct notice was required.  *See id.* at 131.  Here, while the identities of most class members may have been easily ascertainable to the thousands of Imprelis applicators, their identities were not easily ascertainable to Defendant DuPont.

The Holmeses also cite *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315 (3d Cir. 2001), which states in a footnote discussing best practices in limited fund actions that better notice could have been given by, among other methods, reaching out to hospitals and doctors who purchased the bone screw product at issue to get patient lists or to encourage the hospitals and doctors to send notice to their patients directly. Notably, the court in *In re Orthopedic Bone Screw Prods.* did not require any specific combination of the methods it suggested nor did it hold that direct notice through third parties was required to achieve "best practicable notice." Also of import is that the list of better methods of notice in that footnote includes many of the methods employed here, namely, national and local publication notice, as well as internet and television advertisements.

DuPont argues that the notice program was the best practicable under the circumstances, and that to order the approximately 8,000 lawn care companies that applied Imprelis to directly notify all of their customers would have been impractical and unenforceable. DuPont also contends that "[n]o collateral review is available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the Settlement Agreement. Collateral review is only available when class members are raising an issue that was not properly considered by the District Court at an earlier stage in the litigation." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005). Here, DuPont argues, the Court already fully considered the notice program and held that "the parties' comprehensive notice program, which the Court also reviewed in advance, satisfies Rules 23(c)(2)(B) and (e)." *See* Docket No. 243, at 13. Indeed, at the Final Fairness Hearing, the very issue of large lawn care companies providing customer lists was raised by the Court, and the Court accepted counsel's response that that customer lists were

"extremely proprietary" and therefore not something applicators would wish to share, that Long Form Notices would be provided to lawn care professionals, and that significant publication notice would be included in the notice program. *See* Docket No. 271, Sept. 27, 2013 Tr., at 24:12-26:17.

The Court agrees with DuPont that the Holmeses' opposition to the motion to enforce is unavailing. The Court has already thoroughly examined and approved of the Class Action Settlement, including, as discussed above, the notice provisions, and the Holmeses may not now challenge those issues that have already been litigated. *See In re Diet Drugs*, 431 F.3d at 146. Because the Holmeses are class members, the Court will enjoin them from proceeding in state court on their Imprelis claims for the same reasons other courts in this Circuit have enjoined proceedings in similar MDL actions – allowing the Holmeses and/or others to violate the Court's final settlement orders by bringing individual state suits asserting Imprelis claims would interfere with the Court's jurisdiction over the settlement and would encourage attempts to disturb the Court's final judgment. As the Third Circuit Court of Appeals has observed, allowing plaintiffs to essentially relitigate settled claims "would seriously undermine the possibility for settling any large, multi district class action." *Prudential-Lowe*, 261 F.3d at 367.

## CONCLUSION

For the foregoing reasons, the Court will grant DuPont's motion. An appropriate Order follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge