IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2284<br>11-md-2284 |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | |

# MEMORANDUM

PRATTER, J.                                                    NOVEMBER 24, 2015

    Defendant DuPont has filed another motion seeking to enforce the Class Action Settlement in this multidistrict litigation against parties who failed to opt out of the Settlement but continue to pursue a lawsuit against DuPont in state court. Plaintiff QueenPin LLC responds to DuPont's motion by arguing that (1) because it was never given the opportunity to opt out, never consented to this Court's jurisdiction, and has no minimum contacts with the forum, the Court may not enjoin its state court action, (2) QueenPin is not a member of any Settlement Class, and (3) the notice program was inadequate. After considering the parties' written submissions, the Court will grant DuPont's motion.[1]

BACKGROUND

    Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

    In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of

---

[1] QueenPin requested that the Court hold oral argument on the motion. Because the motion presents issues substantially similar to several other motions already decided by the Court in this multidistrict litigation, however, oral argument on the motion is unnecessary, and the Court will deny that request.

1

damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, Plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the instant motion will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class, to which, DuPont argues, QueenPin belongs. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015. On February 12, 2013, this Court preliminarily approved the Settlement, and specifically ordered that:

> Any Settlement Class Member may opt out of the Settlement by following the "Exclusion" procedure set forth in the Long Form Notice and the Settlement Agreement. All Settlement Class Members who do not opt out in accordance with the terms set forth in the Settlement Notice and the Settlement Agreement will be bound by all determinations and judgments in the Action. Any Class Member who wishes to opt out of the Class must do so in writing by mailing a request for exclusion to the Claims Administrator. Any such request must be postmarked no later than the Opt-Out Deadline, June 28, 2013. The request to opt out must be signed by the Class Member seeking to opt out and must set out the Class Member's first and last names (or company name), valid mailing address and functioning telephone number.

February 12, 2013 Order, Docket No. 160, ¶ 8.

On September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. At that hearing, the Court preliminarily approved the Settlement, including the notice program. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. In so doing, the Court found that the notice program, which included direct mail to all identified class members (those who had submitted claims to DuPont), as well as publication in print,[2] online,[3] and on television,[4] was "comprehensive" and the "best notice practicable under the circumstances." *Id.* at 363.

The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February

---

[2] The print advertisements appeared in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and others geared toward adults age 35 and over.

[3] Online advertisements appeared on AOL, Facebook, Yahoo!, Google, and other sites.

[4] Commercials appeared at a variety of times of day in 46 targeted Market Areas throughout the United States.

5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11. Attached to that Order was a list of all parties who had opted out of the Settlement. QueenPin LLC is not listed in that attachment. *See id.* at Ex. A.

### B. *QueenPin LLC*

QueenPin LLC claims that on May 24, 2011 Imprelis was applied to property adjacent to its two properties, and that this application of Imprelis damaged several trees and plants on its properties. QueenPin did not specify in its Complaint when the Imprelis damage first manifested. It alleges in its Complaint that it tried to participate in the class action settlement process, but was ignored, and it asserts claims against both DuPont and its neighbor's lawn care company.

In April 2015, QueenPin filed its Complaint in Ohio state court. In response, DuPont has now moved to enjoin the state court proceedings under the All Writs Act, arguing that the Class Action Settlement in this matter precludes QueenPin's claims against it.

### LEGAL STANDARD

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That sweeping power is limited by the Anti-Injunction Act, which prohibits courts from issuing injunctions having the effect of staying proceedings in state courts except "as expressly

4

authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

DISCUSSION

The Court will begin with the well-established rule that "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Bank of Richmond*, 467 U.S. 867, 874 (1984). In other MDL proceedings in which class action settlements were approved or in which settlement approval was imminent, courts in this Circuit have enjoined class members from proceeding in state court under the latter two exceptions to the Anti-Injunction Act, as allowing the class members to violate the court's final settlement orders by bringing individual state suits would interfere with the court's jurisdiction over the settlement and allow attempts to disturb the court's final judgment. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-Lowe)*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding district court's injunction prohibiting litigation of claims in state court to the extent they were related to those settled in a class action settlement); *In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-La Marra)*, 314 F.3d 99 (3d Cir. 2002) (upholding injunction prohibiting litigation of issues relating to settlement in state court but reversing retention of jurisdiction in improperly removed case; court had jurisdiction to issue injunction under the pending MDL, whether or not the state claims were removed); *In re Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 715 F. Supp. 2d 610 (E.D. Pa. 2010) (enjoining, under both the "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" prongs of the Anti-Injunction Act, state court litigation in which plaintiff attempted to litigate claims released in MDL class action settlement).

DuPont argues that QueenPin did not opt out of the Settlement, and that, therefore, pursuant to the All Writs Act and the Third Circuit case law applying that Act in the context of class action settlements and multi-district litigation, QueenPin should be enjoined from pursuing any Imprelis claims in state court. As discussed above, Plaintiff QueenPin LLC asserts that (1) because it was never given the opportunity to opt out, never consented to this Court's jurisdiction, and has no minimum contacts with the forum, the Court may not enjoin its state court action, (2) QueenPin is not a member of any Settlement Class, and (3) the notice program was inadequate.[5] Because it informs the analysis of QueenPin's other arguments, the Court will begin with QueenPin's contention that it is not a class member.

### A. *Class Membership*

QueenPin argues that it was not aware of any Imprelis damage to its property until the fall of 2013. Therefore, it claims, it cannot be a member of the class. But, as DuPont points out in reply, *awareness* of Imprelis damage is not the standard by which class membership is judged. Rather, the Settlement counts as class members all those adjacent property owners "whose trees *show damage* from Imprelis® on or before the date of entry of the Preliminary Approval Order." Oct. 17, 2013 Order, at 2, Docket No. 244. That QueenPin did not notice the damage or know that Imprelis caused the damage does not exempt QueenPin from the class.

In setting forth the facts of its case (but, notably, not in setting forth its arguments), QueenPin states that its trees did not show damage until after February 11, 2013. However, it offers no support for this statement, nor does it provide any additional facts or evidence that might lend support to that assertion. DuPont, in contrast, provided an affidavit from Ronnie

---

[5] QueenPin also argues that the finality of the settlement will not be upset by allowing it to proceed in state court and that none of the exceptions to the Anti-Injunction Act apply. Both of those arguments depend entirely on whether QueenPin was a member of the class and therefore bound by the Settlement. In light of the Court's decision on that the threshold issue, then, the Court need not address these arguments specifically.

6

Turner, a DuPont Product Development Manager who participated in research concerning the effect of Imprelis on trees after tree injuries due to Imprelis were first reported in the late spring and summer of 2011. *See* DuPont's Mot. for Inj., Ex. D., Turner Aff., ¶¶ 1-4, Docket No. 507.5. In that affidavit, Mr. Turner summarizes the research performed by DuPont and other independent sources and concludes that trees impacted by Imprelis "would have expressed symptoms before February 2013. For applications in May of 2011 or earlier, any damaged trees would have expressed symptoms by the summer and fall of 2011." *Id.* at ¶ 18. The Court finds DuPont's evidence reliable and persuasive, particularly given the absence of any contrary evidence. Thus, QueenPin is a class member who is properly bound by the Settlement.

### B. Notice

QueenPin also argues that the Settlement Notice Program was not adequate, particularly as to those who own property adjacent to property to which Imprelis was applied. Reiterating the reasons for arguing it was not a member of the Class, QueenPin specifically argues that it did not receive actual notice of any damage and its connection to Imprelis until too late. That same issue was raised by the Corker plaintiffs, also adjacent property owners, and rejected by the Court. It is similarly unavailing here. *See* Sept. 18, 2015 Op., Docket No. 500, at 6-7. As the Court has previously held, the notice program was the best practicable approach under the circumstances. *See* Oct. 17, 2013 Op., at 13, Docket No. 243 ("the parties' comprehensive notice program, which the Court also reviewed in advance, satisfies Rules 23(c)(2)(B) and (e)"); *see also In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) (stating that "[c]ourts have consistently recognized that due process does not require that every class member receive actual notice so long as the court reasonably selected a means likely to apprise interested parties" and collecting cases). Moreover, "[n]o collateral review is

available when class members have had a full and fair hearing and have generally had their procedural rights protected during the approval of the Settlement Agreement. Collateral review is only available when class members are raising an issue that was not properly considered by the District Court at an earlier stage in the litigation." *In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005).

### C. *Opportunity to Opt Out and Jurisdiction*

QueenPin argues that because it did not know that Imprelis had damaged its trees until after both the opt-out deadline and the late acceptance deadline of September 27, 2013 has passed, it did not have a meaningful opportunity to opt out. QueenPin contends that without an opportunity to opt out, it must either consent to the Court's jurisdiction or have minimum contacts with the forum for this Court to enjoin it from continuing its litigation in state court. QueenPin cites *In re Real Estate Title & Settlement Servs. Antitrust Litig.*, 869 F.2d 760 (3d Cir. 1989), and *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877 (3d Cir. 1981), for support. Neither case, however, supports QueenPin's argument.

*Compagnie des Bauxites* did not involve a class action, and the portion to which QueenPin cites contains nothing more than a blanket statement that "[a] district court must have personal jurisdiction over a party before it can enjoin its action." This boilerplate pronouncement does not begin to address issues raised by class actions in which there is opportunity to opt out. *See Compagnie des Bauxites*, 651 F.2d at 880. In *Real Estate Title & Settlement Servs.*, the parties who mounted a successful challenge to an injunction preventing them from litigating claims in state court were not afforded the right to opt out of the underlying class action settlement because the class was certified pursuant to Federal Rules of Civil

8

Procedure 23(b)(1) and 23(b)(2), which provisions do not require class notice or the right to opt out. *Real Estate Title & Settlement Servs.*, 869 F.2d at 763-64. That is not the case here, where an opt-out mechanism was provided to class members. Thus, "given the establishment of an opt out period and [QueenPin's] ability to opt out, it is within the sound discretion of [this Court] to enjoin [its] action in state court," even in the absence of minimum contacts. *See Carlough v. Amchen Prods., Inc.*, 10 F.3d 189, 204 (3rd Cir. 1993)). The Court notes that QueenPin has never presented a request to opt out, not even an untimely one. Given the adequacy of the notice in this case, then, the Court is compelled to conclude that QueenPin had an appropriate opportunity to opt out of the class action.

## CONCLUSION

For the foregoing reasons, the Court will grant DuPont's motion. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge