IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : : : : : : : | MDL No. 2284<br>11-md-02284 |
| THIS DOCUMENT APPLIES TO:<br>*All Actions* | | |

## MEMORANDUM

PRATTER, J.                                                                                    JANUARY 27, 2016

Faced with another claimant who desires to avoid the effects of the Class Action Settlement in favor of continuing to pursue DuPont in state court, Defendant DuPont has filed another motion seeking to enforce the Class Action Settlement in this multidistrict litigation. Plaintiffs Samuel Spencer Stone and Jerilyn Stone respond to DuPont's motion by arguing the inadequacy of the Settlement notice program, that they did not know that Imprelis had damaged their property until after the expiration of the claims deadline, that there is a possible dispute as to when Imprelis was applied to their property, and that they have a fraud claim that is independent of their claims about Imprelis.[1]  After considering the parties' written submissions, the Court will grant DuPont's motion.

### BACKGROUND

Because the Court has recounted the history of this litigation in several opinions, the following summary will be brief.

---

[1] The Stones also attempt to raise arguments based on Local Rule of Civil Procedure 53.3 (encouraging litigants in civil action to consider alternative dispute resolution processes) and Federal Rule of Civil Procedure 65 (governing preliminary injunctions), but neither of those rules have any bearing on the pending motion.

1

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the EPA began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, Plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the instant motions will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class, to which, DuPont argues, the Stones belong. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied (or adjacent to property to which Imprelis was applied) from August 31, 2010 through August 21, 2011. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015. On February 12, 2013, this Court preliminarily approved the Settlement, and specifically ordered that:

> Any Settlement Class Member may opt out of the Settlement by following the "Exclusion" procedure set forth in the Long Form Notice and the Settlement Agreement. All Settlement Class Members who do not opt out in accordance with the terms set forth in the Settlement Notice and the Settlement Agreement will be bound by all determinations and judgments in the Action. Any Class Member who wishes to opt out of the Class must do so in writing by mailing a request for exclusion to the Claims Administrator. Any such request must be postmarked no later than the Opt-Out Deadline, June 28, 2013. The request to opt out must be signed by the Class Member seeking to opt out and must set out the Class Member's first and last names (or company name), valid mailing address and functioning telephone number.

February 12, 2013 Order, Docket No. 160, ¶ 8. The Settlement itself provided that DuPont could terminate the agreement if "in its sole discretion, DuPont believe[d] that the number of Opt-Outs was unsatisfactory." *See* Settlement Agreement and Release, Docket No. 118-1, § IX.A.

On September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. At the hearing, counsel for Class Plaintiffs, supported by DuPont, stated that any potential class members who expressed an intention to opt out should have their intention honored. *See* Sept. 27, 2013 Tr., 11:17-24 ("Mr. Selbin: Our view – and I think it's shared by DuPont, is that if someone tries to opt out, that attempt should be honored, if they expressed a desire not to be bound by the settlement. And I believe that's DuPont's view, as well. Mr. Hoeflich [on behalf of DuPont]: That is correct, Your Honor.").

On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. In so doing, the Court found that the notice program, which included direct mail to all identified class members (those who had submitted claims to DuPont), as well as publication in print,[2] online,[3] and on television,[4] was "comprehensive" and the "best notice practicable under the circumstances." *Id.* at 363.

---

[2]   The print advertisements appeared in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and others geared toward adults age 35 and over.

The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7.  "Releasee" is defined in the Settlement Agreement as including DuPont and all of its subsidiaries and related entities, as well as all Lawn Care Professionals, professional applicators, and other Class Members.  *See* Settlement Agreement and Release, Docket No. 118-1, § II.HH.  The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

February 5, 2014 Order, Docket No. 274, ¶ 11.  Attached to that Order was a list of all parties who had opted out of the Settlement.  The Stones are not listed in that attachment.  *See id.* at Ex. A.

### B.     *The Stones*

Samuels Spencer Stone and Jerilyn Stone reside in Morgantown, West Virginia.  They allege in a complaint filed in state court in West Virginia that "[b]etween October 4, 2010 and October 9, 2013, Mountaineer Lawn Care applied a significant quantity of a[n] herbicide called Imprelis to the Plaintiffs' property."  They claim that as a result, many of the trees on their

---

[3]     Online advertisements appeared on AOL, Facebook, Yahoo!, Google, and other sites.

[4]     Commercials appeared at a variety of times of day in 46 targeted Market Areas throughout the United States.

property died, causing them to expend significant resources attempting to replace the damaged trees. The Stones also allege that they did not know that Imprelis had been applied to their property until November 2013. They set forth several products liability claims against DuPont, as well as a claim for fraud, in which they allege that DuPont misled them into believing that their claim would be resolved through the Class Action Settlement, only to deny them as "late" almost two years after the Stones sought to make a claim.

DuPont then filed the pending motion to enforce the Class Action Settlement, arguing that the Stones failed to opt out, that all of their claims are therefore barred by the Settlement, and that this Court should enjoin them from proceeding with their claims in state court, invoking the All Writs Act. They later filed a supplement to that motion, explaining that the state court had decided to hold DuPont's motion to stay in abeyance and to order mediation of the matter by early March, 2016, and that at a hearing on DuPont's motion to stay that case, the Stones represented that they had also filed suit against a lawn care company for Imprelis damage. Because of these developments, DuPont now asks the Court to not only enjoin the Stones from proceeding on their claims in state court, but to specifically enjoin the impending state court mediation and to include not only the suit against DuPont, but also any suits for Imprelis damage against the lawn care company.

**LEGAL STANDARD**

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That sweeping power is limited by the Anti-Injunction Act, which prohibits courts from issuing injunctions having the effect of staying proceedings in state courts except "as expressly

authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

**DISCUSSION**

The Court will begin with the well-established rule that "[t]here is of course no dispute that under elementary principles of prior adjudication a judgment in a properly entertained class action is binding on class members in any subsequent litigation." *Cooper v. Bank of Richmond*, 467 U.S. 867, 874 (1984). In other MDL proceedings in which class action settlements were approved or in which settlement approval was imminent, courts in this Circuit have enjoined class members from proceeding in state court under the latter two exceptions to the Anti-Injunction Act because allowing the class members to violate the court's final settlement orders by bringing individual state suits would interfere with the court's jurisdiction over the settlement and allow attempts to disturb the court's final judgment. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-Lowe)*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding district court's injunction prohibiting litigation of claims in state court to the extent they were related to those settled in a class action settlement); *In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-La Marra)*, 314 F.3d 99 (3d Cir. 2002) (upholding injunction prohibiting litigation of issues relating to settlement in state court but reversing retention of jurisdiction in improperly removed case; court had jurisdiction to issue injunction under the pending MDL, whether or not the state claims were removed); *In re Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 715 F. Supp. 2d 610 (E.D. Pa. 2010) (enjoining, under both the "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" prongs of the Anti-Injunction Act, state court litigation in which plaintiff attempted to litigate claims released in MDL class action settlement).

DuPont argues that the Stones did not opt out of the Settlement, and that, therefore, pursuant to the All Writs Act and the Third Circuit case law applying that Act in the context of class action settlements and multi-district litigation, the Stones should be enjoined from pursuing any Imprelis claims in state court. As discussed above, the Stones advance multiple arguments for why they should not be bound by the Settlement, which will be addressed below.

### A. Notice

The Stones claim that they did not know that Imprelis had been applied to their lawn until November, 2013, let alone that there was a Class Action Settlement with an opt-out deadline in June, 2013, and that therefore they should not be bound by the Settlement. The Stones also argue that because their lawn care operator knew about the Class Action Settlement, their lawn care operator should have notified them. They cite to the transcript of the Final Approval Hearing, in which an attorney for the Class stated that the intended consequence of giving direct notice to lawn care operators was that they would pass the information on to their customers. The Stones cite no case law in support of their argument that their failure to receive actual notice should allow them to pursue their claims outside of the Class Action Settlement, nor do they cite to any Order of this Court that expressly directed lawn care operators to provide direct notice to customers.

This Court has addressed similar arguments in this matter in the context of motions to dismiss and motions to enjoin state court litigation. *See, e.g.,* December 5, 2014 Memorandum and Order (Docket Nos. 347, 348) (enjoining two state cases and dismissing one federal suit when plaintiffs pursued litigation after failing to opt out of class action); June 18, 2015 Memorandum and Order (Docket Nos. 452, 453) (enjoining state court action when plaintiffs failed to opt out of class action settlement); September 18, 2015 Memorandum and Order

(Docket Nos. 500, 501) (dismissing case when plaintiffs pursued litigation after failing to opt out of class action). The Stones argument is no different from the argument made by one set of objectors that adjacent property owners were ascertainable and deserved direct notice, *see* September 18, 2015 Memorandum and Order (Docket Nos. 500, 501), or the others, who argued that DuPont should have obtained customer lists from lawn care companies and provided direct notice based on those lists, *see* June 18, 2015 Memorandum and Order (Docket Nos. 452, 453). The Court rejected both of those arguments, and will likewise reject the Stones' argument. In brief, the Court has already thoroughly examined and approved of the Class Action Settlement, including, as discussed above, the notice provisions, and the Stones may not now challenge those issues that have already been litigated. *See In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prods. Liab. Litig.*, 431 F.3d 141, 146 (3d Cir. 2005).

### B. Class Membership

The Stones also point to their state court complaint, which alleges that Imprelis was applied to their property "[b]etween October 4, 2010 and October 9, 2013, Mountaineer Lawn Care applied a significant quantity of a[n] herbicide called Imprelis to the Plaintiffs' property." The Property Owner Class in this litigation includes property owners to whose lawn Imprelis was applied between August 31, 2010 and August 21, 2011. The Stones appear to argue that they may not even be class members, as their alleged application period extends for over two years beyond the class period, and therefore Imprelis may not have even been applied during the class period. However, DuPont attached to its motion a spray record, submitted by Plaintiffs during the claims process, that shows that Imprelis was applied to Plaintiffs' property on June 9, 2011. The Stones do not claim that the document was fabricated or fraudulent, although they do claim

that they did not see the document in June of 2011. This spray record, the lack of any evidence proffered by the Stones to show that Imprelis was applied to their property at any time other than in June of 2011, and the fact that Imprelis was pulled from the market in 2011 lead the Court to conclude that the Stones are, in fact, class members.

### C. Fraud Claim

The Stones also argue that their fraud claim, in which they allege that DuPont misled them by inviting them to file a warranty claim and then denying that claim two years later, is not an *Imprelis* claim, but rather an independent claim that should be permitted to proceed in state court, even if all of their products liability claims are barred by the Settlement. As DuPont points out, however, not only does the Settlement bar *all* claims that "aris[e] from or relat[e] to Imprelis," the Court also retained "jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and [has] exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont." *See* February 4, 2011 Final Judgment Order, Docket No. 274, at ¶ 11. The Stones' fraud claim would fall under both of these categories – it both relates to Imprelis and arises from a dispute relating to the Settlement Agreement. Therefore, allowing such a claim to proceed in state court would interfere with this Court's final judgment and impinge upon matters over which this Court has exclusive jurisdiction. The Court notes that to the extent that the Stones' fraud claim reflects a disagreement with the outcome of their claims submission, the proper way to challenge the outcome is through the appeals process established by the Settlement Agreement, not the filing of an independent lawsuit in state court.[5]

---

[5] The Court has very little information, and, at this juncture, no opinion, regarding the merits of the Stones' warranty claim.

### D. Lawn Care Operator claims

In its supplemental filing, DuPont not only asks the Court to enjoin the state court proceeding against it, including the upcoming state court mediation, but it also asks the Court to enjoin an "Imprelis suit" brought by the Stones against a lawn care company. As already discussed, in granting final approval of the Settlement, the Court "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . .," February 5, 2014 Order, Docket No. 274, ¶ 7, and retained exclusive jurisdiction over Settlement Agreement disputes, *id.* at ¶ 11. There is also no question that the Releasees include lawn care operators sued for Imprelis damage. *See* Settlement Agreement and Release, Docket No. 118-1, § II.HH (explicitly including lawn care operators in the definition of "Releasee"). Although DuPont relates that Mr. Stone mentioned filing, but not yet serving, such a lawsuit in state court, this Court has not received a copy of the Complaint in that case and therefore has no information about what that lawsuit alleges, against whom it was filed, or whether the claims relate exclusively to Imprelis. Without a specific state court filing and appropriate briefing tailored to that specific state court suit, the Court will not enter an Order with a blanket injunction that would be nothing more than a restatement of its February 5, 2014 Order entering final judgment. At the same time, the Court admonishes the Stones to review the Final Judgment Order, the Settlement Agreement, and the Order accompanying this Memorandum carefully and thoroughly.

**CONCLUSION**

  For the foregoing reasons, the Court will grant DuPont's motion. An appropriate Order follows.

                 BY THE COURT:


                 <u>S/Gene E.K. Pratter</u>
                 GENE E.K. PRATTER
                 United States District Judge