## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS LIABILITY | : | |
| LITIGATION | : | MDL No. 2284 |
| | : | 11-md-02284 |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| | : | |
| THIS DOCUMENT APPLIES TO: | : | |
| ALL ACTIONS | : | |
| | : | |

### MEMORANDUM

PRATTER, J.                                                                                  JUNE 14, 2016

Dempster and Gail Ross filed an appeal of the Arborist Panel decision relating to their

claim under the Imprelis settlement agreement. In that appeal, however, they express a belief

that they had opted out of the class action in this matter and can pursue a pending lawsuit in

Jackson County, Michigan. Because it was not clear whether the Rosses were asking the Court

to decide an appeal or to determine their opt-out status, the Court ordered the Rosses to clarify

their position and file an appropriate motion. The Rosses have now filed a motion for

"declaratory ruling" on their opt-out status, and DuPont has responded and filed its own motion

seeking an injunction barring the Rosses' state court law suit. After considering the parties'

written submissions,[1] the Court will deny the Rosses' motion and grant DuPont's.

### BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the

following summary will be brief.

---

[1] Although the Rosses' opposition to DuPont's motion was filed late, the Rosses, via correspondence with
the Court, did request a brief extension, which the Court will grant *nunc pro tunc*. Therefore, the Rosses'
response to DuPont's motion will be considered as part of this evaluative process.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the EPA began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, Plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties reached a settlement agreement. The details of the settlement relevant to the instant motions will be discussed in greater detail below.

### A.  *The Settlement*

The Imprelis Class Action Settlement covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class, to which, DuPont argues, the Rosses belong. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015. On February 12, 2013, this Court preliminarily approved the Settlement, and specifically ordered that:

2

> Any Settlement Class Member may opt out of the Settlement by following the "Exclusion" procedure set forth in the Long Form Notice and the Settlement Agreement. All Settlement Class Members who do not opt out in accordance with the terms set forth in the Settlement Notice and the Settlement Agreement will be bound by all determinations and judgments in the Action. Any Class Member who wishes to opt out of the Class must do so in writing by mailing a request for exclusion to the Claims Administrator. Any such request must be postmarked no later than the Opt-Out Deadline, June 28, 2013. The request to opt out must be signed by the Class Member seeking to opt out and must set out the Class Member's first and last names (or company name), valid mailing address and functioning telephone number.

February 12, 2013 Order, Docket No. 160, ¶ 8. The Settlement itself provided that DuPont could terminate the agreement if "in its sole discretion, DuPont believe[d] that the number of Opt-Outs was unsatisfactory." *See* Settlement Agreement and Release, Docket No. 118-1, § IX.A.

On September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. At the hearing, counsel for Class Plaintiffs, supported by DuPont, stated that any potential class members who expressed an intention to opt out should have their intention honored. *See* Sept. 27, 2013 Tr., 11:17-24 ("Mr. Selbin: Our view – and I think it's shared by DuPont, is that if someone tries to opt out, that attempt should be honored, if they expressed a desire not to be bound by the settlement. And I believe that's DuPont's view, as well. Mr. Hoeflich [on behalf of DuPont]: That is correct, Your Honor.").

On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. In so doing, the Court found that the notice program, which included direct mail to all identified class members (those who had submitted claims to DuPont), as well as publication in print,[2] online,[3] and on television,[4] was "comprehensive" and the "best notice

---

[2]     The print advertisements appeared in widely circulated publications like *Parade*, *People*, *Better Homes and Gardens*, *Time*, and other publications geared toward adults age 35 and over.

[3]     Online advertisements appeared on AOL, Facebook, Yahoo!, Google, and other sites.

practicable under the circumstances." *Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig. (Imprelis-Final Approval),* 296 F.R.D. 351, 363 (E.D. Pa. 2013).

The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. Released Claims "include any and all claims arising from or relating to Imprelis," excluding "claims for personal injury, wrongful death, and any environmental claims not related to claimed injuries to Class Member's property and vegetation." *See* Settlement Agreement and Release, Docket No. 118-1, § VI.A. The Court retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

February 5, 2014 Order, Docket No. 274, ¶ 11. Attached to that Order was a list of all parties who had opted out of the Settlement. The Rosses are not listed in that attachment. *See id.* at Ex. A.

### B.     *The Rosses*

The Rosses received a settlement offer from DuPont's claim resolution process on October 2, 2012. That offer included notice of the Imprelis class action lawsuit. In the spring of 2013, the Rosses received a copy of the Long Form Notice, which detailed the Settlement and

---

[4]     Commercials appeared at a variety of times of day in 46 targeted Market Areas throughout the United States.

included explicit instructions concerning how to opt out. On April 29, 2013, the Rosses, through their attorney, sent a letter to the Hanover Insurance Group, which the Rosses claim is DuPont's insurer,[5] attempting to negotiate a more favorable settlement. That letter states, in part, "I am therefore requesting that upon receipt and review of this communication, if the carrier is prepared to enter into settlement talks in this matter or will we be required to file our own separate action and opt out of the class action litigation. [sic]" Ross Motion, Docket No. 609, Ex. 2. The Hanover Insurance Group did not respond to the letter, and on July 13, 2013, the Rosses filed a lawsuit in Jackson County, Michigan, bringing products liability claims against a lawn care operator, Underwood Nursery, and seeking, among other damages, recompense for alleged diminution in their property's value.

In November, 2013, the Rosses and Underwood agreed to stay the Michigan action until this Court determined the Rosses' opt-out status. Meanwhile, the parties continued settlement negotiations through the Claims Resolution Process, which included submission of their claims to a panel of arborists that had been designed by the settlement processes. The Rosses' objections to the proffered settlement were eventually rejected by the Arborist Panel. In the spring of 2015, the Rosses filed an appeal of the Arborist Panel decision, in which they also contended that they had opted out of the Settlement. Unable to discern what, exactly, the Rosses wanted the Court to decide, the Court ordered the Rosses to clarify their intentions by filing an appropriate motion. The Rosses then filed the pending motion for "declaratory ruling," which, for the first time, directly asked this Court to resolve the question of the Rosses' opt-out status. DuPont opposed the motion and filed its own motion to enjoin the Rosses' Michigan state court action.

---

[5] DuPont contends that the Hanover Insurance Group has nothing whatsoever to do with the Imprelis Claims Resolution Process.

5

**DISCUSSION**

### *A. Motion for "Declaratory Ruling"*

The Rosses move for a "declaratory ruling" that they opted out of the Settlement and/or that the claims in their state lawsuit for damages relating to the diminution of property value are specifically excluded from the Settlement. This Court has exclusive jurisdiction over the Settlement Agreement, and the questions of whether the Rosses opted out of the Settlement and whether the claims in the state lawsuit are excluded from the Settlement fall squarely into that jurisdiction.

Beginning with the question of whether the Rosses opted out of the Settlement, the Rosses' chief argument appears to be that their letter to the Hanover Insurance Group, which mentioned the possibility of opting out, was sufficient to put DuPont on notice of their intention to opt out. However, at most, the letter, which was not sent in any form to DuPont, let alone the designated Claims Administrator, shows that the Rosses were contemplating opting out at some time in the future should they not be able to reach a favorable settlement with DuPont. Given that the Rosses had received a Long Form Notice, which provided explicit instructions regarding how to opt out, and that they were actively participating in the Claims Resolution Process, the ambiguous language contained in the "Hanover letter" was not enough to signal to DuPont that the Rosses actually were opting out of the Settlement, even if DuPont had actually received the letter. *See also In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liab. Litig. (Imprelis Greener Mem.)*, MDL No. 2284, 2014 WL 6901120, at *6 (E.D. Pa. Dec. 5, 2014) (holding that Plaintiff Eric Greener did not opt out of the Settlement when he sent a letter directly to DuPont with ambiguous language similar to the Rosses').

Turning to the question of whether claims for diminished property value are excluded from the Settlement, the Rosses seem to believe that the language in the Settlement discussing exclusions – specifically, the exclusion of "any environmental claims not related to claimed injuries to Class Member's property and vegetation" – means that claims relating to diminution of property value are excluded. However, the quoted language clearly demonstrates that the Rosses' diminution of property value claims are *included* in the Released Claims. The language specifies that only environmental claims that are *not* related to injuries to property and vegetation are excluded, and a claim alleging diminution in *property* value very clearly relates to an injury to *property*.

The Rosses also point to language in the Arborist Panel decision that describes their diminution claim as outside the Panel's jurisdiction and argue that this demonstrates that the claim is not encompassed by the Settlement. Contrary to the Rosses' desired interpretation, the comment that property value claims are outside the Panel's jurisdiction does not demonstrate that such a claim is not covered by the Settlement Release. The Settlement provided for a payment of 15% of the total value of other payments under the Settlement, and this amount was intended, in part, to compensate Class Members for loss of property value. When the Arborist Panel stated that they lacked jurisdiction to award compensation for potential loss of property value, the Panel obviously meant that it had no authority under the Settlement to alter the 15% payment or to otherwise stray beyond the limits of the Panel's authority to determine "(a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records;

(e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [relating to tree symptoms]." *See* Settlement Agreement and Release, Docket No. 118-1, § III.C.1.a.xi.

Finally, the Rosses argue that because their claims are not covered by the Settlement Agreement, the Court does not have subject matter jurisdiction over their Michigan lawsuit. However, because the claims *are* indeed covered by the Settlement, this Court has exclusive jurisdiction over all disputes relating to the Settlement Agreement and retains *in personam* jurisdiction over Class Members, and the question of subject matter jurisdiction over the Michigan lawsuit itself is therefore irrelevant, given that the Court is in no way attempting to adjudicate the merits of the Michigan lawsuit. *See In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-La Marra)*, 314 F.3d 99, 103-05 (3d Cir. 2002) (holding that the district court had jurisdiction to issue an injunction prohibiting state court proceedings that implicated a final settlement order "under the court's jurisdiction" in the multidistrict litigation, regardless of whether the Court had subject matter jurisdiction over the individual action).

Because the Rosses did not opt out of the Settlement and because their claims are unambiguously released by the Settlement Agreement, the Court will deny the Rosses' motion and will turn to DuPont's motion to enjoin the Rosses' state court lawsuit.

### *B. Motion for Injunction*

The All Writs Act, 28 U.S.C. § 1651, allows federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." That power is limited by the Anti-Injunction Act, which prohibits courts from issuing injunctions having the effect of staying proceedings in state courts except "as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

In other MDL proceedings in which class action settlements were approved or in which settlement approval was imminent, courts in this Circuit have enjoined class members from proceeding in state court under the latter two exceptions to the Anti-Injunction Act, because allowing the class members to violate the court's final settlement orders by bringing individual state court suits would interfere with the district court's jurisdiction over the settlement and allow attempts to disturb the court's final judgment. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practice Litig. (Prudential-Lowe)*, 261 F.3d 355, 367 (3d Cir. 2001) (upholding district court's injunction prohibiting litigation of claims in state court to the extent they were related to those settled in a class action settlement); *Prudential-La Marra*, 314 F.3d 99 (upholding injunction prohibiting litigation of issues relating to settlement in state court but reversing retention of jurisdiction in improperly removed case; court had jurisdiction to issue injunction under the pending MDL, whether or not the state claims were removed); *In re Am. Investors Life Ins. Co. Annuity Marketing & Sales Practices Litig.*, 715 F. Supp. 2d 610 (E.D. Pa. 2010) (enjoining, under both the "necessary in aid of its jurisdiction" and "to protect or effectuate its judgments" prongs of the Anti-Injunction Act, state court litigation in which plaintiff attempted to litigate claims released in MDL class action settlement).

The Rosses' primary argument with respect to the All Writs Act is that DuPont did not file a brief with its motion, but instead incorporated its opposition to the Rosses' motion as its brief in support of the motion. They then argue that the DuPont opposition brief did not mention the All Writs Act. While it may be true that DuPont did not use the words "All Writs Act" in its brief, DuPont cites several cases dealing with the All Writs Act and with injunctions barring state court lawsuits under the All Writs Act. *See* DuPont Opp. Mem., Docket No. 614, at 10-11.

Thus, DuPont adequately briefed the issue in question. The Rosses provide no substantive legal argument that would contradict any of the cases cited by DuPont.

The Rosses also maintain that no injunction should issue because they opted out of the Settlement. Having already found that this is not so, the Court concludes that the Rosses have presented no argument as to why the Court should not enjoin their Michigan suit. In the absence of any legal authority or argument against entering an injunction, and with the above-cited authority in favor of enjoining the Michigan suit, the Court will grant DuPont's motion.

## CONCLUSION

For the foregoing reasons, the Court will grant DuPont's motion and deny the Rosses' motion. An appropriate Order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge