## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: IMPRELIS HERBICIDE MARKETING,    :
SALES PRACTICES AND PRODUCTS LIABILITY    :
LITIGATION    :    **MDL No. 2384**
   :    **11-md-02384**
_____ :
   :
THIS DOCUMENT APPLIES TO:    :
ALL ACTIONS    :
   :

## MEMORANDUM

PRATTER, J.                                                           AUGUST 9, 2017

Anthony Carobine appeals the decision of the Imprelis Arborist Panel,[1] claiming that he

lost 50 trees to Imprelis and did not receive compensation, that the heights for other trees

included in his claim were inaccurate, and that he should receive compensation for loss of

property value and to compensate him for 20 years of caring for the trees. Because the Appeals

Panel decision in Mr. Carobine's case was neither arbitrary nor capricious, the Court will affirm

their decision and deny Mr. Carobine's appeal.

### BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the

following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively

kill unwanted weeds without harming non-target vegetation. After widespread reports of

damage to non-target vegetation, the Environmental Protection Agency ("EPA") began

investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim

_____

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process,

various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act

violations, breach of express and/or implied warranty, negligence, strict products liability,

nuisance, and trespass claims based on the laws of numerous states. After months of settlement

discussions, including mediation, the parties came to a settlement agreement. The details of the

settlement relevant to the appeals process will be discussed in greater detail below.

### A. The Settlement

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis

Plaintiffs. Among the three settlement classes is a property owner class. That class includes all

persons or entities who own or owned property in the United States to which Imprelis was

applied from August 31, 2010 through August 21, 2011, as well as all persons who own or

owned property adjacent to property to which Imprelis was applied and whose trees showed

damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or

February 11, 2013. Under the Settlement, property owner class members who filed claims by the

claims deadline would receive tree removal (or compensation for tree removal), payments for

replacement trees, tree care and maintenance payments, and a 15% payment for incidental

damages. The Settlement included a warranty that provided for all benefits but the 15%

incidental damages award for Imprelis damage that manifested after the claims period closed but

before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who

file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework

for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one

chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one

chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in

3

any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February

5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any

action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the
> implementation, enforcement, and performance of the Settlement Agreement, and shall
> have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising
> out of or relating to the Settlement Agreement or the applicability of the Settlement
> Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and
> DuPont.

*Id.* at ¶ 11.

### B. *Anthony Carobine's Appeal*

In the 1980s, Mr. Carobine planted 40 trees along his property line and meticulously

cared for those trees for over 20 years. After Imprelis was applied to his lawn, he claims that 29

of his trees required removal, and that after he replaced those trees, 21 of the replacement trees

required removal. All of these trees were removed before Mr. Carobine's property was inspected

by a Davey Tree arborist. Mr. Carobine submitted several photographs of the trees from both

before and after Imprelis was applied. DuPont denied his claim for those 50 trees (although it

did offer compensation for other trees), and Mr. Carobine appealed, arguing that those 50 trees

should have been included, disputing the heights of other trees, and seeking additional

compensation for loss of property value and for the many years he spent tending to the removed

trees. On appeal, the Arborist Panel was unable to determine from the photographs what had

caused damage to Mr. Carobine's tree or that there was any error in the heights recorded by

Davey Tree, and therefore denied his appeal. As to the third issue of additional compensation,

the Appeals Panel determined that it was beyond its jurisdiction.

## LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of

5

review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

Mr. Carobine argues that 50 trees (29 original trees and 21 replacement trees) were killed by Imprelis and removed before he knew about the effects of Imprelis. He claims that evidence of Imprelis damage to other trees on his property should be enough to allow the Court to conclude that the 50 trees in question were also killed by Imprelis. Mr. Carobine also argues that the heights assigned to some trees for which he did receive an offer of compensation were too low. However, as the Arborist Panel concluded, the photographs Mr. Carobine submits in support of his claim do not provide sufficient detail to determine what damaged the 50 removed trees or to contradict the tree heights assessed by Davey Tree. Therefore, the Court cannot conclude that the Arborist Panel acted arbitrarily or capriciously in denying the appeal.

Mr. Carobine also seeks compensation for loss of property value and for the many years he spent caring for his trees. The Settlement Agreement does not provide for this additional compensation, however, and by failing to opt out of the Agreement, Mr. Carobine waived his rights to seek this additional compensation. The Arborist Panel had no jurisdiction to award

compensation beyond that included in the Settlement Agreement and therefore correctly denied

this portion of Mr. Carobine's appeal, as well.

CONCLUSION

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny Mr.

Carobine's appeal.  An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge