IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : <br> : <br> :     MDL No. 2884 <br> :     11-md-02884 <br> : |
| THIS DOCUMENT APPLIES TO: <br> ALL ACTIONS | : <br> : <br> : <br> : |

## MEMORANDUM

PRATTER, J.                                                                                                                                                         AUGUST 16, 2017

       Joseph Sebastianelli appeals the decision of the Imprelis Arborist Panel,[1] claiming that one Imprelis-damaged Austrian Pine died after inspection, that two plants (identified as Spruce Bird's Nests) that were initially classified as trees and included in his Claim Resolution Agreement should not have been reclassified as shrubs and excluded, and that he wants assurances that all future damages from Imprelis will be compensated. Because the Appeals Panel decision in Mr. Sebastianelli's case was neither arbitrary nor capricious as to their assessment of the Austrian Pine and because the Appeals Panel had no jurisdiction to extend the warranty coverage already offered under the Settlement, the Court will affirm their decision as to those issues. Because it is not clear whether the Appeals Panel even considered the classification of the Spruce Bird's Nests, the Court will remand this matter to the Panel to review that issue.

### BACKGROUND

       Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

1

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15%

2

incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *Joseph Sebastianelli's Appeal*

After a site visit to examine Imprelis-damaged plants on Mr. Sebastianelli's property, a DuPont inspector concluded that one Austrian pine sustained Imprelis damage and should be rated as a 2, warranting tree care compensation. The inspector also identified two "Spruce Bird's Nests" as trees that were damaged by Imprelis exposure. Mr. Sebastianelli then objected to the Claims Resolution Agreement, at which time DuPont reassessed the claim in full and determined that the "Spruce Bird's Nests" were shrubs, not trees, and removed them from the settlement offer. Mr. Sebastianelli appealed both the rating of the Austrian Pine tree, which he claimed deteriorated significantly after it was initially rated and eventually died, and the classification of

4

the two Spruce Bird's Nests as shrubs rather than trees. The Appeals Panel denied his appeal in full.

## LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review. Mr. Sebastianelli explicitly argues for *de novo* review, arguing only that the purpose of the appeals process is to ensure that claimants are fully compensated for their losses.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement.

Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

As a threshold matter, Mr. Sebastianelli objects to the Arborist Panel written statement submitted after this appeal had already been filed. *See* June 15, 2015 Order, Docket No. 451. After a few claimants began filing appeals and counsel for both DuPont and the Class realized that the absence of any reasoning from the Appeals Panel would make it difficult for all parties and the Court to assess the merit of appeals, the Arborist Panel began recording its reasoning. Those written statements were then submitted to the Court and distributed to appellants, who were then given the opportunity to review them and respond accordingly. Rather than providing an unfair surprise, the written statements were intended to assist claimants in evaluating the merits of their appeals and to aid the Court in assessing each appeal. Therefore, given that Mr.

6

Sebastianelli had an adequate opportunity to supplement the record after receiving the Arborist Panel written statement, the Court will not exclude that document from consideration.

Mr. Sebastianelli raises three substantive issues in his appeal. First, as to the Austrian Pine, Mr. Sebastianelli agrees that the tree was properly rated when it was first inspected, but argues that the tree declined and died thereafter and that, according to his own expert and the Perdue Plant & Diagnostic Laboratory 2013 Imprelis Update, tree care, such as fertilization, is not an appropriate option until after the injury from Imprelis ceased and recovery begins. The Appeals Panel written statement notes that the Panel reviewed the evidence and concluded that the tree "shows symptoms of Diplodia (Sphaeropsis) blight as well as showing no typical symptoms of Imprelis Damage." *See* Appeals Panel Written Statement, attached to June 15, 2015 Order, Docket No. 451. Although Mr. Sebastianelli's expert disagrees, the Court cannot say that the Arborist Panel's conclusions about the cause of damage to Mr. Sebastianelli's tree is arbitrary or capricious.

Mr. Sebastianelli also asks for assurance that any future damage will be compensated. However, this request is beyond the purview of the Appeals Panel. The Settlement Agreement sets forth the parameters for warranty claims, and neither the Court nor the Appeals Panel will extend that Agreement.

Finally, as to Mr. Sebastianelli's argument that the Spruce Bird's Nests should be reclassified as trees, the Court notes that no mention of that issue is made in the Appeals Panel written statement. Given that inspectors of Mr. Sebastianelli's property, including those sent by DuPont, have previously disagreed about the classification of those two plants and that the Appeals Panel failed to acknowledge this issue in their written statement, it is unclear whether the Appeals Panel intended to affirm the classification or whether it overlooked that issue

7

entirely. Therefore, the Court will remand this matter to the Appeals Panel to consider only the question of how to classify the two Spruce Bird's Nests.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny Mr. Sebastianelli's appeal as to the Austrian Pine and the warranty issues. The Court will remand the claim to the Appeals Panel as to the issue of the Spruce Bird's Nests classification. An appropriate order follows.

BY THE COURT:

GENE E. K. PRATTER
United States District Judge