IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2284<br>11-md-02284 |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | |

## MEMORANDUM

PRATTER, J.                                                                                           AUGUST 21, 2017

John Masserant appeals the decision of the Imprelis Arborist Panel,[1] claiming that a number of trees rated for tree care should be rated for removal. Because the Appeals Panel decision in Mr. Masserant's case was neither arbitrary nor capricious, the Court will affirm their decision and deny Mr. Masserant's appeal.

### BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

1

violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

## A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to

2

objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February

3

5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *John Masserant's Appeal*

After a warranty inspection of Mr. Masserant's trees, seven trees were recommended for removal and replacement and ten were recommended for tree care. Mr. Masserant appealed his notice of warranty resolution to the Arborist Panel on September 30, 2014. However, he did not provide any details concerning what he wished to appeal or include any evidence supporting his appeal. The Panel denied the appeal.

### LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise,

4

particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

Mr. Masserant appeals from the Arborist Panel's decision to deny his appeal for lack of evidence. He now clarifies that he was challenging the tree ratings for the trees recommended for care, and he includes several pictures for the Court's review. However, the Court's review is limited to that evidence presented to the Appeals Panel, and Mr. Masserant presented *no* evidence to the Appeals Panel. Indeed, he did not even identify for the Appeals Panel the issues he intended to raise on appeal. Therefore, the Court will affirm the decision of the Panel.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny Mr. Masserant's appeal. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge