IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2284<br>11-md-02284 |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | |

## MEMORANDUM

PRATTER, J.                                                                                            AUGUST 21, 2017

Peter and Janet Dickinson appeal the decision of the Imprelis Arborist Panel,[1] claiming that DuPont should have given them more compensation for certain trees that were cut down before they were inspected and that other trees were more damaged than their ratings reflected. Because the Appeals Panel decision in the Dickinsons' case was neither arbitrary nor capricious as to tree ratings, the Court will affirm their decision as to those issues. Because setting a six-foot default under the circumstances of this case was arbitrary, the Court will remand this matter to the Panel to review that issue.

### BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

1

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

## A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one

2

chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or

3

other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *The Dickinsons' Appeal*

Peter and Louise Dickinson claim that Imprelis damaged several trees on their property. After an inspection of 71 trees, DuPont agreed that 26 trees should be removed and replaced and 32 trees should receive tree care. Of the trees rated for removal, 17 were removed before DuPont ever inspected the property,[2] and no pre-removal photographs are available for these trees. The Dickinsons do, however, have pictures of the tree stumps with yardsticks to show their diameter and have attested that the trees were planted in 1985. These trees were assigned a default height of six feet.

The Dickinsons objected to tree heights and tree ratings assigned to several of the trees evaluated by DuPont. They appealed DuPont's offer to the Imprelis Arborist Panel, and the Panel denied their appeal in all respects.

### LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or

---

[2] Some of these were removed on October 16, 2011, and others were removed on March 16, 2013. The Dickinsons contend that they did not know what had caused the trees to die until after they removed them.

4

corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review. Mr. Sebastianelli explicitly argues for *de novo* review, arguing only that the purpose of the appeals process is to ensure that claimants are fully compensated for their losses.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v.*

*Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

The Dickinsons challenge the tree heights and tree ratings assigned to several trees in their appeal. As to tree heights, the Dickinsons focus primarily on the 6-foot default height assigned to the 17 trees the Dickinsons removed prior to submitting their Imprelis claim. The Dickinsons admit that they do not have pre-removal photographs of the trees, and certainly not pre-removal photographs that comply with the photo guidelines included in the Settlement Agreement. However, they did provide a declaration from Peter Dickinson that the trees were planted in 1985 and had grown to over 60 feet when they were removed, a statement from the lawn care professional who removed the trees attesting to the fact that they were more than 50 feet tall when they were removed, photographs of the tree stumps with yardsticks to show their diameter, and Google map photographs that appear to show that the trees exceeded the height of the 40-foot tall house. They also submit an affidavit from Peter Dickinson stating that the removed trees were planted at the same time as other trees that are still on the property, and that those trees all exceed 65 feet in height.

DuPont argues that the evidence submitted by the Dickinsons does not allow for an accurate assessment of tree height, and that without appropriate evidence of tree height as outlined in the Settlement Agreement the Dickinsons were only entitled to compensation for trees at a default height of 6 feet. DuPont does not point to any provision of the Settlement Agreement that establishes that specific default height, however. Moreover, where, as here, there is evidence of the trees' ages (Mr. Dickinson's declaration, corroborated by pictures of stumps with yardsticks to show diameter), a default height of 6 feet is arbitrary, particularly when the Dickinsons removed the trees in good faith before ever knowing about the Settlement. Indeed, although DuPont did initially establish a claims process about a month before the Dickinsons cut down several trees, there is no evidence that the Dickinsons knew or should have known about that claims process, and the Settlement itself was years away from being finalized. Even the trees removed by the Dickinsons in 2013 were cut down before the class notices were mailed.

Thus, while the Arborist Panel need not credit the conflicting evidence of actual height offered by the Dickinsons, the Court will remand the tree height portion of this appeal to the Arborist Panel to establish a more equitable "default" height in the context of the specific evidence offered here – namely, the evidence of tree age, stump diameter, and tree type. The Arborist Panel shall either award compensation based on the low end of the average range of height for trees of the age and type removed by the Dickinsons, or shall explain in detail why the Dickinsons' evidence of tree age and species is not sufficient to allow the Panel to determine a height range more equitable than the default of 6 feet.

As to the tree ratings, although the Appeals Panel did not specifically discuss each individual tree in its narrative, it is clear that the Panel did consider the Dickinsons' challenges to

tree ratings, as reflected by the boxes checked on the Appeals Panel form. After a review of the evidence submitted by the Dickinsons, the Court does not conclude that the Appeals Panel acted arbitrarily or capriciously in rejecting their appeal of tree ratings.

**CONCLUSION**

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny the Dickensons' appeal as to tree ratings. The Court will remand the claim to the Appeals Panel as to the issue of tree heights, as outlined above. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
United States District Judge