# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : MDL No. 2884 : 11-md-02884 : |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | : : : : |

## MEMORANDUM

PRATTER, J.　　　　　　　　　　　　　　　　　　　　　　　　AUGUST , 2017

Marilyn Beddor appeals the decision of the Imprelis Arborist Panel,[1] claiming that 53 trees on her property were damaged by Imprelis and should be removed and replaced.[2] Because the Appeals Panel decision in Ms. Beddor's case was neither arbitrary nor capricious, the Court will affirm their decision and deny Ms. Beddor's appeal.

### BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

[2] An arborist hired by Ms. Beddor also notes 29 "trees of concern," but she states in her report that she was not able to determine conclusively the cause of damage to these trees. It is unclear whether Ms. Beddor is now seeking any compensation for these "trees of concern," but because her own expert could not conclusively link the damage to these trees to Imprelis, the Court will not consider those trees in this appeal.

1

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one

chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or

3

other proceeding asserting any Released Claims, against any Releasee ... by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum ...." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *Marilyn Beddor's Appeal*

In 2011, a representative of Ms. Beddor's lawn care operator inspected nine trees on Ms. Beddor's property for Imprelis damage. He rated each of the nine trees for tree care, and DuPont offered Ms. Beddor a claims resolution agreement that reflected those ratings. Ms. Beddor objected to DuPont's offer and claimed that, as assessed by an arborist she hired, she had 12 trees that had been damaged by Imprelis and that all 12 should be removed and replaced. Ms. Beddor, through counsel, then submitted an additional arborist report alleging that 53 trees required removal and replacement and identifying 29 more "trees of concern."[3] Ultimately, Ms. Beddor appealed her claims resolution agreement to the Arborist Panel. With that appeal, she submitted both arborist reports, but failed to submit more than a sampling of photographs or to tie the trees identified by the arborists she hired to the trees identified in the original inspection. The Panel denied the appeal.

---

[3] Ms. Beddor's original objections were rejected as untimely. Because the Appeals Panel ultimately heard her objections on the merits, however, the issue of whether or not her original objections were timely is moot.

4

## LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of

5

review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION[4]

Ms. Beddor's appeal primarily focuses on 53 trees she claims were damaged by Imprelis and should be removed and replaced.[5] She argues that it was error for the Appeals Panel to credit the inspector from her lawn care operator, who she calls an interested party, over her own highly qualified arborist, who set forth in her report a coherent methodology for inspecting the trees and her credentials for doing so. Ms. Beddor, however, submitted the arborists' reports[6]

---

[4] Ms. Beddor claims not to have received the Court's October 8, 2015 Order (Docket No. 518) enclosing the Arborist Panel written statement until DuPont sent her a copy with its own reply. Because she failed to receive notice, she asks the Court to consider her reply as timely, even though it was filed well after the 21-day response deadline. The Court will grant that request and consider the reply in reviewing this appeal.

[5] Ms. Beddor also takes issue with the claims process itself, and uses terms such as "unjust enrichment" and "unconstitutional" in setting forth her argument. However, this is not the appropriate time to attack the Settlement or the processes outlined by the Settlement, nor is this the appropriate vehicle to raise other legal claims against DuPont. The Court's role in this context is solely to review the decision of the Arborist Panel and to determine whether the Panel acted arbitrarily or capriciously in assessing Ms. Beddor's appeal, as it was presented to them.

[6] Ms. Beddor submitted reports from Erik Paulsen of Bartlett Tree Experts and Faith Applequist of Tree Quality, LLC. Mr. Paulsen's report consists of one paragraph which states that 12 trees on Ms. Beddor's property showed varying degrees of herbicide damage and should be removed and replaced. Ms.

6

with relatively few pictures for the Panel's consideration, and she made no effort to identify how specific trees matched up with DuPont's original claim inspection form. From the pictures included as a sampling in Ms. Applequist's report, for instance, it is not possible to corroborate Ms. Applequist's findings or to assign tree ratings. Some of the pictures are close-up shots, from which it is possible to see some damage to a particular tree but impossible to see how much of the tree is affected, and other pictures, which capture different trees from those depicted in the close-up shots, are full-tree shots, from which it is possible to see how much of the tree is affected but not possible to see the nature of the damage.

Ms. Beddor also argues that it was unclear what she would need to submit to support her claim, and that to the extent that the Arborist Panel found the sampling of photographs insufficient, she should have an opportunity to submit additional photographs. However, the form for appealing a claim resolution agreement to the Appeals Panel is clear – an appellant is instructed to "[a]ttach any evidence (including photographs, arborist reports, invoices, digital pictures, etc.) that you believe supports your appeal, which you would like the Appeals Panel to consider" and, if objections are made "to the value, rating, or care assigned to a specific tree, [an appellant should] be sure to reference that specific tree according to the tree number that was assigned to it on the Site Inspection Form attached to your Claim Resolution Agreement." *See* Beddor Appeal, Docket No. 450, at 110. Despite having a CD with hundreds of pictures supporting her arborist's report, Ms. Beddor did not submit those pictures to the Appeals Panel, but rather chose to submit only the report itself and a small sampling of pictures, as described above. Although she included the full CD of pictures with her reply, the Court will not consider evidence that was not part of the record before the Arborist Panel.

---

Applequist's report provides much more detail and identifies 53 trees for removal and replacement and 29 "trees of concern."

7

Because the Court cannot say that the Arborist Panel acted arbitrarily or capriciously in relying on the chart and photographs[7] from the original inspection, rather than crediting Ms. Applequist or Mr. Paulsen's reports, which did not include sufficient photographic evidence to corroborate their findings, the Court will deny Ms. Beddor's appeal.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny Ms. Beddor's appeal. An appropriate order follows.

BY THE COURT:

_____
GENE E.K. PRATTER
United States District Judge

---

[7] Ms. Beddor seems to be under the impression that the Appeals Panel only reviewed her expert reports, which at least included some photographs, and the original claim form. The Panel's written statement, however, makes reference to photographs from the original site visit, in addition to the claim form.

8