# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, | : | |
| SALES PRACTICES AND PRODUCTS LIABILITY | : | |
| LITIGATION | : | **MDL No. 2284** |
| | : | **11-md-02284** |
| | : | |
| | : | |
| **THIS DOCUMENT APPLIES TO:** | : | |
| **ALL ACTIONS** | : | |
| | : | |

## MEMORANDUM

PRATTER, J.                                                            AUGUST ___, 2017

Raymond Majcher appeals the decision of the Imprelis Arborist Panel,[1] claiming that the

Arborist Panel improperly disregarded the findings of arborists he hired as to the ratings of 26

trees and improperly disregarded his own tree height measurements of 56 trees. Because the

Appeals Panel decision in Mr. Majcher's case was neither arbitrary nor capricious, except as to

the rating of tree #169, the Court will affirm their decision and deny Mr. Majcher's appeal in all

respects except for the rating of tree #169.

**BACKGROUND**

Because the Court has written about the history of this litigation in several opinions, the

following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively

kill unwanted weeds without harming non-target vegetation. After widespread reports of

damage to non-target vegetation, the Environmental Protection Agency ("EPA") began

investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim

Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process,

various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act

violations, breach of express and/or implied warranty, negligence, strict products liability,

nuisance, and trespass claims based on the laws of numerous states. After months of settlement

discussions, including mediation, the parties came to a settlement agreement. The details of the

settlement relevant to the appeals process will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis

Plaintiffs. Among the three settlement classes is a property owner class. That class includes all

persons or entities who own or owned property in the United States to which Imprelis was

applied from August 31, 2010 through August 21, 2011, as well as all persons who own or

owned property adjacent to property to which Imprelis was applied and whose trees showed

damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or

February 11, 2013. Under the Settlement, property owner class members who filed claims by the

claims deadline would receive tree removal (or compensation for tree removal), payments for

replacement trees, tree care and maintenance payments, and a 15% payment for incidental

damages. The Settlement included a warranty that provided for all benefits but the 15%

incidental damages award for Imprelis damage that manifested after the claims period closed but

before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who

file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework

for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one

chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or

other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *Raymond Majcher's Appeal*

In late 2011, a DuPont arborist conducted a site visit of Mr. Majcher's property and inspected approximately 182 trees for Imprelis damage. DuPont then offered Mr. Majcher a claim resolution agreement valued at $110,107.90, to provide for removal and replacement of 8 trees and tree care for 84 trees. Mr. Majcher objected to the agreement, claiming that many more trees should be rated for removal, that the arborist used an improper methodology in assessing his trees, and that he should receive additional compensation for landscaping and emotional distress. DuPont scheduled a site revisit, but that revisit was never completed, and DuPont eventually denied Mr. Majcher's objections. Mr. Majcher then appealed his claim valuation to the Arborist Panel. With that appeal, he submitted reports from three teams of two arborists and contested the heights and/or ratings of 63 trees. The Panel granted his appeal in part, adjusting the ratings of 29 trees. DuPont then sent Mr. Majcher an amended claim resolution agreement valued at $205,600.45, reflecting the Panel's decision. Mr. Majcher now appeals the Panel's decision.

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of

review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

Mr. Majcher's objections can be divided into two main categories – tree ratings and tree heights.[2] As to tree ratings, Mr. Majcher claims that the Panel, who listed tree photographs as the reason supporting their changes in ratings, should have instead given greater weight to the opinions of his arborists[3] than to photographs, or else the Panel should have conducted their own site visit. He argues that photographs are much less reliable than reports from experts who have visited the property and viewed the trees directly. However, the Settlement Agreement specifically states that the Arborist Panel may not conduct additional site visits. *See* Docket No.117-2, § III.C.1.a.xi ("The Appeals Panel will not order or conduct additional site visits and will rule based on the evidence presented by the Parties."). Moreover, the Panel reviewed all of

---

[2] Mr. Majcher also points to typographical errors in the Panel's written statement as evidence that the Panel did not apply the proper rigor in considering his appeal. However, the Panel's chart of rating adjustments is clear, and the errors in the written statement appear to be nothing more insidious than simple typographical errors, which, given the scope of Mr. Majcher's appeal, are even less concerning than they might otherwise be.

[3] Mr. Majcher hired a total of six arborists, working in teams of two. However, each pair of arborists only reviewed a portion of his trees. Thus, it appears that the trees on his property were each reviewed in person by 2 DuPont arborists and 2 arborists hired by Mr. Majcher.

6

the materials before them and made their own decisions, as experts, about which materials were compelling and which were not, resulting in the Panel adjusting the ratings of 29 trees and a claim resolution agreement of almost twice the size of the original offer from DuPont. After reviewing the materials submitted by Mr. Majcher, the Court does not find that the Panel's decision was arbitrary or capricious as to the vast majority of tree ratings they reviewed. The adjustment of ratings for 29 trees demonstrates that the Panel reviewed the materials carefully and used their professional judgment.

One exception, however, is the Panel's adjustment of the rating of tree # 169 from 3 to 2. In a chart included with his appeal to the Panel, Mr. Majcher made clear that he challenged the *height* assigned to tree #169, not the tree *rating*. Nevertheless, the Panel adjusted the rating of that tree from a 3 (which provides for removal and replacement) to a 2 (which provides for tree care). DuPont argues that the Panel had discretion to review any aspect of any tree put before it, even if that the appellant only challenged one particular aspect of DuPont's assessment of that tree. However, nothing in the Settlement Agreement or Appeals Panel forms warns an appellant that the Panel will take it upon themselves to review more than an appellant asks them to review.[4] This is in contrast to Section III.C.1.a.xiii of the Settlement Agreement, which specifically warns class members that if they file an appeal, *DuPont* may perform a reassessment and "recalculate the compensation offered, regardless of whether that tree was a subject of the appeal and regardless of whether the reassessment increases or decreases the compensation provided." *See* Docket No.117-2, § III.C.1.a.xiii (emphasis added). Because the parties explicitly warned class members that DuPont retained the right to adjust any aspect of any tree assessment if a class member appeals a claim but failed to explicitly extend the authority of the

---

[4] Indeed, tree ratings and tree height are listed as separate categories on the Appeals Panel Decision Form. *See* Majcher Appeal, Docket No. 498-1, at 39.

Panel to reassess issues that were not submitted to them, the Court will grant Mr. Majcher's appeal of the tree rating adjustment to tree # 169. DuPont shall adjust the amended claim resolution agreement to reflect a rating of 3 for tree # 169.

Mr. Majcher also challenges the Panel's decision not to adjust any of the disputed tree heights. He submitted his own tree measurements to counter those of the DuPont arborists, as well as a very detailed description of his methodology and equipment used in making those measurements. He claims that the DuPont arborists did not use any special equipment to measure tree height. For most of the tree heights he contests, Mr. Majcher's measurement was within three to five feet[5] of the height assessed by DuPont's inspectors. He did not submit any photographs that complied with the Settlement Agreement's requirements for tree height evidence (*i.e.*, photographs with a yardstick held next to the tree trunk). After reviewing the evidence submitted, the Appeals Panel determined that there was a "lack of data or information provided" to justify adjustments to tree heights. Mr. Majcher reads this as an indication that the Panel did not review his evidence. However, because the Panel acknowledged reviewing all the information before them and because they did, in fact, adjust the ratings of several trees based on the evidence they considered, the Court does not read the Panel's statement as an indication that they ignored Mr. Majcher's data, but rather that they determined that it was insufficient to justify them in changing the tree heights. While the Court appreciates Mr. Majcher's meticulous efforts to document his tree heights, the Court does not conclude that the Appeals Panel acted arbitrarily in declining to adjust tree heights on the basis of his measurements.

---

[5] While the differences may seem small, as Mr. Majcher points out, even a few feet can change the amount of compensation substantially for a tree rated for removal and replacement.

8

**CONCLUSION**

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny Mr.

Majcher's appeal, except as to tree # 169. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge