IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2284 <br> 11-md-02284 |
| THIS DOCUMENT APPLIES TO: ALL ACTIONS | |

# MEMORANDUM

PRATTER, J.                                                                                                     AUGUST 30, 2017

     William and Beth Depietri appeal the decision of the Imprelis Arborist Panel,[1] claiming that they were left without a remedy because their damage was not apparent until after the claims deadline passed and that the Appeals Panel decision was erroneous and contrary to the evidence. Because the Appeals Panel decision in the Depietris' case was neither arbitrary nor capricious and because, as the Court already ruled, the Depietris' due process rights were not violated by the Settlement Agreement, the Court will affirm their decision and deny the DePietris' appeal.

## BACKGROUND

     Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

     In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

1

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

## A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one

2

chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or

other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *The Depietris' Appeal*

In September 2013, William and Beth Depietri first noticed damage to trees on their property which, after some investigation, they believed was caused by Imprelis. In October, 2013, after discovering that it was too late to join in or opt out of the Class Action Settlement, they sent a letter to DuPont describing the damage to their trees. They received no response. The Depietris then filed an Imprelis action in New Hampshire state court on April 3, 2014. DuPont removed the case to federal court, and the case was transferred to this MDL. DuPont moved to dismiss the case, and the Court granted the motion. *See In re Imprelis Herbicide Marketing, Sales Practices, & Prods. Liabl. Litig.*, No. 11-md-2284, 2014 WL 6901120 (Dec. 5, 2014). The Depietris then filed a warranty claim, which DuPont denied, concluding that the damage had either manifested before the claims deadline or that the damage was not caused by Imprelis. The Depietris appealed to the Arborist Panel, who denied their claim. Shortly thereafter, DuPont notified the Depietris that 24 of their trees showed signs of Imprelis damage and posed "an imminent hazard."

4

## LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of

review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

First, the Depietris argue that the Limited Warranty covers *any* damage to any tree caused by Imprelis until May 31, 2015. The Depietris cite the language of the warranty provision, which they read as entitling any class member to compensation for any Imprelis damage discovered before May 31, 2015. Even though this legal issue does not relate to the Appeals Panel decision directly, the Court will address it briefly. Construing the Settlement Agreement in the way the Depietris do would render any claims filing deadline meaningless. It is clear from the Agreement that the warranty was intended to protect class members from the effects of worsening damage to trees that were part of their original, timely claims and to protect against damage that first manifested *after* the claims deadline passed but before the expiration of the warranty period. No other interpretation makes sense. *See, e.g.*, Long Form Notice, Docket No. 187-5, at 19 (explaining that the Limited Warranty protected trees "that do not currently show any damage or those whose condition worsens and later need replacement").

Second, the Depietris argue that if the warranty provision is construed so as not to cover them, their constitutional rights have been violated. However, the Court already addressed this very same argument when DuPont moved to dismiss the Depietris' complaint, and the Court will not revisit that decision now. As the Court held in that decision, if the Depietris can "show that Imprelis damaged their trees and that, as they claim, the damage first manifested after the claims deadlines had passed, the warranty provisions of the Class Action Settlement entitle them to nearly all of the compensation available to other class members, including tree care, removal, and replacement." *In re Imprelis*, 2014 WL 6901120, at *8. Conversely, then, if they cannot show that the damage manifested after the claims deadline passed, then their failure to file a timely claim caused them to miss out on compensation under the Settlement, not a constitutional defect in the Settlement itself.

Finally, the Depietris reach an issue that was not already litigated – whether the damage to their trees actually manifested after the claims deadline, entitling them to warranty protection under the Settlement.[2] They argue that the Appeals Panel decision contains several errors, and that these errors indicate that the decision was not based on substantial evidence. First, they point to the Appeals Panel's statement that their appeal involved "tree ratings" and "number of trees qualifying for compensation." They argue that this alone shows a fundamental misunderstanding of the nature of their appeal, as their previous claim denial had occurred before the issue of tree ratings or compensation was ever reached. However, the Appeals Panel's statement shows that they clearly understood the issues raised in the appeal, and a check in a box that the Depietris find inapplicable does not reveal any flaw in the Panel's decision.

---

[2] The Depietris also claim that their due process rights were violated, in that they did not receive the materials DuPont submitted to the Panel, such as the original claim form from the DuPont site visit. However, as DuPont explains, the Depietris did not ask for these materials, and all materials submitted to the Panel are available to the Panel, DuPont, and Class Counsel and would have been furnished to the Depietris on request.

7

Next, they contend that the Panel's statement shows that they ignored substantial evidence, including a report from their own expert, Dr. Luley. They point to the Panel's statement that "no data was available to the Appeals Panel, only a few photographs without any identification as to location or etc." as evidence that the Panel must have ignored what they consider to be substantial evidence in support of their claim. They also claim that the Appeals Panel erred in concluding that the damage was not due to the June 2011 Imprelis application because DuPont later acknowledged that at least 24 trees on their property were damaged by Imprelis and were imminently hazardous.

In reviewing the evidence before the Panel, however, the Court does not find the Depietris' evidence as compelling as they believe it to be. Dr. Luley's affidavit, for instance, states that 115 trees on the Depietris' property showed symptoms of Imprelis damage and that "any assessment of this damage from the ground prior to September, 2013 would have been difficult if not impossible for an untrained person such as a homeowner." However, this statement is not the same as a finding that the damage was not observable at all to a trained eye, or that the damage did not actually manifest before September, 2013. Indeed, Dr. Luley appears to carefully sidestep the issue of whether the damage manifested prior to the claims deadline, which is the critical issue in this appeal. As to the Depietris' criticism of the Panel's statement that there was "no data" available to them, although the Depietris construe that statement to mean the Panel ignored evidence, a more reasonable interpretation is that the Panel was referring to the fact that they were presented with no objective data that proved that the Imprelis damage manifested before the claims deadline. As the Panel noted, the Depietris only submitted a handful of unlabeled photographs to show the damage to the trees, and none of those photographs objectively proved that Imprelis damage manifested only after the claims deadline.

8

As to DuPont's agreement to remove 24 trees that were deemed hazardous, that agreement and the attribution of the damage to Imprelis in that agreement do not conflict with the Panel's findings. Though the Panel expressed skepticism that a 2011 Imprelis application caused all of the damage, particularly given the size of the property and the relatively small quantity of Imprelis applied, or that it would be possible for Imprelis damage of the magnitude claimed to go unnoticed until the fall of 2013, the Panel ultimately did not decide whether Imprelis caused the damage to any or all of the Depietris' trees. Their denial appears, instead, to be based solely on their determination that there was not sufficient evidence to show that Imprelis damage manifested only after the claims deadline had passed.

Based on the evidence presented by the Depietris to the Panel, the Court does not determine that he Panel's decision was arbitrary or capricious, and therefore the Court will deny the Depietris' appeal.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny the Depietris' appeal. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
United States District Judge

9