# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2284<br>11-md-02284 |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | |

## MEMORANDUM

PRATTER, J.                                                                 SEPTEMBER 8, 2017

Samuel Spencer Stone and Jerilyn Stone appeal the decision of the Imprelis Arborist Panel,[1] claiming that they were left without a remedy because their damage was not apparent until after the claims deadline passed and that the Appeals Panel decision was erroneous and contrary to the evidence. Because the Appeals Panel decision in the Stones' case was neither arbitrary nor capricious and because, as the Court has already ruled, the notice program was adequate, the Court will affirm their decision and deny the Stones' appeal.

## BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

1

preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process, various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

### A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one

chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or

3

other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February 5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *The Stones' Appeal*

In November 2013, the Stones first noticed damage to trees on their property and also first learned that Imprelis had been applied to their lawn. They then contacted DuPont in December, 2013 to seek compensation for their injuries. DuPont eventually arranged for an inspection of the Stones' property, but by the time the inspector visited the property in May, 2015, the Stones had already removed all of the trees that they contend were affected by Imprelis. Without evidence from which to determine the cause or extent of damage to the Stones' trees, DuPont denied the claim. The Stones then filed an appeal, this time submitting some photographs and two arborist reports. The Panel denied their appeal, noting that the photographs were not labeled with dates or descriptions and that they had insufficient information to assess the claim properly.

Before filing their appeal to the Arborist Panel, the Stones filed a law suit in state court in West Virginia alleging claims for products liability and fraud against DuPont, and they threatened to bring a suit against their lawn care company. DuPont moved to enjoin the suit against them and to enforce the Class Action Settlement, arguing that the Stones were class

4

members and therefore were barred from bringing Imprelis claims against DuPont. This Court granted the motion and enjoined the Stones from continuing their state court Imprelis lawsuit. *See In re Imprelis Herbicide Marketing, Sales Practices, & Prods. Liab. Litig.*, MDL No. 2284, 2016 WL 320200 (E.D. Pa. Jan. 27, 2016).

**LEGAL STANDARD**

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review. The Stones, indeed, explicitly argue that the Court's review should be *de novo*, and in fact even seem to seek review of the Court's prior decisions as to the Stones' claims.

The Settlement Agreement is silent on the standard of review issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard

of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

## DISCUSSION

A great deal of the Stones' argument centers on the issues that this Court has already addressed in its prior opinion enjoining the Stones' from pursuing their state court claims against DuPont. For instance, the Stones complain about a lack of notice about the Settlement and about the application of Imprelis to their lawn. The Court has thoroughly addressed the notice issue and will not revisit it here. *See In re: Imprelis*, 2016 WL 320200, at * 4 (rejecting the Stones' arguments regarding lack of notice and citing several other rulings by this Court rejecting attacks on the Settlement notice program). They also accuse DuPont of misleading them into believing

their claims would be resolved through the claims process, but provide no evidence of any misleading statements. While DuPont did conduct a site visit and collect information from the Stones and their lawn care company necessary to process their warranty claim, the Stones have not pointed to any assurance from DuPont that the result of their warranty claim would be approval of the claim. Indeed, the Stones seem to conflate inclusion in the class with a guarantee of compensation, which ignores the necessity of providing sufficient evidence of damage (and, in the case of a warranty claim, evidence of damage first manifesting after the claims deadline) in order to make a successful settlement claim. Moreover, even if DuPont had misled them, the Stones have not explained how a misleading statement about the claims process prejudiced them. If they are attempting to argue that they would have opted out of the Settlement absent DuPont's misleading statements, that argument would be unavailing because the Stones did not communicate with DuPont until after the opt out deadline had passed, so a misleading statement could not have prevented them from timely opting out of the Settlement.

With respect to the warranty claim itself, the Stones submitted a few undated photographs, affidavits of two arborists, and spray records. The six photographs submitted by the Stones do not sufficiently show whether and to what extent Imprelis damaged the Stones' trees – some are close up shots with no accompanying full tree shots and others are full tree shots with no accompanying close up shots, making it impossible to evaluate any individual tree in any meaningful way. Arborist Dale Shalvey's affidavit makes no mention of Imprelis, and while he concludes that eight trees required removal and replacement, he does not explain how he came to that conclusion, nor does he describe or provide the evidence or standards he used to evaluate the condition of the trees. Arborist Dr. Sven Verlinden's affidavit does mention Imprelis, and while he concludes that there was some Imprelis damage to the Stones' property, he does not specify

7

which trees he believed showed signs of Imprelis damage, nor does he describe the extent of the damage or provide physical evidence supporting his conclusions. And none of the evidence submitted by the Stones demonstrates that the damage did not manifest until after the claims deadline, which is a necessary element to support a warranty claim. At most, the Stones say that they did not observe any damage until after the claims deadline, but their failure to observe symptoms of Imprelis damage does not prove that the symptoms did not exist prior to the claims deadline. For all of these reasons, the Court finds that the Arborist Panel's decision was not arbitrary or capricious and should therefore be upheld.

## CONCLUSION

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny the Stones' appeal. An appropriate order follows.

BY THE COURT:

*[signature]*

GENE E.K. PRATTER
United States District Judge