IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: IMPRELIS HERBICIDE MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. 2284<br>11-md-02284 |
| THIS DOCUMENT APPLIES TO:<br>ALL ACTIONS | |

## MEMORANDUM

PRATTER, J.  SEPTEMBER 25, 2017

Dennis and Lonell Wills appeal the decision of the Imprelis Arborist Panel,[1] claiming that their warranty claim was improperly denied. Because the Appeals Panel decision in the Willses' case was neither arbitrary nor capricious, the Court will affirm their decision and deny the Willses' appeal.

### BACKGROUND

Because the Court has written about the history of this litigation in several opinions, the following summary will be brief.

In the fall of 2010, DuPont introduced Imprelis, a new herbicide designed to selectively kill unwanted weeds without harming non-target vegetation. After widespread reports of damage to non-target vegetation, the Environmental Protection Agency ("EPA") began investigating Imprelis, leading to lawsuits, a suspension of Imprelis sales, and an EPA order preventing DuPont from selling Imprelis. In September 2011, DuPont started its own Claim Resolution Process to compensate victims of Imprelis damage. Despite this voluntary process,

---

[1] The terms Appeals Panel and Arborist Panel will be used interchangeably in this opinion.

1

various plaintiffs continued to pursue their lawsuits, alleging consumer fraud/protection act violations, breach of express and/or implied warranty, negligence, strict products liability, nuisance, and trespass claims based on the laws of numerous states. After months of settlement discussions, including mediation, the parties came to a settlement agreement. The details of the settlement relevant to the appeals process will be discussed in greater detail below.

## A. *The Settlement*

The Imprelis Class Action Settlement ("Settlement") covers three classes of Imprelis Plaintiffs. Among the three settlement classes is a property owner class. That class includes all persons or entities who own or owned property in the United States to which Imprelis was applied from August 31, 2010 through August 21, 2011, as well as all persons who own or owned property adjacent to property to which Imprelis was applied and whose trees showed damage from Imprelis on or before the date of entry of the Preliminary Approval Order, or February 11, 2013. Under the Settlement, property owner class members who filed claims by the claims deadline would receive tree removal (or compensation for tree removal), payments for replacement trees, tree care and maintenance payments, and a 15% payment for incidental damages. The Settlement included a warranty that provided for all benefits but the 15% incidental damages award for Imprelis damage that manifested after the claims period closed but before May 31, 2015.

Section III.C.1.a.xi. sets forth the appeals process for property owner class members who file settlement claims. *See* Docket No.117-2, § III.C.1.a.xi. That provision sets the framework for the "Imprelis Alternative Dispute Resolution Panel," comprised of three arborists – one chosen by DuPont, one chosen by Interim Co-Lead Counsel and Liaison Counsel, and one chosen by the other two arborists. The Agreement describes the Panel's role as "review[ing] and

2

determin[ing] appeals from the Settlement Claim Process, and decisions by DuPont relating to objections submitted in the course of the Imprelis Claim Resolution Process." The Agreement limits the authority of the Panel to "resolving questions or challenges relating to determinations of: (a) tree ratings; (b) the height, and if applicable, the circumference of trees at issue for valuation and tree care respectively; (c) the number of trees qualifying for compensation from DuPont under the Settlement Claim Process; (d) whether a Class Member has provided adequate Spray Records; (e) warranty coverage; and (f) application of those requirements set forth in Exhibit 19 [outlining the types of symptoms found in Imprelis-injured trees and the types of evidence required for claim consideration]." *Id.* The Agreement also specifies that the Panel members will be subject to the Code of Ethics for Arbitrators in Commercial Disputes and that the evidence they consider must be that presented by the parties. In the context of discussing Panel review, the Agreement states that "Any Party maintains its rights to seek review from the Court." *Id.* The Agreement does not set forth the standard of review to be applied by the Court in reviewing Panel determinations. The form filed by claimants appealing Panel decisions limits Court review to the record submitted to the Panel.

On February 12, 2013, this Court preliminarily approved the Settlement, and on September 27, 2013, the Court held a Final Fairness Hearing to determine whether the Settlement provided fair, reasonable, and adequate compensation to class members. On October 17, 2013, the Court granted the Class Plaintiffs' Motion for Final Approval of the Settlement. The Order entering final judgment as to the Settlement states that class members are "permanently enjoined and barred from instituting, commencing, or prosecuting any action or other proceeding asserting any Released Claims, against any Releasee . . . by whatever means, in any local, state, or federal court, or in any agency or other arbitral or other forum . . . ." February

3

5, 2014 Order, Docket No. 274, ¶ 7. The Court also retained exclusive jurisdiction over any action relating to the Settlement:

> Without affecting the finality of this Order, the Court shall retain jurisdiction over the implementation, enforcement, and performance of the Settlement Agreement, and shall have exclusive jurisdiction over any suit, action, motion, proceeding, or dispute arising out of or relating to the Settlement Agreement or the applicability of the Settlement Agreement that cannot be resolved by negotiation and agreement by Plaintiffs and DuPont.

*Id.* at ¶ 11.

### B. *The Willses' Appeal*

After the Willses discovered and reported Imprelis damage to their property, they accepted an amended claims resolution agreement to compensate them for the loss of several trees and the care of others. In the fall of 2014, the Willses submitted a warranty claim, contending that 24 trees that had previously been designated for tree care had continued to decline and should be removed and replaced and that two additional trees had also been damaged by Imprelis. A DuPont arborist visited the Willses property about a year later and concluded that one tree should be removed and two others should receive additional care. DuPont's warranty resolution offer reflected these findings, but the Willses objected, submitting photographs and arguing that the warranty trees not marked for removal were sufficiently damaged to warrant removal. DuPont denied the Willses' objections and included with its denial an addendum including notes and comments from Dr. Richard Rathjens, an arborist who reviewed the photographs submitted by the Willses and taken during DuPont site visits and who agreed with DuPont's assessment of the warranty claim.

The Willses then appealed their warranty claim to the Arborist Panel. In that appeal, they claimed that 26 trees on their property were in need of removal and replacement, and they included with their appeal a report from their own expert arborist, Faith Appelquist. The

4

Appeals Panel granted the appeal with regard to two trees, one of which was inadvertently removed without compensation and the other of which was marked for removal but not yet removed. As to the remaining trees, however, the Panel denied the appeal, concluding that those trees did not show sufficient Imprelis damage to warrant removal.

## LEGAL STANDARD

DuPont urged the Court to adopt the standard of review used for arbitration, meaning that the Arborist Panel's fact finding should only be displaced when "there was evident partiality or corruption in the arbitrators," where the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," or "where the arbitrators exceeded their powers." *See* 9 U.S.C. § 10. Courts have described this standard as making arbitration decisions "substantially unreviewable." *See Del. Dept. of Health & Social Servs., Div. for Visually Impaired v. U.S. Dept. of Educ.*, 772 F.2d 1123, 1128 (3d Cir. 1985). Many of the appellants, by contrast, either implicitly or explicitly expect *de novo* review. The Willses, for instance, argue that because each level of review preceding their appeal to the Court involved some form of *de novo* review, the Court's review should also be *de novo*.

The Settlement Agreement is silent on this issue. The Court will chart a middle course. On the one hand, DuPont is correct that deference is due to the Arborist Panel's expertise, particularly because the panel was assembled in a fashion intended to be neutral, with each party choosing one arborist and those two arborists selecting a third, and because the Arborist Panel clearly was intended to provide an alternative dispute resolution mechanism to streamline the appeals process, save all parties time and money, and reach resolutions as swiftly as possible. And despite the Willses' arguments that each successive level of review is *de novo*, each level of review preceding this Court's review is more restrictive than the last – beginning with in-person,

5

on-site inspections by DuPont arborists and leading up to review by the Arborist Panel, who are expressly prohibited from making site visits and are limited to reviewing submissions provided by the parties, as opposed to gathering their own evidence.[2]

On the other hand, the parties carefully crafted the Settlement Agreement and yet still failed to include any explicit guidance to class members or to the Court regarding a standard of review, thereby giving class members no direct notice of what they would encounter at this level of review. This is an especially frustrating failure given the unique nature of this settlement. Indeed, a search of other multidistrict litigation and class action practice has yielded little helpful guidance or authority.

Taking this middle course, the Court will apply an "arbitrary and capricious" standard of review. *See Del. Dept. of Health & Human Servs.*, 772 F.2d at 1128 (distinguishing standard of review under the Federal Arbitration Act from "arbitrary and capricious" standard); *Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (contrasting "arbitrary and capricious" standard with standard applied in review of arbitration award). That is, factual findings and conclusions drawn by the Arborist Panel will be set aside only if they are "without reason, unsupported by substantial evidence or erroneous as a matter of law." *See Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (internal quotations omitted). Such a standard gives effect to the parties' clear intent that the Arborist Panel's role be more than merely advisory and recognizes their expertise and neutrality, while still giving class members an opportunity for a more meaningful review of the Panel's decisions.

---

[2] The Willses also cite to Local Rule 53.2 in arguing that they are entitled to *de novo* review even if the Court likens the Arborist Panel proceeding to arbitration. Local Rule 53.2 applies to certain civil cases that meet the requirements of the rule and are referred to the Eastern District of Pennsylvania's arbitration program. It has no application here, in an appeal of a decision made by the Arborist Panel, which is not part of the District's arbitration program.

6

DISCUSSION

The Willses argue on appeal that 24 of their trees are so severely damaged by Imprelis that they should be removed and replaced. They argue that if you compare their expert's comments on the trees in question[3] with Dr. Rathjens's comments, both experts actually support removal and replacement for the trees in dispute. Dr. Rathjens's ultimate conclusion, however, was that the trees in question were not severely damaged enough to warrant removal, and he questioned whether Imprelis was the cause of all of the damage displayed in the photographs. Thus, to the extent that the Willses attempt to draw parallels between their expert and one of DuPont's, the clear conclusions drawn by Dr. Rathjens from his own observations make the Willses' attempt at comparison less than compelling.

This appeal, then, comes down to a battle of experts. After a review of the full record, including the Appelquist report and photographs, as well as notes from DuPont arborists, the Appeals Panel observed that the "only symptomology seen was old and the trees in question appear to be showing new growth." *See* Appeals Panel Written Statement, Docket No. 678-26, at 56. They determined, therefore, that DuPont's assessment of the 24 trees in question was correct. Despite the evidence put forward by the Willses and after reviewing the record before the Arborist Panel, the Court cannot conclude that the Panel's decision was arbitrary or capricious. As a result, Court will deny the Willses' appeal.[4]

---

[3] The Court notes, and the Willses recognize, that the rating standards employed by the Willses' expert differ from those set forth in the Settlement Agreement. *See* Docket No. 117, Ex. 20. For instance, she assigns a rating of 3 and recommends removal and replacement for each tree exhibiting damage to 25% or more of that tree. The tree rating table for the Settlement Agreement, however, provides that a 3 rating should be assigned to trees showing 40-70% damage. After acknowledging this discrepancy, the Willses urge the Court to abide by Ms. Appelquist's standards in reviewing their claim. However, the Willses are bound by the Settlement Agreement, and the Settlement Agreement includes the standards to be used in evaluating trees.

[4] The Willses also argue that they were required to fertilize their damaged trees as part of the tree care program and that fertilizing them contributed to their decline. However, the Willses do not point to any

7

## Conclusion

For the foregoing reasons, the Court will affirm the Arborist Panel decision and deny the Willses' appeal. An appropriate order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
United States District Judge

---

provision in their claims resolution agreement that would require this specific treatment, and DuPont disavows any such requirement, quoting language concerning tree care in the agreement that makes no mention of a fertilizer requirement.